immediately upon a request for counsel. *Smith v. Illinois*, 469 U.S. 91 (1984). In order for a suspect's communications, exchanges, or conversations to justify further interrogation by the police, the accused's communications must have "evinced a willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983).

In this case, Walter Raglin asserted his *Miranda* right to counsel seven times before the police turned off the tape recorder. The Cincinnati police officers nevertheless continued their interrogation as opposed to immediately ceasing their questioning. After turning off the tape recorder, the police kept Mr. Raglin in the interrogating room and offered to get him a telephone book to locate an attorney. At that time it was after 11:00 p.m., so that no attorneys would be available for consultation. Mr. Raglin had already requested an attorney on seven separate occasions but the interrogation nevertheless continued. Accordingly, Walter Raglin told the police that he had changed his mind and agreed to continue with a statement. At that time, Mr. Raglin made an inculpatory statement to the police.

As Justice Rehnquist, speaking for a plurality of the Court in *Bradshaw*, at 1045 noted, the prohibition in *Edwards* against further interrogation after invocation of the right to counsel is a requirement instituted to insulate an accused who has requested an attorney from being hounded by the interrogator. In this case, Walter Raglin attempted on seven separate occasions during his tape recorded interrogation to obtain counsel. Nevertheless the interrogation continued.

The actions of the Cincinnati Police officers violated Walter Raglin's rights as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**Seventh Ground for Relief: Petitioner hereby abandons this ground for relief in its entirety.**

41

## Jury Instructions

### I.    Trial Phase Instructions

**Eighth Ground for Relief:** Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment Rights were violated when the judge refused to instruct the jury at the end of the trial phase that it could find Mr. Raglin guilty of involuntary manslaughter, a lesser included offense of aggravated murder.

The trial court entered judgment of conviction of aggravated murder and imposed the death sentence after denying Mr. Raglin's properly written request that, at the trial phase, the court instruct the jury on the lesser included offense of involuntary manslaughter because Mr. Raglin had denied any purpose to kill the victim. (Tr. 1410). The trial court did not instruct the jury on involuntary manslaughter. Trial counsel objected to the omission at the proper juncture. (Tr. 1487). Although trial counsel presented no evidence,[6] Mr. Raglin's statement given to police and introduced by the state, showed that he expressly denied intent or purpose to kill. Mr. Raglin stated:

> I, I fired the gun at 'im. I didn't know where I hit 'im at. *I wasn't tryin' to kill 'im or nuttin' like that.*

(Tr. 44, Statement)(emphasis added). Mr. Raglin stated he fired the gun as the victim picked up a suitcase, adding that both men were "scared" at the time of the robbery and that he had "panicked," indicating that the firing of the gun was an instantaneous response to the sudden (as it seemed to Mr. Raglin) movement of the victim as he attempted to collect his musical equipment.

In a capital case, the refusal of the trial court to give a proper instruction on a lesser degree of homicide at the trial phase, is unconstitutional. *Beck v. Alabama*, 447 U.S. 625 (1980).

---

[6] Trial counsel's failure to present any evidence on this issue is addressed in Mr. Raglin's First Ground for Relief.

In *Beck*, the United States Supreme Court held that, in a capital murder prosecution, the due

process clause of the Fourteenth Amendment prevents a state from imposing the death sentence

following a trial where the trial court improperly denied a defense request that the jury be

instructed on the lesser offense of the Alabama equivalent of a lesser included noncapital

offense.  The error was undiluted despite the fact that in Alabama, as in Ohio, the judge, not the

jury, is the ultimate sentencer.  While an Alabama statute prevented the giving of a lesser

instruction in capital cases, the same principle should be held to govern here.  Whether by statute

or judicial error, the due process clause is violated by the imposition of the death sentence after a

trial in which the lesser offense instruction ought to have been given.

It is for the jury, not the trial court, to assess the credibility of Mr. Raglin's claim to

police that he did not intend the death of the victim.

> A judge may be entirely satisfied from the whole evidence in the case, that
> the person doing the killing [had purpose to kill]; and yet if there be *any*
> evidence fairly tending to bear upon the issue of manslaughter, it is the
> province of the jury to determine from all the evidence what the condition
> of mind was, and to say whether the crime was murder or manslaughter.

*Stephenson v. United States*, 162 U.S. 313, 323 (___).

The denial of the requested instruction, which was supported by the facts of this case,

prejudiced Mr. Raglin's right to a fair trial in violation of his right to due process of law.  *Keeble*

*v. United States*, 412 U.S. 205 (1973).  Denial of the requested instruction also violated Mr.

Raglin's rights under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments.

**Ninth Ground for Relief: Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth**
**Amendment rights were violated when the judge erroneously instructed the jury at the end**
**of the trial phase on the issues of causation, forseeability, intent, and purpose.**

The trial court, over objection, instructed the jury that the essential element of cause is

present:

> when the death is the natural and foreseeable result of the act...'Result'
> occurs when the death is naturally and foreseeably caused by the act...The
> causal responsibility of the defendant for an unlawful act is not limited to
> its most obvious result. The defendant is responsible for the natural, most
> obvious result. The defendant is responsible for the natural, logical and
> foreseeable results that follow, in the ordinary course of events, from an
> unlawful act.

(Tr. 1412, 1476, 1487). This instruction undercut the instruction given by the trial court that the

state prove beyond a reasonable doubt that Mr. Raglin *purposely* caused the death of Mr. Bany.

(Tr. 1474).

The trial court's instruction on "purpose" shifted the burden of proof to Mr. Raglin in

violation of Mr. Raglin's constitutional rights. *Francis v. Franklin*, 471 U.S. 307 (1985). The

trial court instructed the jury that purpose "is determined" from the use of a weapon and the facts

in evidence. (Tr. 1420, 1474-75). This instruction created a conclusive presumption of purpose

to kill from the use of a weapon. *Francis*, 471 U.S. at 313, 317-18. Further the trial court

instructed that "[p]urpose is a decision of the mind to do an act with a conscious objective of

producing a specific result <u>or engaging in specific conduct</u>." (Tr. 1474).

The trial court erroneously gave both prongs of the statutory definition, even though the

first prong was the only one applicable to the crime charged in Count 2 of the Indictment. The

second prong is for strict liability offenses in which culpability is established by the commission

of the criminal act itself. The jury had to find that Mr. Raglin purposely caused the victim's

death, not that he purposely engaged in criminal conduct. This improper definition of purpose

created a conclusive presumption of Mr. Raglin's purpose to kill from the mere purposeful

participation in any criminal act. *See Francis*, 471 U.S. at 313, 317-18.

These errors were compounded by the trial court's failure to give a mandatory instruction

that any inference of Mr. Raglin's intent to kill from the use of a weapon was nonconclusive.

44

*See* Oh. Rev. Code §2903.01(E) (formerly Oh. Rev. Code §2903.01(D)).  This instruction was required under Oh. Rev. Code §2903.01(E) because Mr. Raglin was charged with aggravated murder under Oh. Rev. Code §2903.01(B).  These instructional errors shifted the burden of proof to Mr. Raglin to show that he did not intend to kill Mr. Bany.  (Tr. 1460-1489).

These instructions by so infected the entire trial that the resulting conviction violates due process.

**Tenth Ground for Relief:  Petitioner hereby abandons this ground for relief in its entirety.**

**II.      Mitigation Phase Instructions.**

**Eleventh Ground for Relief: Petitioner abandons this ground for relief in its entirety**.

**Twelfth Ground for Relief: Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge failed to properly instruct the jury at the end of the mitigation phase as to the definition of reasonable doubt**.

At the end of the mitigation phase, the trial court instructed the jury on the statutory definition of "reasonable doubt" as defined in Oh. Rev. Code §2901.05(D).  (Tr. 1910).  The court charged the jury that "[r]easonable doubt is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are <u>firmly convinced of the truth of the charge</u>."  (Tr. 1910)(emphasis added).  The instruction was given over trial counsel's objection.  (Tr. 1910).  This instruction shifted the burden of proof on the issue of punishment and prevented the jury from making its constitutionally required finding of the appropriateness of the death penalty.

Moreover, this instruction established a conclusive presumption of the propriety of the death penalty following Mr. Raglin's conviction of aggravated murder with death penalty specifications.  Since the death sentence is logically and conclusively required by the instruction, the jury was prevented from determining whether or not death was the appropriate punishment.

45

In *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976), the United States Supreme Court held:

> Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a given case.

Indeed, insistence on a reliable verdict is vital in capital cases. *See Gardner v. Florida*, 430 U.S. 349, 350 (1977). There can be no risk of caprice in the decision.

