**PROCEDURAL HISTORY**

Respondent Betty Mitchell (hereinafter Respondent) denies each and every allegation in the instant petition for writ of habeas corpus, except as may be expressly admitted in this return and any attachments hereto. Respondent says that, as Warden of Mansfield Correctional Institution, she has custody of Petitioner Walter Raglin (hereinafter Raglin) by virtue of a journal entry of sentence issued by the Court of Common Pleas, Hamilton County, in <u>State v. Raglin</u>, Case No. B-9600135. (Apx. at Vol VI, p. 721)

**1.     Trial**

On January 16, 1996, the Grand Jury of Hamilton County, Ohio, indicted Raglin for aggravated murder of Michael Bany in violation of Ohio Revised Code Section 2903.01(B). The indictment included a capital specification alleging that the aggravated murder was committed while Raglin was committing, attempting to commit, or fleeing immediately after committing or attempting to commit aggravated robbery, and that Raglin was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design. (EXHIBIT)[1].

At his arraignment on January 26, 1996, Raglin entered a plea of not guilty. (Apx. at Vol V, p. 5A) A pre-trial hearing was held on February 22, 1996, to determine when various motions would be heard by the court. The defendant filed a motion to suppress (Apx. at Vol. V, p. 51) and to sever the charges for trial. (Apx. at Vol V, p. 56) A hearing was held on April 25, 1996, wherein the motion to sever counts one and two from counts three and four was granted. (Apx. at

---

[1] Raglin was indicted on four counts. Count Four charged Raglin with aggravated murder and included the capital specification. Count Three of the indictment charged Raglin with the aggravated robbery of Mr. Bany. Counts One and Two of the indictment charged offenses that were unrelated to the robbery and aggravated murder. Counts Two, Three, and Four also carried a firearm specification. Raglin eventually entered a plea of no contest to Count One and the accompanying specification. The state eventually dismissed Count Two.

Vol V, Tr. p. 31). The motion to suppress hearing also held on April 25, 1996, resulted in the trial judge denying the defendant's request to suppress his taped confession. (Apx. at Vol V, p. 65) Prior to trial, Raglin filed, inter alia, 24 motions in this case. A hearing was held on May 29, 1996, to present these motions to the court. These motions involved character evidence of the victim, change of venue, proposed jury instructions, photographic evidence, discovery, and voir dire. (See Apx. at Vol V) Most of these motions were denied on May 31, 1996. (See Apx. at Vol V)

On October 17, 1996, Raglin was found guilty as charged. (Apx. at Vol VI, p. 651-653) The jury recommended the imposition of the death penalty and the judge adopted the jury's recommendation of death. (Apx. at Vol VI, p.705).[2]

**2.    Direct Appeal**

On December 30, 1996, Raglin filed a notice of appeal of his convictions and sentences to the Supreme Court of Ohio. On January 3, 1997, Raglin filed a notice of appeal to the Hamilton County Court of Appeals. On January 10, 1997, the Court of Appeals struck the notice and directed Raglin to file a notice of appeal to the Ohio Supreme Court. (Apx. at Vol VI, p. 797) Raglin then filed a merit brief at the Ohio Supreme Court on November 24, 1997 with the following twenty-one allegations of error stated as propositions of law:

1. Where in a capital case, the sentencing court considers and weighs invalid or improper aggravating circumstances; fails to consider and weigh valid mitigating factors presented by the defense; and fails to specify the reasons why aggravation outweighs mitigation beyond a reasonable doubt, the death sentence offends the Eighth Amendment to the Constitution of the United States, and the right to due process

---

[2] Raglin was also sentenced to terms of imprisonment of three to five years, ten years to twenty-five years, and three years actual incarceration. (Apx. at Vol VI, p. 721)

under the Fourteenth Amendment, and their counterparts in the Ohio Constitution, and must be reversed.