Members of a jury in a capital case often believe that once they find a defendant guilty of the aggravated murder, they are duty bound, or they have no choice but to sentence the defendant to death. Jurors do not understand that they are to consider testimony and argument put forward at the mitigation phase to determine the sentence. Mr. Raglin was prejudiced by the instruction since he was denied a jury determination of whether the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt. As such, his conviction must be reversed.

**Thirteenth Ground for Relief: Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it should consider all the evidence admitted during the trial phase of the proceedings with respect to its deliberations following the mitigation phase of the trial.**

The trial court instructed the jury that they should consider all evidence admitted at the trial phase of the proceedings, including the photos of the body of the deceased. Trial counsel's objections were overruled. (Tr. 1909, 1911, 1916). Under Ohio law this instruction was error. *State v. DePew*, 38 Ohio St.3d 275 (1989); *State v. Williams*, 73 Ohio St.3d 153 (1995). This instruction by itself so infected the entire trial that the resulting conviction violates Mr. Raglin's constitutional rights.

**Fourteenth Ground for Relief: Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge failed to properly instruct the**

**jury at the end of the mitigation phase as to the definition of the mitigating circumstances that the jury should consider during its deliberations.**

The trial court failed to define mitigating circumstances, merely advising the jury which mitigating factors were to be considered. Not advising the jury of the definition of a mitigating factor renders it impossible to comply with the constitutional requirement that jurors be advised to consider all relevant mitigating evidence. *Penry v. Lynaugh*, 492 U.S. 302 (1989). Years ago, the Ohio Supreme Court fashioned a proper definition of "mitigating circumstance" in *State v. Steffen*, 31 Ohio St. 3d 111 (1987). Mr. Raglin was entitled to have his jury given that instruction, especially since he specifically asked for it. (Tr. 1768). The trial court's failure to give the requested instruction violated Mr. Raglin's constitutional rights.

**Fifteenth Ground for Relief: Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it could consider any other factors that are relevant to the issue of whether it should recommend that Walter Raglin by sentenced to death.**

Walter Raglin challenges on constitutional grounds the trial court's instructions that the (B)(7) factor is defined as "any other factors that are relevant to the issue of whether the Defendant should be sentenced to death." (Tr. 1916). Specifically, he contends that the trial court's instructions gave the jury no guidance as to the factors that should be considered in determining whether death was the appropriate penalty. Additionally, Mr. Raglin contends that the instructions also violated Ohio's Statutory death penalty scheme. Accordingly, Mr. Raglin's death verdict in the present case must be reversed.

      **A.    The trial court's mitigation phase instructions violated Mr. Raglin's rights by permitting the jury to consider any factor it desired in determining the appropriate penalty in his case.**

The mitigation phase instructions gave the jury no guidance as to the factors that should be considered in determining whether death was the appropriate penalty. The instruction

47

incorrectly permitted the jury to decide what factors were relevant or not relevant in imposing the death sentence.

The court, in drafting this particular section of the instruction, borrowed the language from Ohio Revised Code §2929.04(B)(7) which states:

> Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

This section is a "catch-all" subsection that permits the defendant great latitude in deciding what evidence to introduce during the mitigation phase. Such latitude is mandated by *Lockett v. Ohio*, 438 U.S. 586 (1978) and its progeny.

The requirement that a jury must consider mitigating evidence presented by a capital defendant does not mean that a jury may consider any factor, whether raised by a capital defendant or not, to decide what sentence is appropriate. *See Furman v. Georgia*, 408 U.S. 238 (1972). Where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action. *Gregg v. Georgia*, 428 U.S. 153, 189 (1976).

In Mr. Raglin's case, the sentencing discretion of the jury was wholly undirected and without limitation through the court's instruction. There was no minimization of the risk of capricious or arbitrary action. The improper instruction expanded the jury's discretion beyond the bounds permitted by law and allowed consideration of factors even if they were not raised by Mr. Raglin.

**B.    The trial court's mitigation phase instructions violated Ohio's statutory death penalty scheme.**

48

Ohio Revised Code §2929.03(D)(1) provides that the defendant has the burden of going forward with mitigating evidence. It is the defendant's decision as to which mitigating factors will be presented and which mitigating factors the jury will be instructed to consider. Ohio Revised Code §2929.03 specifically gives the defendant control over whether or not to have a mental examination and pre-sentence report conducted and presented to the jury. Similarly, the statute gives the defendant control over the presentation of evidence with respect to mitigating factors.

In Mr. Raglin's case, the mitigation phase instructions did not intelligently inform the jury of the proper method to be used in considering the mitigating factors. The instructions did not limit the jury to only those mitigating factors raised by Mr. Raglin. Instead, the instructions allowed the jury to make its decision on literally any factor. Through the court's instructions, the jury could have even considered Mr. Raglin's race. The instructions simply placed no restraints upon the jury's collective imagination.

Inviting the jury to consider mitigating circumstances not raised by Mr. Raglin resulted in the death penalty being imposed in an arbitrary and capricious manner. These jury instructions violated Ohio's statutory scheme and Mr. Raglin's rights to due process, equal protection of the laws, and his right to be free from cruel and unusual punishment. Therefore, Mr. Raglin's sentence of death must be reversed.

**Sixteenth Ground for Relief: Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it could consider the killing itself as a factor relevant to the issue of whether it should recommend that Walter Raglin be sentenced to death and by instructing the jury that the killing itself was an aggravating circumstance.**

The trial court's mitigation phase instructions also included in its definition of aggravating circumstances the killing itself. Again, trial counsel requested a proper instruction

that the killing itself was not an aggravating factor. (Tr. 1520, 1764, 1921). This instruction is

contrary to Ohio law. *State v. Henderson*, 39 Ohio St.3d 25, 26 (1988). This instruction by itself

so infected the entire trial that the resulting conviction violates Mr. Raglin's constitutional rights.

**Seventeenth Ground for Relief: Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase in such a manner that the jury could conclude that it had to consider and reject a recommendation as to the imposition of death before it could consider either life sentence option.**

The trial court in effect instructed the jury that it had to consider and reject the death
sentence before considering either life option. (Tr. 1917). The trial court instructed the jury as

follows:

> On the other hand, if after considering all of the relevant evidence admitted at the
> two trials and the arguments of counsel, you find the State of Ohio failed to prove
> beyond a reasonable doubt that the aggravating circumstance in the count of
> Aggravated Murder which the defendant was found guilty of committing
> outweighs the mitigating factors, *then* you will not recommend to the Court the
> sentence of death. *In that event*, you will determine which of two possible life
> imprisonment sentences to recommend to the Court as to the Count of Aggravated
> Murder.

(Tr. 1916-1917). While not stating expressly that the jury was required to consider death before

considering life, that is the clear import of the instruction.

Under Ohio law, this instruction is improper. Further, the trial court failed to instruct that

one juror could prevent the imposition of the death penalty, as required by *State v. Brooks*, 75

Ohio St. 3d 148, 159-160 (1996). This instruction by itself so infected the entire trial that the

resulting conviction violates Mr. Raglin's constitutional rights.

**Eighteenth Ground for Relief: Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it could consider the nature and circumstances of the offense as a mitigating factor in its determination of whether it should recommend that Walter Raglin be sentenced to death.**

50

Ohio Revised Code §2929.03(D)(1) provides that the defendant has the burden of going forward with mitigating evidence. It is the <u>defendant's decision</u> as to which mitigating factors will be presented and which mitigating factors the jury will be instructed to consider. Ohio Revised Code §2929.03 specifically gives the defendant control over whether or not to have a mental examination and pre-sentence report conducted and presented to the jury. Similarly, the statute gives the defendant control over the presentation of evidence with respect to mitigating factors.

In Mr. Raglin's case, the trial court instructed the jurors to consider as a mitigating factor the nature and circumstances of the offense although that factor was not advanced by Mr. Raglin in mitigation.

Inviting the jury to consider mitigating circumstances not raised by Mr. Raglin resulted in the death penalty being imposed in an arbitrary and capricious manner. These jury instructions violated Ohio's statutory scheme and Mr. Raglin's rights to due process, equal protection of the laws, and his right to be free from cruel and unusual punishment. Therefore, Mr. Raglin's sentence of death must be reversed.