2. Involuntary manslaughter is always a lesser included offense of aggravated murder, and where the accused has denied a purposeful killing, he is entitled by due process to an instruction on the lesser offense, and denial of a proper request for an instruction on the lesser offense violates the due process clause of the U.S. and Ohio Constitutions, rendering the conviction of capital murder unconstitutional, and the death sentence void.

3. Where the State fails to prove beyond a reasonable doubt the essential element of purpose to kill, convictions for aggravated murder must be reversed as contrary to the right of the accused to due process of law under the Ohio and Federal Constitutions.

4. Convictions for aggravated murder which are contrary to the manifest weight of the evidence must be reversed, as contrary to the right of the accused to due process of law under the Ohio and Federal Constitutions.

5. Egregious misconduct by the prosecutor in the penalty phase of capital proceedings requires reversal, and where the prosecutor's final argument for death argues nonstatuary aggravating factors, argues "facts" outside the evidence, attacks the relevance of evidence admitted by the court, contains inflammatory remarks and invective against the accused and his counsel, a death sentence based on a jury verdict following such arguments violates due process and the Eighth Amendment of the United States Constitution, and their counterparts in the Ohio Constitution, requiring reversal of the death sentence.

6. A death sentence is imposed in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution, and Art. I. Secs. 9 and 16 of the Ohio Constitution, following a penalty trial in which the trial court denies a defense motion to limit the State to presentation of evidence of the aggravating circumstances, and permits the State to reintroduce all evidence it presented at the trial phase, including inflammatory irrelevant evidence about the nature and circumstances of the killing itself.

7. One who commits aggravated murder prior to January 1, 1996, but is sentenced thereafter, is entitled to the benefit of an instruction permitting the jury to consider the sentencing alternative of life without parole, and the denial of a defense motion that the jury be permitted to consider that alternative violates the rights of the defendant under R.C. 1.58 (B), O. Const. Art.II, Sec. 15 (D), the

Fourteenth Amendment right to due process of law, the Eighteenth Amendment prohibition against cruel and unusual punishment, and their counterparts in the Ohio Constitution, Art. I. Secs. 9 and 16.

8. It is impermissible under the Eighth and Fourteenth Amendments to the U.S. Constitution and Art. I. Secs. 9 and 16 of the Ohio Constitution for the trial court to instruct the jury that their verdict is merely a recommendation, as such an instruction impermissibly attenuates the jury's sense of responsibility for its decision, and a death sentence imposed following such an instruction is Constitutionally infirm.

9. Where jury instructions at the penalty phase of capital proceeding misstate the law to the jury, fail to define mitigating factors, exclude relevant mitigation, and is otherwise erroneous and misleads the jury, the resulting death sentence violates the Eighth and Fourteenth Amendments, and Art.I. Secs. 9 and 16 of the Ohio Constitution, and must be reversed.

    A. The trial court instructed the jury that they should consider all evidence admitted at the guilt-innocence phase of the proceedings, including the photos of the body of the deceased, to the introduction of which Appellant had objected.

    B. The trial court defined beyond a reasonable doubt as that state of mind where the jury is firmly convinced of the charge, rather than reasonable doubt where the jury is not firmly convinced that the aggravating circumstance outweighed the mitigating factors.

    C. The trial court failed to define mitigating circumstances, merely advising the jury which mitigating factors were to be considered.

    D. The failure of the trial court to define mitigating factors is even more prejudicial given the fact that, in setting forth the mitigating factors the jury was to consider, the trial court stated the (B)(7) factor as "any other factors that are relevant to the issue of whether the Defendant should be sentenced to death," contrary to a proper defense request for such an instruction that the (B)(7) factor included any other factors that call for a penalty less than death, including remorse and cooperation.

    E. The penalty phase instructions were also erroneous in that, in defining aggravating circumstances, the trial court include[ed] the killing itself, having denied a defense motion to instruct the jury that the killing itself was not an aggravating factor.