**Nineteenth Ground for Relief: Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge refused to instruct the jury at the end of the mitigation phase that it could consider Walter Raglin's remorse, residual doubt and cooperation with law enforcement as mitigating factors it could consider in its determination of whether it should recommend that Walter Raglin be sentenced to death.**

The trial court refused trial counsel's requests to instruct the jury as requested with respect to the mitigating factors of remorse, residual doubt, and cooperation with police, in spite of the fact that these are well-recognized mitigating factors in Ohio. *State v. Smith*, 61 Ohio St.3d 284 (1991); *Bell v. Ohio*, 438 U.S. 637 (1978)(cooperation with police); *State v. Buell*, 22 Ohio St.3d 124 (1986)(residual doubt); *State v. Hicks*, 43 Ohio St.3d 72 (1989)(remorse). Given

51

the vagueness with which the trial court defined the (B)(7) mitigating factor, it is clear that the jury would not understand that these mitigating factors could be considered.

The court's refusal violated Mr. Raglin's rights to due process, equal protection of the laws, and his right to be free from cruel and unusual punishment. Therefore, Mr. Raglin's sentence of death must be reversed.

**Twentieth Ground for Relief: Petitioner hereby abandons this ground for relief in its entirety.**

### Issues related to right to trial by an impartial jury

**Twenty-First Ground for Relief: Walter Raglin was denied his rights to an impartial and disinterested jury due to the bias of Juror Tara Veesart in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.**

Juror Tara Veesart had a close connection to the facts surrounding the homicide of Michael Bany that bias must be presumed. She was friends with Lisa Sharkey, who worked at Tommy's, the bar where the crime occurred, and where the victim and his band played every Thursday, Friday, and Saturday night. She was at Tommy's the night the crime occurred, and left only ten minutes before the shooting. Her boyfriend's brother also worked there. Her boyfriend's brother telephoned Tara Veesart and her boyfriend on the night of the shooting to tell them about it and to make sure they were not harmed. Tara Veesart heard the victim play in his band on the evening he was killed. She followed the case closely in the media and talked about it with her friends. Juror Tara Veesart was influenced by her personal experiences with the victim and her knowledge about the crime derived from sources extraneous to the evidence presented at trial. This extraneous influence was prejudicial not only upon juror Tara Veesart but also upon the other members of the jury. This bias and extraneous influence prevented Walter Raglin from receiving a fair trial.

52

When a jury of judge is biased against a defendant, the Fourteenth Amendment Due

Process clause requirement of an impartial an disinterested tribunal is violated and reversal is

automatic. *Porter v. Singletary*, 49 F.3d 1483, 1489 (11th Cir. 1995). In *Leonard v. United*

*States*, 378 U.S. 544 (1965) (*per curiam*), the Court reversed a conviction because of the

"implied bias" of certain jury members at Leonard's second trial who had been in the courtroom

during the announcement of the guilty verdict rendered at his first trial. Juror bias, whether

implied, presumed, or proven, requires an automatic reversal of a petitioner's conviction. *Smith*

*v. Phillips*, 455 U.S. 209 (1982) (O'Connor, J., concurring).

The presence of Tara Veesart on Walter Raglin's jury violated his due process rights as

guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

**Twenty-Second Ground for Relief: Petitioner hereby abandons this ground for relief in its
entirety.**

**Issues related to prosecutorial misconduct**

**Twenty-Third Ground for Relief: Walter Raglin was denied his constitutional rights to a
fair and impartial trial under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth
Amendments as a result of prosecutorial misconduct during both phases of his capital
proceedings.**

Walter Raglin's trial was replete with prosecutorial misconduct. (Tr. 1418-1432, 1443,-

1460, 1826-1850, 1893-1906). For example, the prosecutors made expressions as to what the

opinions of Mr. Raglin's counsel might be and denigrated defense counsel as being disingenuous

with regard to their arguments. (Tr. 1447). The prosecutors frequently stated their opinion as to

Mr. Raglin's state of mind during the shooting, without any evidentiary foundation. (Tr. 1450,

1457). The prosecutors also sarcastically mis-characterized Mr. Raglin's statement that the gun

went off accidentally. (Tr. 1451).

Prosecutors also stated that trial counsel was asking them to not follow the law. (Tr.

1896). The prosecutors made impermissible statements of personal opinion to the jury. (Tr.

53

1900, 1901, 1904). The prosecutors consistently substituted emotion for reasoned advocacy in

their closing arguments. (Tr. 1419-1420, 1427, 1428, 1457-1460). The prosecutors also

repeatedly referred to Mr. Raglin's silence as well as to facts that were not in evidence. (Tr.

1420, 1450-1454, 1838, 1839, 1896, 1901).

The prosecutors blamed the need for a trial on Mr. Raglin's unwillingness to plead guilty.

(Tr. 1424, 1431). The prosecutors attempted to reduce the state's burden of proof by arguing

that jurors should not "make this case more difficult than it is." (Tr. 1444). The prosecutors

assured the jury that the case really was that simple and that they could "sit on a hundred more

cases" and they would never find one as easy to decide as this one. (Tr. 1444-1445).

In the prosecutor's closing argument during the trial phase, trial counsel failed to object

to the portion where the prosecutor picked up the alleged murder weapon, a semi-automatic

piston, began waving it around, removed the clip, took the safety off, pulled the slide back and

proceeded to reenact the shooting. The prosecutor stated:

> Now that's all been done when we approach Michael Bany.
>
> . . .
>
> And what do we know when he fired it? Basically like this. Basically a level
> shot.

(Tr. 1428-1429). The prosecutor's theatrics prompted the trial judge, no doubt out of concern for

the safety of the jurors from this wild display, to inquire if the gun was loaded. (Tr. 1428).

During the mitigation phase argument, the prosecutors argued on several occasions that

the killing itself is an aggravating circumstance by including the killing in the statement of the

aggravating factor. (Tr. 1832-1835, 1845-1846, 1849; 1897-1898). The prosecutors argued that

the nature and circumstances of the offense were not mitigating, even though trial counsel never

suggested that the nature and circumstances of the offense were a mitigating factor. (Tr. 1833-

1835). The prosecutors stated that for the jury to return a death sentence, mitigation must

54

outweigh aggravation. (Tr. 1895). The prosecutors denigrated the defense expert and the

defense theory of mitigation as well. (Tr. 1844, 1901, 1904). The prosecutor purported to quote

Mr. Raglin:

> But now he's sorry. And because I'm sorry I want you to say that this
> mitigation outweighs the life of Michael Bany. Cut me some slack.

(Tr. 1905). The prosecutors argued against the insanity defense at the mitigation phase although

it was never raised by trial counsel at either stage of the proceedings. (Tr. 1846). The

prosecutors argued that Mr. Raglin would be dangerous to society unless put to death because he

can get out some day, even if that day is when he is sixty years old or as young as 42 years old.

(Tr. 1843). The prosecutor characterized Mr. Raglin as a drug dealer. (Tr. 1899). Trial counsel

objected to some, but not all of these arguments.[7]

For example, In the prosecutor's closing argument, during the mitigation phase, trial

counsel failed to object when the prosecutor asked the jury to speculate on facts not in evidence

and proceeded to introduce evidence into his argument that had not been presented during the

proceedings. Specifically, the prosecutor invited the jury to look at Walter Raglin and, with

respect to the hours following Mr. Bany's murder "see him bragging and laughing and about it

and bragging about it." (Tr. 1900).

Even more egregious than this conduct, is when the prosecutor invited the jury to

speculate on where Mr. Raglin would have gone or what he would have done if he had escaped

from the Hamilton County Justice Center. (Tr. 1904). The prosecutor compounded this

misconduct by telling the jury that Walter Raglin would have committed more murders if his

escape from the Hamilton County Justice Center had been successful.

---

[7] Trial counsels' failure to object to prosecutorial misconduct is raised as ineffective
assistance of counsel in Mr. Raglin's ____ Ground for Relief.

> [I]s he going to the Baneys to apologize? Is that why he jumped out that
> window? He's back on the streets. Back hustling again. He's going to
> get some more and he's going to do what he has to do to take it.

(Tr. 1904). Until the same prosecutor told the jury that he was personally asking for the death

penalty, trial counsel remained silent in the face of this prosecutorial misconduct. (Tr. 1905-

1906).

In *Berger v. United States*, 295 U.S. 78, 88 (1935), the United States Supreme Court

stated that while a prosecutor

> may strike hard blows, he is not at liberty to strike foul ones. It is as much
> his duty to refrain from improper methods calculated to produce a
> wrongful conviction as it is to use every legitimate means to bring about a
> just one.

The prosecutor's function "is not to tack as many skins of victims as possible to the wall,

...but to give those accused of crime a fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637

(1974)(Douglas, J., *dissenting*).