    F. The trial court in effect instructed the jury that it had to consider, and reject, the death sentence before considering either life option.

    G. The trial court instructed the jury that any life verdict it returned would be binding upon the trial court, also instructing the jury, *sub silentio*, that the trial court could overrule a death verdict, contrary to the Eighth Amendment rights of Appellant.

    H. The trial court instructed the jurors to consider as a mitigating factor the nature and circumstances of the offense although that factor was not advanced by Appellant in mitigation.

    I. The trial court refused defense requests to instruct the jury as requested by the defense to the mitigating factors of remorse, residual doubt and cooperation with police, although those are well-recognized mitigating factors.

10. The increased need for reliability required in capital cases by the Ohio and Federal Constitutions mandates the granting to the defense more than six peremptory challenges.

11. It is error prejudicial to the right of the accused to a fair reliable, and impartial capital sentencing process, secured to him by the Eighth and Fourteenth Amendments to the U.S. Constitution and O. Const. Secs. 9 and 16, for the trial court to permit the State to present evidence of other bad acts and statements of the accused not related to the offense in question, ostensibly to rebut statements of the accused that he feels remorse for taking the life of the victim in the case in which he is being sentenced.

12. The Ohio Death Penalty Statutes are unconstitutional, violating the Eighth Amendment proscription of cruel and unusual punishments, the Fourteenth Amendment guarantees to due process of law and to the equal protection of the laws, and also violating the concomitant provisions of the Ohio Constitution.

    A. The death penalty is so totally without penological justification that it results in the gratuitous infliction of suffering, and that consequently, there is no rational state interest served by the ultimate sanction.

    B. Both locally, statewide and nationally, the death penalty is inflicted disproportionately upon those who kill whites as opposed to those who kill blacks, and even within Hamilton County, the death penalty is selectively imposed, rendering the penalty as

applied in Hamilton County arbitrary and capricious on the one hand, and the product of racial discrimination on the other.

C. The use of the same operative fact to first elevate what would be "ordinary" murder to aggravated murder, and then to capital, death-eligible aggravated murder permits the state (1) to obtain a death sentence upon less proof in a felony murder case than in a case involving proper calculation and design, although both crimes are ostensible equally culpable under the revised code, and (2) fails to narrow the capital class to those murderers for whom the death penalty is constitutionally appropriate.

D. The requirement that a jury must recommend death upon proof beyond a reasonable doubt that the aggravating circumstances outweigh only to the slightest degree the mitigating circumstances renders the Ohio capital statutes quasi-mandatory and permits the execution of an offender even though the mitigating evidence falls just short of equipoise with the aggravating factors, with the result that the risk of putting someone to death when it is practically as likely as not that he deserves to live renders the Ohio Capital process arbitrary and capricious, and, in the absence of a requirement that before death may be imposed, aggravating factors must substantially outweigh mitigating factors, unconstitutional.

E. The Ohio capital statutes are constitutionally infirm in that they do no permit the extension of mercy by the jury even though aggravating factors may only slightly outweigh mitigating factors.

F. The provisions of Crim. R. 11 (C)(3) permitting a trial court to dismiss specifications upon a guilty plea only under the nebulous and undefined concept "in the interests of justice" (1) needlessly encourages guilty pleas and the concomitant waiver of the right to jury, to compulsory process and to confrontation and (2) reintroduces the possibility that the death sentence will be imposed arbitrarily and capriciously.

G. The Ohio Capital Sentencing scheme is unconstitutional because it provides no standards for sentencing or review at several significant stages of the process and consequently death sentences are imposed, and reviewed, without sufficient statutory guidance to juries, trial courts and reviewing courts to prevent the unconstitutional arbitrary and capricious infliction of the death penalty.

H. The decision of the Supreme Court of Ohio *in State v. Gumm* and *State v. Wogenstahl* has rendered the Ohio capital statutes

    unconstitutional in that they encourage, rather than prevent, the arbitrary and capricious imposition of the penalty of death.