As former Justice Wright has pointed out:

> The concern of improper prosecutorial influence upon a jury is particularly
> acute in the mitigation phase of a capital case, especially where it tends to
> rebut a substantial amount of argument in mitigation, as was the case here.
> '[I]t is most important that the sentencing phase of the [capital] trial not be
> influenced by passion, prejudice, or any other arbitrary factor. * * * With a
> man's life at stake, a prosecutor should not play on the passions of the
> jury. *Hance v. Zant* 696 F.2d 940, 951 (11th Cir. 1983), *cert. denied* 463
> U.S. 1210.

*State v. Bedford*, 39 Ohio St. 3d 122, 135-136 (1988)(Wright, J., *dissenting*).

The United States Supreme Court has affirmed the proposition that the Eighth

Amendment will not tolerate death sentences imposed as the result of whim, passion, prejudice,

mistake, or other improper influences. *Eddings v. Oklahoma*, 455 U.S. 104 (1982). The

56

prosecutorial misconduct set forth in detail above violated Mr. Raglin's rights and must be reversed.

It should be noted that the same two prosecutors in Mr. Raglin's case have been rebuked by the Ohio Supreme Court for the very arguments and misconduct committed here. In *State v. Wogenstahl*, 75 Ohio St.3d 344 (1996), the Ohio Supreme Court spent page after page excoriating the arguments for death made in that case by these same prosecutors. Discovery in this case will show that these same prosecutors have a pattern and practice of improper tactics in death penalty cses from Hamilton County, Ohio.

The Sixth Circuit has indicated that when prosecutorial misconduct "rises to the level of depriving the defendant of fundamental fairness in the trial process, the claim is remediable on a petition for habeas corpus relief." *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993), *cert. denied*, 510 U.S. 1201 (1994).

In Mr. Raglin's case, the prosecutorial misconduct committed by the prosecutors rises to the level of depriving Mr. Raglin of fundamental fairness in the trial process. Therefore, he should be granted habeas corpus relief.

**Twenty-Fourth Ground for Relief: Petitioner hereby abandons this ground for relief in its entirety.**

**Twenty-Fifth Ground for Relief: Walter Raglin was denied his rights under the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments and the "Fair Cross Section" requirement of the Sixth Amendment to the United States Constitution because the process of selecting grand jurors, grand jury forepersons, and petit jurors in Hamilton County was tainted in 1996 due to consideration of the factor of race in the drawing, selection and impanelment of grand jurors and petit jurors; and due to consideration of the factors of race and gender in the selection of grand jury forepersons.**

The Hamilton County Jury Commission and Hamilton County Common Pleas Court employed an improper method for choosing Hamilton County residents to serve on Grand Juries in Hamilton County. This method results in an under representation of African-Americans.

The initial list from which individuals in Hamilton County are selected to serve on grand juries is the voter registration list. The Board of Elections, at the behest of the Hamilton County Jury Commissioner, creates a list of voters and forwards the list to the Board of Elections.

Members of the Board of Elections then make an estimate as to the number of individuals that will be needed for the upcoming year. From this original list, the Board of Elections then selects the estimated number of individuals who will be needed for jury duty. This secured list is supposed to be randomly created.

The Board of Elections then causes post cards be sent to all individuals on this secured list. The post cards contain the questions previously identified.

If an individual does not return the post card, then the individual will not be considered for inclusion in the grand jury venire. The Board of Elections makes no effort to ensure that individuals return the questionnaires. African-Americans and other cognizable minorities disproportionately (when compared to their relative percentage of the Hamilton County population of voter age) fail to return their questionnaires therefore resulting in an under representation of minorities.

This under representation of minorities is further exacerbated when members of the Board of Elections review the questionnaires that are returned. A negative response to the first question and an affirmative response to the second, will eliminate a person from jury service.

If employed, does employer reimburse fully or partially for jury service?

Is there any personal or financial reason that jury service would be a hardship for you?

Individual with low paying jobs are less likely to be reimbursed by their employer for jury service. Individuals with little or no money are likely to be more adversely affected by jury service. Those individuals do not have jobs that will pay their wages while they are serving on

58

jury duty and they cannot afford transportation to the courthouse or baby-sitters for their children.

Individuals that comprise cognizable minorities are more likely to be poor and to have lower paying jobs. Therefore these two questions eliminate large numbers of minorities,; including African-Americans, from participating in the process.

The right to have a grand jury consider one's case guarantees the suspect a review by an impartial grand jury. The failure to offer the accused a fair tribunal violates even the minimal standards of due process.

Any person "held to answer for a capital, or otherwise infamous, crime" possesses the right to indictment by a grand jury. Ohio Const. Art. I, § 10. The right to challenge the array or the qualifications of jurors is primarily a statutory right. However, the right to challenge the grand jury array or individual jurors is also grounded in the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the United States Constitution. While it is true that the United States Constitution does not require grand jury indictment in criminal prosecutions, it is axiomatic that when a state decides to use a grand jury system, the federal constitutional principles of due process and equal protection apply to the selection and impanelment process.

Due process requires that an indictment be "returned by a legally constituted and unbiased jury . . ." The sixth Amendment right to a trial by jury also includes the right to a jury drawn from a fair cross-section of the community./ A similar right exists under the equal protection clause of the Fourteenth Amendment. The Constitutional principles governing systematic exclusion of grand jurors are essentially the same as those applied to petit jurors.

The actions of the Hamilton County Court of Common Pleas and the Hamilton County Jury Commission in using procedures to discriminate against African-Americans in the selection of Hamilton County residents to serve on the grand jury violates the due process and equal protection clauses of the Fifth and Fourteenth Amendments and the "fair cross section" requirement of the Sixth Amendment in violation of Walter Raglin's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Pursuant to the Ohio Revised Code, the presiding judge in the State of Ohio has the right to choose the grand jury foreperson and that individual need not be chosen from the grand jury venire. If the presiding judge does not exercise that right, then the foreperson is selected by the same method as the other grand jurors.

In Hamilton County, the presiding common pleas court judges have traditionally chosen individual who were not included in the grand jury venire for purposes of serving as the grand jury foreperson. The common pleas court judge selection of foreperson during the period from 1982 through 1998 resulted in forepersons who were predominately Caucasian and male. The under representation is statistically significant.

The foreperson for the grand jury which capitally indicted Walter Raglin was also Caucasian and male.

This method for choosing grand jury forepersons insured that nearly all forepersons, at least in capital cases, during the relevant time period were Caucasian and male. The choosing of predominately male Caucasian forepersons was not only improper, but it also further exacerbated the racial and gender disparity in the grand jury composition.

The method for choosing grand jury forepersons during the relevant time period resulted in a violation of the "Fair Cross Section" requirement of the Sixth Amendment, and a violation

60

of Walter Raglin's right to equal protection and due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendments.

The Hamilton County Jury Commission and Hamilton County Common Pleas Court also employed an improper method for choosing Hamilton County residents to serve on Petit Juries in Hamilton County, including Walter Raglin's petit jury. This method results in an under representation of African-American on petit juries, including Walter Raglin's petit jury. The method used by the Hamilton County Jury Commission and Hamilton County Common Pleas Court to select Hamilton County Residents to serve on Petit Juries in Hamilton County was the same one used to select residents to serve on grand juries.

The Sixth Amendment guarantees criminal defendants the right to "a speedy and public trial, by an impartial jury . . . ." To achieve an impartial jury, the panels from which petit jurors are chosen must be drawn from a "fair cross section" of the community. *Duren v. Missouri*, 439 U.S. 357 (1979). If racial discrimination occurs in the selection process of the petit jury, the conviction must be reversed notwithstanding overwhelming evidence of guilt. *Vasquez v. Hillery*, 474 U.S. 254 (1986).

The Sixth Amendment right to a trial by jury includes the right to a jury drawn from a fair cross-section of the community. A similar right exists under the equal protection clause of the Fourteenth Amendment.

The actions of the Hamilton County Court of Common Pleas and the Hamilton County Jury Commission in using procedures to discriminate against African-Americans in the selection of Hamilton County residents to serve on petit juries, including Walter Raglin's petit jury, violate the due process and equal protection clauses of the Fifth and Fourteenth Amendments and the

"fair cross section" requirement of the Sixth Amendment in violation of Walter Raglin's rights

under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

**Twenty-Sixth Ground for Relief**: **Petitioner abandons this ground for relief in its entirety.**

### Issues related to trial court errors

**Twenty-Seventh Ground for Relief:** **Walter Raglin's constitutional rights as guaranteed by the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments were violated when the trial court, in its decision to impose a sentence of death, improperly considered and weighed invalid or improper aggravating circumstances; failed to specify the reasons why aggravation outweighs mitigation beyond a reasonable doubt; and failed to consider and weigh valid mitigating factors presented by the defense.; and when such error was not properly addressed on appeal.**

According to Ohio law, the trial jury's verdict of death is a recommendation to the trial

judge, who has final sentencing power to accept or reject that recommendation. If the court does

accept the recommendation and impose death, it is required to write a sentencing opinion

explaining its weighing process. Oh. Rev. Code § 2929.03(D)(3) and (F). Constitutional flaws

are evident in the trial judge's opinion sentencing Walter Raglin to death.