    I. The amendments to the Ohio constitution occasioned by the passage of Issue One, and the amendments to the revised code enacted by the general assembly to facilitate the changes in the Ohio Constitution governing capital cases, violate the right of capital defendants to be free from cruel and unusual punishments, secured to them by the eighth amendment to the U.S. Constitution, and to Due Process of law and the Equal Protection of the Laws secured to them by the Fourteenth Amendment to the U.S. Constitution. The amendment to R.C. 2953.02, purporting to enable the Supreme Court to weigh evidence in a capital case violates the Ohio Constitution.

13. The rejection by the Court of Appeals of a capital defendant's notice of appeal to that Court pursuant to Issue One deprives the defendant of due process of law and the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States, and also of his rights under the Eighth Amendment where he has been sentenced to death in the trial court.

14. The admission of involuntary, incriminating statements, or those given without a valid waiver of the suspect's privilege against self-incrimination, violates that privilege, guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and Art. I., Sec 10 of the Ohio Constitution.

15. Where the state fails to prove beyond a reasonable doubt at the penalty phase of a capital prosecution that the aggravating circumstances of which the offender was convicted outweigh the mitigating factors established by the evidence, a death sentence imposed violates the rights of the accused under the Eighth and the Fourteenth Amendment to the Constitution of the United States, as well as rights secured to the offender by the revised code.

16. A prosecutor's argument which goes beyond the facts in evidence is improper and, even where defense objections are sustained, violates the right of the accused to due process under the U.S. and Ohio Constitutions.

17. Where, in a capital case, the guilt phase jury instructions, over defense objections, state (1) that the essential element of cause as being where the death is the foreseeable result of the act, and (2) that purpose may be inferred from the use of a deadly weapon, the right of the accused

    to due process of law under the Fourteenth Amendment to the U.S. Constitution has been violated, requiring reversal of his conviction.

18. A death sentence recommended by a jury from service on which one or more veniremen were excused because of their views concerning capital punishment cannot stand unless it affirmatively appears on the record that each such veniremen excused for cause unequivocally indicates that his scruples against capital punishment will automatically prevent him from recommending the death penalty and/or that such views will render him unable to return a verdict of guilty no matter what the evidence, and that he is prevented by his scruples from following the instructions of the Court and considering fairly the imposition of the death sentence.

19. It is constitutionally impermissible under the equal protection and due process clauses of the Fourteenth Amendment to the U.S. Constitution for the State, in a Capital Prosecution, to exclude from the jury prospective jurors solely on the basis of their race.

20. To comport with due process under the United States and Ohio Constitutions, and the Ohio Capital Statutes, for purposes of proportionality review, death sentences must be compared with all other cases within the jurisdiction in which the death sentence was imposed, as well as those capital cases in which it was not imposed.

21. Where, during a criminal trial, there are multiple instances of error, and the cumulative effect of such errors deprives the accused of a fair trial and undermines the reliability of the conviction and the sentence of death imposed upon a jury verdict, the rights of the accused to due process and to be free from cruel and unusual punishment, under the Fourteenth and Eighth Amendments, respectively, of the United States Constitution, and their corollaries in the Ohio Constitution, have been violated, requiring reversal.

(Apx. at Vol VI, p.799)  The State filed a brief in response on February 9, 1998. (Apx. at Vol VI, p. 973)  On September 30, 1998, the Ohio Supreme Court overruled Raglin's propositions of law and affirmed the court of appeals judgement. (Apx. at Vol VII, p. 1038-1068)  State v. Raglin, 83 Ohio St.3d 253, 699 N.E.2d 482 (1998), (Case No. 96-2872, 97-0141).

    On January 4, 1999, Raglin filed a petition for writ of certiorari in the United States Supreme Court. On March 1, 1999, Raglin's petition for writ of certiorari was denied. (Apx. at

Vol VII, p. 1072-1073)  Raglin v. Ohio, 525 U.S. 1180, 119 S.Ct. 1118 (1999), (Case No. 98-7376).