### A. The trial court improperly considered an uncharged and unproven statutory aggravating factor in sentencing Mr. Raglin to death.

In sentencing Mr. Raglin to death, the court relied upon an additional statutory

aggravating factor Mr. Raglin was neither indicted for nor convicted of. In the court's opinion, it

stated:

> The aggravating circumstances alleged in this case include the following, set forth in the Ohio Revised Code:
>
>> The offense was committed for the purpose of escaping detection, apprehension, trial or punishment for another offense committed by the offender.
>> [R.C. 2929.04(A)(3)]
>>
>> The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit...aggravated robbery..., and...the offender

62

> was the principal offender in the commission of the aggravated
> murder...
> [R.C. 2929.04(A)(7)]

(Sentencing Opinion, pp.7-8).

Such additional factor infected the weighing process and requires vacation of the death sentence in the present case. The court stated in the portion describing the weighing process as follows:

> The Defendant has been convicted of a crime which involved the
> killing of a human being during the commission of a robbery, or
> immediately thereafter for the purpose of escaping detection and
> prosecution.

(Sentencing Opinion, p. 10).

Ohio Revised Code §§2929.03 and 2929.04 direct the course of the court's sentencing determination. Ohio Revised Code §2929.03(D)(2) states that the court "shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case." Under these sections, the State is limited to introducing and arguing only evidence of the aggravating factors found in §2929.04(A)(1)-(8) which were alleged in the indictment and proved at trial. The State may also admit and argue any evidence in rebuttal to defense proof of mitigation circumstances.

Thus, the only aggravating factors that the court may consider are those found in Ohio Revised Code §2929.04(A) which were alleged in the indictment and proven in the trial phase. In *Barclay v. Florida*, 463 U.S. 939 (1983), the United States Supreme Court held that as a matter of law it would be erroneous for a Florida jury to consider factors not permitted by the Florida statute at the sentencing hearing. Moreover, the United States Supreme Court held in *Espinosa v. Florida*, 505 U.S. 1079 (1992), that "in a state where the sentencer weighs

63

aggravating and mitigating circumstances, the weighing of an invalid aggravating circumstance violates the Eighth Amendment."

The trial judge who sentenced Walter Raglin to death considered an uncharged wholly unproven statutory aggravating circumstance. Thus, Mr. Raglin's death sentence was imposed in violation of the Fifth, Eighth and Fourteenth Amendment capital sentencing and due process guarantees. He should be granted relief from the capital punishment imposed on him.

**B.    The trial court's failure to state reasons why aggravation outweighed mitigation.**

Ohio Revised Code Section 2929.03(F) requires the sentencing judge in a capital case to state, in a separate opinion, its specific findings as to the existence of any mitigating factors and the aggravating circumstances and "the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors."

Here, the trial court's sentencing opinion is devoid of *any* statement of the reasons when aggravation outweighs mitigation. Such an opinion cannot afford reviewing courts any basis for review of the decision, thus denying Mr. Raglin his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

It is not sufficient, particularly in this case, to attenuate the taint of unreliability for the Ohio Supreme Court to hold that its own review of aggravation and mitigation will cure the deficiency, as it has in other cases. *See State v. Gumm*, 73 Ohio St. 3d 413 (1996) *cert. denied* 116 S. Ct. 1275. For here, not only were the reasons justifying the death sentence not given by the trial court, the trial court also considered an improper aggravating circumstance, one for which Mr. Raglin was never indicted nor convicted. Here, this error was not properly addressed on appeal. *Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002).

64

C.    **The trial court failed to consider and weigh valid mitigating factors
presented by the defense**

Mr. Raglin presented substantial and persuasive evidence of mitigating factors. Trial

counsel maintained that Mr. Raglin's youth, his horrible upbringing, and psychological and

emotional deficits (entitled to consideration under both the Oh. Rev. Code §2929.04(B)(3) and

(7) factors).

The trial court briefly described the nature and circumstances of the offense in the section

entitled "Mitigating Factors Individually Considered," at page 8 of the sentencing opinion. The

court concluded that "the nature and circumstances of the offense are of a brutal nature and *in

themselves* do not recommend mercy or speak in mitigation." (Sentencing Opinion pp. 8-9).

The trial court considered the history, character and condition of Mr. Raglin, setting forth

essential facts concerning his family and personal history, but concluded, "[t]he history,

character and background of the Defendant have some minimal mitigating value but *nothing

sufficient to explain away his behavior* in this matter." (Sentencing Opinion p. 9).

Reviewing the testimony of the defense psychologist and acknowledging the diagnoses of

borderline personality disorder, antisocial personality disorder and mild neuropsychological

dysfunction resulting from head trauma and alcohol abuse, the trial court stated, "[t]he jury...did

not find *this controlling*. The Court in reviewing and weighing the mitigating factors agrees."

(Sentencing Opinion p. 9).

In discussing Mr. Raglin's youth, the trial court noted that at Mr. Raglin's age (18 at the

time of the offense), he had been using drugs for several years, was a fugitive from justice and

talked about and planned the offenses). The trial court concluded that "[t]he mitigating factor of

youth is present but not sufficiently so in this case. (Sentencing Opinion p. 10).

It is clear from the foregoing that the trial court considered and weighed the mitigating factors *individually* against the aggravating circumstances. The court further misapplied the standard with respect to the factor of Mr. Raglin's history, character and background, holding that youth was insufficient to "explain away" the offense. The trial court wrongly created a new test.

With respect to the nature and circumstances of the offense, Mr. Raglin did *not* contend that such was mitigating. The court erred in considering this factor. *State v. DePew* 38 Ohio St.3d 275 (1989).

The trial court also failed to consider the substantial evidence of Mr. Raglin's mental disease or defect, and his horrible family background as mitigating factors. Even where it is concluded that the (B)(3) mitigating factor is not established, the presence of mental and emotional problems is a substantial mitigating factor, entitled to consideration under Oh. Rev. Code §2929.04(B)(7). *State v. Green*, 66 Ohio St.3d 141 (___), *cert denied*, 510 U.S. 891. These were not considered here.

Although the trial court's opinion states that the court concluded that the aggravating circumstance was proved beyond a reasonable doubt "to outweigh all the mitigating factors" a review of the opinion shows that the trial court erred because it did not consider each mitigating factor found for their collective weight as required. (Sentencing Opinion, p. 11).

The trial court added an improper aggravating circumstance, the Oh. Rev. Code §2929.04(A)(3) factor, escaping detection, for which Mr. Raglin was neither indicted nor convicted.

Evidence presented also indicates that Mr. Raglin cooperated with police and gave a full confession, admitting his responsibility. This factor is entitled to weight. *State v. Hicks*, 43 Ohio

66

St.3d 72 (1989) *cert. denied*, 494 U.S. 1038.  During the mitigation phase of the proceedings,

Mr. Raglin expressed remorse and sorrow for what he had done and expressed sympathy to the

family of the deceased.  (Tr. 1643-1644).  The Ohio Supreme Court has recognized that remorse

has mitigating value.  *State v. Hicks*, 43 Ohio St. 3d 72 (1989), *cert. denied*, 494 U.S. 1038; *State

v. Brewer*, 48 Ohio St. 3d 50 (1990), *cert. denied*, 498 U.S. 881.  The trial court's sentencing

opinion does not even mention these significant factors.

     Mr. Raglin's death sentence is the result of an improper, skewed, weighing process

employed by the trial court, as demonstrated by the sentencing opinion.  Reversal of the death

sentence is required as a result of the violation of Mr. Raglin's Fifth, Sixth, Seventh, Eighth,

Ninth, and Fourteenth Amendment rights.

**Twenty-Eighth Ground for Relief: Petitioner abandons this ground for relief in its entirety.**

**Twenty-Ninth Ground for Relief: Walter Raglin was denied his constitutional rights to a fair trial and impartial jury under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments during the mitigation phase because the trial court permitted the prosecutor to introduce irrelevant and highly prejudicial evidence from the trial phase of the capital proceedings.**

     Prior to the commencement of the mitigation phase, the state offered all testimony and

exhibits from the trial phase of Mr. Raglin's capital proceedings into evidence.  Trial counsel

objected to the readmission of this testimony and evidence for the mitigation phase.  Trial

counsel argued that because the killing itself is not an aggravating circumstance, the photos were

not relevant to the aggravating circumstance, aggravated robbery.  The trial court overruled the

objection and the state introduced the photos of the deceased at the mitigation phase.  (R. 1549-

1550).