3.   **State Post-Conviction Petition and Appeal**

On February 2, 1998, Raglin filed a post conviction petition in the Hamilton County Court of Common Pleas alleging the following twenty-two grounds for relief:

1. The judgment and sentence against Raglin are void or voidable because the recent amendments to the Ohio post-conviction process violate his constitutional rights to procedural due process which the Ohio and United States Constitutions afford him.

2. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during the trial phase of his capital trial. Counsel fell far below a minimum standard of reasonable legal representation for the failure to zealously pursue a motion for a new trial.

3. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation when counsel failed to make a motion for change of venue after voir dire questioning revealed a number of jurors who had knowledge of Raglin's case due to media coverage exposure. This error violated Raglin's right to a fair trial.

4. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation in that they failed, during voir dire, to adequately inquire of the prospective juror's openness to mitigation topics such as the young age of Raglin, and to the extreme conditions under which Raglin grew up and lived.

5. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation for failure to present psychological information critical to Raglin's mitigation defense.

6. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal

representation for failure to present information critical to Raglin's mitigation defense, specifically expert testimony regarding homeless, or "street" culture.

7. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation for failure to prepare Raglin adequately for presentation of his unsworn statement.

8. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation by repeatedly conceding Raglin's guilt at the trial phase without his consent.

9. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation by presenting conflicting arguments to the jury, first conceding Raglin's guilt to the charge of aggravated murder in voir dire and opening statement, and then arguing in closing statement that the State failed to prove purpose beyond a reasonable doubt.

10. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation by failing to challenge juror Tara Veesart for cause, or with a peremptory challenge.

11. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation by failing to file motions to suppress Raglin's statement to law enforcement on the basis that his arrest was unconstitutional.

12. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation by failing to request an instruction on the lesser included offense of involuntary manslaughter until after the defense rested, thus precluding the defense from putting on evidence to support its request for the manslaughter instruction.

13. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his

trial. Counsel fell far below a minimum standard of reasonable legal representation by failing to investigate a toxicologist with respect to the effect that substance abuse had on Raglin's behavior on the night of the offense and on the night of Raglin's arrest.

14. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation by failing to have Raglin testify at the hearing to suppress his taped statement to the police.

15. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation by failing to introduce evidence that the victim, Michael Bany, was intoxicated at the time of the offense.

16. The judgement and sentence against Raglin are void or voidable because he did not receive effective assistance of counsel during his trial. Counsel fell far below a minimum standard of reasonable legal representation by failing to investigate and obtain a firearms expert with respect to whether Raglin's gun had a hair trigger, and if it is possible to shoot someone without purpose even with a gun that does not have a hair trigger.

17. The judgement and sentence against Raglin are void or voidable because of the definitions which the trial Court used in its instructions to the jury, including " beyond a reasonable doubt," "reasonable doubt," and circumstantial evidence which the trial Court used in its instructions to the jury.

18. The judgement and sentence against Raglin are void or voidable because of the misconduct of the prosecutors at his trial. This misconduct resulted in actual prejudice to Raglin by invalidating the jury determination of his conviction and sentence recommendation.

19. The judgement and sentence against Raglin are void or voidable because he did not receive the effective assistance of counsel during all phases of his capital trial. Counsel fell far below a minimum standard of reasonable legal representation. The cumulative impact of the litany of errors during Raglin's trial rendered his capital proceedings unconstitutional.

20. The judgement and sentence against Raglin are void or voidable because the guilt verdicts were against the manifest weight of the evidence.

21. The judgement and sentence against Raglin are void or voidable because the trial Court overruled Raglin's Crim. R. 29 motions when there was insufficient evidence to support his convictions.