     Under Ohio law, the state is limited at the mitigation phase to introducing only evidence

which is relevant to the aggravating circumstances the offender was found guilty of committing.

*State v. DePew*, 38 Ohio St. 3d 275 (1989); *State v. Woodard*, 68 Ohio St. 3d 70 (1993); *State v. Williams*, 73 Ohio St. 3d 153 (1995). The killing itself is not an aggravating circumstances. *State v. Davis*, 38 Ohio St. 3d 361 (1988). Accordingly, evidence of the killing, or its nature and circumstances is not relevant to the determination to be made at the mitigation phase by the jury. The photos here served to emphasize that which was not part of the jury's consideration, but carried enormous prejudicial impact, certainly sufficient impact to outweigh their nonexistent probative value, especially considering that they were irrelevant to the issues at the mitigation phase. Trial counsel made a timely objection citing the relevant Ohio law. The trial court wholly ignored Ohio law and admitted the inflammatory evidence. As a result, Mr. Raglin's death sentence is infected with unreliability to render it violative of Mr. Raglin's constitutional rights.

**Thirtieth Ground for Relief: Walter Raglin was denied his constitutional rights under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments during the mitigation phase because the trial court permitted the prosecutor to introduce inadmissable rebuttal evidence that was unfairly prejudicial to Mr. Raglin's rights to a fair trial and impartial jury.**

During the mitigation phase of Mr. Raglin's capital proceedings, Mr. Raglin made an unsworn statement expressing remorse for the killing of Mr. Bany. (Tr. 1644). Other defense witnesses also testified that Mr. Raglin was remorseful for the killing. (Tr. 1571, 1593, Deposition of Walter Raglin, Sr., p. 23). The state sought to "rebut" this evidence by presenting the testimony of two corrections officers and a police officer as to statements made and actions taken by Mr. Raglin while in custody. (Tr. 1785-1820). The trial court overruled trial counsel's objections to the testimony of the corrections officers. (Tr. 1770, 1794). Following the testimony, trial counsel moved to strike the testimony and for a mistrial. Both motions were denied. (Tr. 1921-1822).

Corrections Officer Higgs testified that, while Mr. Raglin was incarcerated and awaiting trial in this case, when asked to move to another area while on the phone with a family member, became belligerent with the officer, stating, "Fuck that. I ain't got to listen to you," and later threatened to kill the officer as he was being subdued. (Tr. 1788). Officer Brown testified that he was working in the maximum security area on the fifth floor of the Justice Center where Mr. Raglin was housed and that on August 15, 2996, at approximately noon, a window as being replaced by workmen. When the window was removed, Mr. Raglin ran to the window and dove head first through the opening, from the fifth floor. (Tr. 1805). Mr. Raglin held onto the scaffold for a moment and then dropped, landing feet first on a lower roof on the third floor, injuring himself. Officer Brown, with the help of the fire department, went to the roof where Mr. Raglin submitted to arrest. Mr. Raglin was then transported to the hospital for treatment of the injuries he received in the fall. (Tr. 1812).

Clearly, this prejudicial evidence does not rebut statements that Mr. Raglin felt remorse for killing Mr. Bany. This highly prejudicial, irrelevant evidence served merely to inject evidence of a non-statutory aggravating circumstance, future dangerousness, which is not a permissible aggravating circumstance under Ohio law, and for which he was neither indicted nor convicted. *State v. Wogenstahl*, ; Oh. Rev. Code §§2929.04(B) and 2941.14(B).

The prosecutors sought to justify the admission of the following testimony on the basis of decisions of the Ohio Supreme Court. *State v. Loza*, 71 Ohio St.3d 61 (1994); *State v. Richey*, 64 Ohio St.3d 353 (1992); *State v. Dunlap*,73 Ohio St.3d 308 (1995). These cases actually reinforce Mr. Raglin's contention.

In this case, there was no evidence presented that Mr. Raglin lacked remorse for killing Mr. Bany. An escape attempt and a threat to a corrections officer are simply not probative or

69

relevant to the issue of remorse. Instead, these facts, even if true, only go to the issue of future

dangerousness which is not a proper aggravating circumstance.

Through the trial court's error in admitting this evidence, the jury was exposed to grossly

prejudicial, inflammatory, irrelevant evidence of nonstatutory aggravating factors, impermissibly

skewing the result of the sentencing process in violation of the Eighth Amendment. *Espinosa v.*

*Florida*, 505 U.S. 1079 (1992). Accordingly, Mr. Raglin's sentence must be reversed.

**Thirty-First Ground for Relief: Petitioner abandons this ground for relief in its entirety.**

**Thirty-Second Ground for Relief: Walter Raglin's rights as guaranteed by the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments were violated when the trial court committed multiple errors during the pretrial, trial and mitigation phases of his capital case.**

Throughout the proceedings in Mr. Raglin's capital case, the trial court made numerous

erroneous rulings that violated Mr. Raglin's constitutional rights. A non-exhaustive list of those

errors is set forth here:

5.      The trial court erred when it overruled trial counsel's objections to the improper arguments of the prosecutor during the trial and mitigation phases of Mr. Raglin's capital case.

6.      The trial court erred when it permitted improper arguments by the prosecutor during both the trial and mitigation phases of Mr. Raglin's capital case.

7.      The trial court erred when it overruled trial counsel's motions for mistrial made during both the trial and mitigation phases of Mr. Raglin's capital case.

8.      The trial court erred when it permitted the prosecutor to present evidence regarding the nature and circumstances of Mr. Raglin's offense during the mitigation phase of the trial.

9.      The trial court erred when it permitted the prosecutor to present evidence on rebuttal during the mitigation phase of Mr. Raglin's capital case that he tried to escape from custody, used harsh language while in custody, and that he had directed threatening language against a security officer at the jail.

10.      The trial court erred when it ruled that evidence of Mr. Raglin's history, character

70

and background could be admitted during the mitigation phase as evidence to support an aggravating circumstance.

11.   The trial court erred when it ruled that evidence of Mr. Raglin's history, character and background could be admitted during the mitigation phase as evidence to establish his future dangerousness.

12.   The trial court erred when it ruled that evidence of Mr. Raglin's history, character and background could be admitted during the mitigation phase as evidence to establish a non-statutory aggravating circumstance.

13.   The trial court erred when it permitted Mr. Raglin's counsel to concede his guilt from the outset of the trial phase.

Mr. Raglin asserts that any of these errors standing alone are violative of his

constitutional rights and warrant reversal in this case. At the very least, the cumulative effect of

these errors warrants relief in this case. As the Sixth Circuit Court of Appeals has stated:

> Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.

*Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983); *See also Mak v. Blodgett*, 970 F.2d 614, 622

(9th Cir. 1992).

### Systemic Issues Related to the Unconstitutional Application of the Death Penalty

**Thirty-Third Ground for Relief:** **Petitioner abandons this ground for relief in its entirety.**

**Thirty-Fourth Ground for Relief:** **Walter Raglin's death sentence is constitutionally infirm because Ohio's capital punishment system operates in an arbitrary, capricious and discriminatory manner in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments. Additionally, Walter Raglin's death sentence is constitutionally infirm because within Hamilton County, Ohio, the death penalty is selectively imposed, rendering the penalty as applied in Hamilton County, arbitrary and capricious on the one hand and the product of racial discrimination on the other.**

The Ohio capital punishment scheme allows for imposition of the death penalty in an

arbitrary and discriminatory manner, in violation of the protections mandated in *Furman v.*

*Georgia*, 408 U.S. 238 (1972) and it's progeny.

71

The United States Supreme Court's decision in *Woodson v. North Carolina*, 428 U.S. 280 (1976), made clear that the fatal flaw of mandatory death penalty statutes is that without specific standards, the process of deciding who is to be sentenced to death is shielded from judicial review. As stated in Paternoster, *Race of Victim and Location of the Crime: The Decision to Seek the Death Penalty in South Carolina*, Journal of Criminal Law and Criminology (1983):

> [T]he mandatory death penalty statute provided no standard to guide the jury in its inevitable exercise of the power to determine which first degree murders shall live and which shall die... There is no way under the North Carolina law for the judiciary to check arbitrary and capricious exercise of that power.