22. The judgement and sentence against Raglin are void or voidable because he did not receive the effective assistance of counsel during all phases of his capital trial. Counsel fell far below a minimum standard of reasonable legal representation by failing to investigate a toxicologist with respect to the effect that substance abuse has on Raglin's behavior the day he was arrested and gave his statement to the police.

(Apx. at Vol VII, p. 1164) On the same day, Raglin filed a motion for request of funds for expert assistance. (Apx. at Vol IX, p. 2026) The State field a memorandum in opposition to Raglin's Motion for Experts on February 6, 1998 (Apx. at Vol IX, p. 1138) and a Motion to Dismiss Raglin's Post-Conviction Petition on April 3, 1998 (Apx. at Vol IX, p 2320). Raglin filed a Memo Contra to the State's Motion to Dismiss on April 16, 1998. (Apx. at Vol IX, p. 2356) The trial court denied the request for expert assistance on February 6, 1998. On April 17, 1998, the trial court issued its Findings of Fact, Conclusions of Law and Entry Dismissing Petition to Vacate. (Apx. at Vol IX, p. 2411) (Case No. B-9600135)

On May 15, 1998, Raglin filed a timely Notice of Appeal for Post-Conviction relief. Raglin then appealed the dismissal of his post-conviction petition to the First District Court of Appeals on September 10, 1998, raising the following two assignments of error:

1. The trial court erred in granting the State's motion to dismiss appellant's post-conviction petition in violation of appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

2. The trial court erred in denying appellant's motions for request of funds for expert assistance in violation of appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(Apx. at Vol X, p. 2439)  The state filed a brief in response on November 10, 1998. (Apx. at Vol X, p. 2579)  Raglin then filed a reply brief on November 23, 1998 responding to the State's brief in response. (Apx. at Vol X, p. 2630)  On June 25, 1999, the First Appellate District for Hamilton County issued its decision affirming the trial court's decision. (Apx. at Vol X, p. 2644) (State v. Raglin, Case No.C-980425)

On August 6, 1999, Raglin filed a notice of appeal to the Ohio Supreme Court. (Apx. at Vol X, p. 2656)  On the same day, Raglin filed his appeal of the First District Court of Appeal's decision to the Ohio Supreme Court raising the following four propositions of law:

1. The trial court erred in granting the State's motion to dismiss appellant's post-conviction petition in violation of appellant's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

2. The trial court erred in denying appellant's motions for request of funds for expert assistance (T.d. 51, 54 and 55) in violation of appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution (T.d. 59).

3. The trial court must provide a post-conviction petitioner the opportunity to conduct discovery pursuant to the civil rules prior to considering a dispositive motion filed by the State of Ohio, and the trial court's failure to do so violated appellant's rights as guaranteed by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution, and Ohio R. Civ. P.26.

4. Ohio's post-conviction process does not provide an adequate corrective process in violation of the due process, the equal protection and the Supremacy Clauses of the United States Constitution.

(Apx. at Vol X, p. 2659) On August 30, 1999, the State filed a brief in response. (Apx. at Vol X, p. 2748)  The Supreme Court of Ohio declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question on October 27, 1999.  State v. Raglin, 87 Ohio St.3d 1430, 718 N.E.2d 447 (1999), (Case No. 99-1467).

**4.      Application to Re-Open Direct Appeal**

Raglin then filed with the Ohio Supreme Court, on December 29, 1998, an application to reopen his appeal, on he ground that his appellate counsel on direct appeal rendered ineffective assistance. Raglin alleged that his appellate counsel were ineffective in failing to raise fifteen "meritorious claims" of legal error. (Apx. at Vol XI, p. 2799) On January 27, 1999, the state filed a memorandum in opposition. (Apx. at Vol XI, p. 3001) On March 3, 1999, the Ohio Supreme Court denied Raglin's application. (Apx. at Vol XI, p. 3006) State v. Raglin, 85 Ohio St.3d 1407, 706 N.E.2d 789 (1999), (Case No. 96-2872).