In Ohio the virtually uncontrolled discretion of prosecutors in indictment circumvents this requirement. The Ohio system results in the imposition of death penalties in an arbitrary and racially discriminatory manner, with blacks and those who killed white victims being most likely to get the death penalty.

Race matters in Ohio's administration of the death penalty. According to the Ohio commission on Racial Fairness: "Black males compose approximately five percent of Ohio's general population, yet they compose 50 percent of death row inmates." As the Commission found in it's report:

> One hundred seventy-five (175) people were the victims of those currently residing on Ohio's death row. Of those 175 victims, 124 were Caucasian and 42 were African-American. The numbers speak for themselves. A perpetrator is geometrically more likely to end up on death row if the homicide victim is white rather than black.

The Report of the Ohio Commission on Racial Fairness (1999), pages 37-38.

Racism in the imposition of the death penalty is the ultimate example of arbitrary, disproportionate, cruel and unusual punishment. It is the antithesis of any evolving standards of decency. It makes a mockery of equal justice, equal protection and the due process of law.

Ohio has systematic Constitutional problems in the administration of capital punishment. The American Bar Association has recently called for a moratorium on capital punishment unless and until each jurisdiction attempting to impose such punishment "implements policies and procedures that are consistent with…longstanding American Bar association policies intended to (1) Ensure that death penalty cases are administered fairly and impartially, in accordance with due process, and (2) minimize the risk that innocent persons may be executed…" As the ABA has observed in a report accompanying it's resolution, "administration of the death penalty, far from being fair and consistent, is instead a haphazard maze of unfair practices with no internal consistency." The ABA concludes that this morass has resulted from the lack of competent counsel in capital cases, the lack of a fair and adequate review process, and the pervasive effects of race.

The United Nations High Commissioner for Human Rights has recently studied the American capital punishment process, and has concluded that "guarantees and safeguards, as well as specific restriction on Capital Punishment, are not being respected. Lack of adequate counsel and legal representation for many capital defendants is disturbing." The High Commissioner further concluded that "race, ethnic origin and economic status appear to be key determinates of who will, and who will not, receive a sentence of death." The report also describes in detail the special problems created by the politicization of the death penalty, the lack of an independent and impartial state judiciary, and the racially-biased system of selecting juries. The report concluded:

> The high level of support for the death penalty cannot justify the lack of respect for the restrictions and safeguards surrounding its use. In many countries, mob killings and lynchings enjoy public support as a way to deal with violent crime and are often portrayed as "popular justice." Yet they are not acceptable in civilized society.

73

The Ohio capital punishment system suffers from all of the problems identified in the ABA and United Nations reports: the under-funding of counsel, the lack of fair and adequate appellate review process and the pervasive effects of race.

The Ohio Statutes also violate the mandate of the constitutional protections by requiring proof of aggravating circumstances in the trial phase of capital cases. The United States Supreme Court has approved schemes which separate the consideration of statutory aggravating circumstances from the determination of guilt because they provide an individualized determination and to narrow the category of defendants eligible for the death penalty. *See Zant v. Stephens*, 462 U.S. 862 (1983); *Barclay v. Florida*, 463 U.S. 939 (1983). Ohio's statutory scheme can not provide for these constitutional safeguards. By requiring proof of the aggravating specifications simultaneously with proof of guilt, Ohio has effectively prohibited a sufficient individualized determination in sentencing as required by post *Furman* cases. *See Woodson*, 428 U.S. at 961. The jury must be free to determine whether death is the appropriate punishment for a defendant. By not requiring the state to establish guilt on the question of murder prior to the jury's consideration of the aggravating circumstances, the jury is unconstitutionally barred from making the necessary individualized determination of appropriateness. This is especially prejudicial where, as in Ohio, the consideration of aggravating circumstances is accomplished without consideration of any mitigating factors.

The Ohio scheme is also unconstitutional because it burdens a defendant's right to trial. A defendant who decides to plead guilty or no contest to an indictment, which contains one or more capital specifications, receives the benefit of having the trial court judge vested with the discretion to dismiss the specifications "in the interest of justice." Ohio R. Crim. P. 11(C)(3). Accordingly, the capital indictment may be dismissed regardless of the presence or absence of

74

mitigating circumstances. No such corresponding provisions exists if a capital defendant elected

to proceed to trial before a jury. *See Lockett v. Ohio*, 438 U.S. 586 (1978) (Blackmun J.,

concurring). *See also United States v. Jackson*, 390 U.S. 570 (1968).

The Ohio capital statutes are also unconstitutional because they require submission of the

presentence report and mental evaluation to the jury or judge once requested by a capital

defendant. Oh. Rev. Code §2929.03(D)(1) provides:

> A pre-sentence investigation or mental examination shall not be
> made except upon the request of the defendant. Copies of any
> reports prepared under this division <u>shall</u> be furnished to the court,
> to the trial jury if the offender was tried by a jury, to the
> prosecutor, and to the offender or his counsel for use under this
> division.

(emphasis added). That mandatory submission prevents a capital defendant from effectively

presenting his case in mitigation because all information in these reports, no matter how

prejudicial, must go to the jury. This requirement of Oh. Rev. Code § 2929.03 (D)(1) violates

the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

The proportionality system in Ohio is also constitutionally flawed because of the method

used for case comparison.[8] The Ohio Supreme Court in *State v. Steffen*, 509 N.E.2d 383, 385

(1987) held that "the proportionality review required by O.R.C. §2929.05 (A) is satisfied by a

review of those cases already decided by the reviewing court in which the death penalty has been

imposed." By only reviewing cases in which death was imposed, the capital defendant is

prevented from receiving a fair proportionality review. Ohio courts have failed to find even one

death sentence to be disproportionate in nineteen years.

---

[8] See Mr. Raglin's _____ Ground for Relief.

75

The appropriateness analysis used by the Ohio Courts of Appeals and the Supreme Court of Ohio is also infirm. Ohio Revised Code §2929.05(A) requires the appellate courts of Ohio to determine the appropriateness of the death penalty in each capital case they review. The statute directs the court to " affirm a sentence of death only if the particular court is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case and that the sentence of death is the appropriate sentence in the case." The Supreme Court of Ohio and the Courts of Appeal have failed to follow the dictates of the statute. The appropriateness review ultimately conducted in each case is too cursory. It does not "rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." *Spaziano v. Florida*, 468 U.S. 447, 460 (1984). Any death sentence upheld on appeal under these circumstances violates the defendant's due process liberty interest in that statutory right. *See Evitts v. Lucey*, at 401, 469 U.S. 387, 404 (1985).

Ohio's capital statutory scheme permits the arbitrary and discriminatory imposition of the death penalty. Ohio Revised Code §§ 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.04 and 2929.05 violate Mr. Raglin's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. Thus, Mr. Raglin's sentence of death must be reversed.

**Thirty-Fifth Ground for Relief**: **Petitioner abandons this ground for relief in its entirety.**

## Cumulative Errors

**Thirty-Sixth Ground for Relief**: **Walter Raglin's conviction and death sentence are invalid under the federal constitutional guarantees of due process, equal protection, the effective assistance of counsel, and a reliable sentence due to the cumulative errors in the admission of evidence and instructions, and gross misconduct of state officials in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

76

Walter Raglin hereby incorporates all of the allegations contained elsewhere in this petition as if fully rewritten in this claim.

The Eighth and Fourteenth Amendments require a heightened degree of reliability in the determination that the death penalty is the appropriate punishment.

Each of the claims specified in this petition requires the granting of habeas relief.

The cumulative effect of the errors demonstrated in this petition was to deprive the proceedings against Mr. Raglin of fundamental fairness and to result in a constitutionally unreliable sentence. Whether or not any individual error requires greater relief, the totality of these multiple errors and omissions resulted in substantial and injurious harm to Mr. Raglin.

The Warden cannot show, beyond a reasonable doubt, that the cumulative effect of these numerous constitutional errors was harmless beyond a reasonable doubt. In the alternative, the totality of these constitutional violations substantially and injuriously affected the fairness of the proceedings and prejudiced Mr. Raglin.

**Thirty-Seventh Ground for Relief: Brady Claim**.

Trial prosecutors have an affirmative duty to timely provide to defense counsel all exculpatory evidence, that is relevant to either the trial or sentence. Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-1197 (1963); United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985). That constitutional duty applies not only information in the prosecutor's file, but all information in the possession of other state agencies. Kyles v. Whitley, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567 (1995).

The trial prosecutors failed in Walter Raglin's case to meet their constitutional obligations. The State violated its affirmative duty to inform defense counsel that statements taken by investigating police clearly indicated that Walter Raglin expressed remorse for his

77

involvement in the shooting death of Michael Bany. The State's failure constituted a violation of the rule of Brady v. Maryland and its progeny.

The United States Supreme Court emphasized the efficacy of the rule of Brady in Kyles v. Whitley. In reversing a decision of the Fifth Circuit Court of Appeals affirming the denial of habeas relief, the Court first restated the holding in Brady by noting "'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S., at 87.'" Id. at 1565. (quoting Brady v. Maryland, 373 U.S. 83 (1963)).

On January 4, 1996, Police Officer Bill Couch of the of the Cincinnati Police Department's Homocide Unit, interviewed Natasha Lowery. She stated that Walter Raglin and Darnell Lowery (her brother) arrived at her apartment shortly after the robbery and told her what happened. Walter Raglin was hyperventilating, "breathing hard. I thought it was some kind of asthma." As Walter was describing what occurred, he began vomiting. Throughout that day Walter Raglin was sick, he was crying and acting strangely.

On January 4, 1996, Police Officer Bill Couch and Police Specialist Dan Argo interviewed Ronnell Mumphrey, who was also present in Natasha's apartment on the morning of the robbery and shooting of Michael Bany. Mumphrey confirmed that Mr. Raglin was crying and throwing up. Ronnell added, "He [Raglin] came to me an' asked me like Ronnell do you think the Lord will forgive me."

The statements of both individuals were material to sentencing. The statements demonstrated that Walter Raglin was indeed remorseful about the death of the victim. Remorse is a mitigating factor that the Ohio Supreme Court has recognized as worthy of being given weight and effect. State v. Ashworth, 85 Ohio St. 56, 72, 706 N.E.2d 1231, 1243 (1999); State v.

Jackson, 92 Ohio St. 3d 436, 452, 751 N.E.2d 946, 965 (2001). In some instances, it is a mitigating factor entitled to "significant weight". State v. Clifton White, 85 Ohio St. 3d 433, 456, 709 N.E.2d 140, 161 (1999).

The State devalued Mr. Raglin's expression of remorse at trial by calling corrections officers from the Hamilton County Justice Center as rebuttal witnesses. [Tp. 1742-1745.] In closing at the penalty phase, the prosecutors argued that Mr. Raglin had no remorse for his crimes. The prosecutors specifically attacked Mr. Raglin's unsworn statement in which he expressed remorse. [Tp. 1847-1848; 1898; 1904-1905.] If the prosecutors had provided the statements of Natasha Lowery and Ronnell Mumphrey, defense counsel would have had access to **independent** witnesses who would have corroborated Walter Raglin's expressions of remorse. In addition defense counsel would have objected to the prosecutor's misstatements in closing argument.

There is a reasonable likelihood that the outcome of the sentencing proceeding would have been different if the trial prosecutors had supplied defense counsel with this information.

Walter Raglin requests discovery under the Ohio Rules of Civil Procedure and an evidentiary hearing this claim. Denial of the request for discovery and an evidentiary hearing as it relates to this claim will amount to a denial of substantive and procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

**Thirty-Eighth Ground for Relief:  Giglio Claim**

In closing argument in the mitigation phase, the prosecutors argued that Walter Raglin had no remorse for his crimes. The prosecutors specifically attacked Walter Raglin's unsworn statement in which he expressed remorse. [Tr. 1847-1848; 1898; 1904-1905.]

The prosecutor's assertion was incorrect, Walter Raglin was extremely distraught concerning the victim's death.

On January 4, 1996 Natasha Lowery told Police Officer Bill Couch of the of the Cincinnati Police Department's Homocide Unit, that Walter Raglin and Darnell Lowery (her brother) arrived at her apartment out of breath Walter Raglin told her what happened. Walter Raglin became sick, was crying and acted strangely.

On January 4, 1996, Ronnell Mumphrey reported to Police Officer Bill Couch and Police Specialist Dan Argo that he was also present in Natasha's apartment on the morning of the robbery and shooting of Michael Bany. Mumphrey confirmed that Walter Raglin was crying and throwing up. Ronnell added, "He [Raglin] came to me an' asked me like Ronnell do you think the Lord will forgive me."

A prosecutor cannot knowingly present false testimony or argument to obtain a conviction or sentence of death. Napue v. Illinois, 360 U.S. 264, 268, 79 S. Ct. 1173, 1177 (1959); Mooney v. Holohan, 294 U.S. 103, 112, 55 S. Ct. 340, 342 (1935). The prosecutor has a constitutionally imposed duty to either correct the false argument or to make defense counsel aware of the false argument. The deliberate deception of a court and jurors by the presentation of argument known to be false violates the Fourteenth Amendment. In other words, the State cannot create a materially false impression regarding the facts of the case or the credibility of the witness. The knowing use of false testimony entitles the accused to a new trial "if there is any reasonable likelihood the false testimony could have affected the verdict." United States v. Agurs, 427 U.S. 97, 96 S. Ct. 2392 (1976); Napue v. Illinois, 360 U.S. 264, 79 S. Ct. 1173 (1959). The same result obtains when the government, although not soliciting false evidence,

allows it to go uncorrected when it appears. <u>Giglio v. United States</u>, 405 U.S. 150, 153, 92 S. Ct. 763, 766 (1972).

In closing at the penalty phase, the prosecutors argued that Walter Raglin had no remorse for his crimes. The prosecutors specifically attacked Walter Raglin's unsworn statement in which he expressed remorse. [Tr. 1847-1848; 1898; 1904-1905.]

The prosecutors knew that their arguments were false. The prosecutors had the statements of Natasha Lowery and Ronnell Mumphrey in their trial file which demonstrated that Walter Raglin was remorseful.

The prosecutor's use of this false argument entitles Walter Raglin to a new sentencing because there is a reasonable likelihood that this false argument affected the sentencing verdict. Walter Raglin's constitutional rights were violated as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments and his conviction and sentence are void or voidable.

## V.  NOTICE OF INTENTION TO CHALLENGE PRESUMPTION OF THE CORRECTNESS OF ALL STATE COURT FACT-FINDINGS AND THE APPLICATION OF 28 U.S.C. § 2254 (D) AND (E) (POST-AEDPA) TO THIS CASE.

The Ohio Attorney General, as counsel for the Respondent in other federal habeas cases, has argued that the petitioner must challenge the applicability of the presumption of correctness of state court fact-findings when he files his petition. While Walter Raglin disputes the validity of this argument, he nonetheless provides notice of his intentions to challenge the presumption of correctness of all state court fact-findings made in this case. *See* 28 U.S.C. §2254(d) (Pre-Antiterrorism and Effective Death Penalty Act – "AEDPA"); 28 U.S.C. §2254(e)(1) (post-AEDPA). These include, but are not limited to, any factual findings (1) made by the trial court during the trial and the post-conviction proceedings; (2) made by the intermediate appellate court

during the post-conviction appeals; and (3) made by the Ohio Supreme Court during the direct

and post-conviction appeals.

## VI. PRAYER FOR RELIEF

Wherefore, Petitioner Raglin respectfully prays that this Court:

1. Issue a writ of habeas corpus to have Petitioner Raglin brought before it to the end that he might be discharged from his unconstitutional confinement and restraint;

2. Issue a writ of habeas corpus to have Petitioner Raglin brought before it to the end that he may be relieved of his unconstitutional sentences;

3. Permit Petitioner Raglin who is indigent, to proceed *in forma pauperis*;

4. Grant Petitioner Raglin the authority to obtain subpoenas *in forma pauperis* for witnesses and documents necessary to prove the facts alleged in this petition;

5. Conduct a hearing at which proof may be offered concerning the allegations of this petition;

6. Stay Petitioner Raglin's execution (if necessary) pending final disposition of this petition;

7. Order the Respondent to file an answer or other responsive pleading to Petitioner Raglin's petition;

8. Order the Respondent to provide the Court with a complete record of all proceedings in Petitioner Raglin's case;

9. Grant other such relief as may be appropriate and to dispose of the matter as law and justice require.

Respectfully submitted,

James D. Owen (#0003525)
Cloud & Owen
5354 North High St., Suite 3D
Columbus, Ohio 43214
Telephone:  (614) 436-3211
Fax:  (614) 436-6788

Counsel for Petitioner Raglin

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing **FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS** was sent by regular U.S. mail to the following persons this 1st day of August, 2003.

Charles L. Wille, Esq.
Henry Appel, Esq.
Assistant Attorneys General
Capital Crimes Section
State Office Tower
30 East Broad Street
23rd Floor
Columbus, Ohio  43215
Counsel for Respondent

James D. Owen (#0003525)

83