# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

WALTER RAGLIN,

          Petitioner,

          -vs-

BETTY MITCHELL, Warden,

          Respondent.

:

:

:

Case No. 1:00-cv-767

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

---

## REPORT AND RECOMMENDATIONS

---

This capital habeas corpus case is before the Court for decision on the merits.

## Procedural History in this Court

This action was commenced February 24, 2000, by the filing of a Notice of Intent to seek habeas corpus relief (Doc. No. 1). The Court thereupon appointed counsel (Doc. No. 5) and the original Petition was filed September 13, 2000, raising thirty six grounds for relief (Doc. No. 14). In February, 2002, the Court granted in part Petitioner's Third Motion to Conduct Discovery and ordered discovery completed by June 15, 2002, with a later extension to October 30, 2002 (Doc. Nos. 37, 64). In April, 2003, the Court set a deadline of July 1, 2003, for an amended petition and a motion for evidentiary hearing[1] (Doc. No. 66).

---

[1] No motion for evidentiary hearing was ever filed.

In August, 2003, the Court granted Petitioner leave to file his amended petition *instanter* and stayed proceedings pending exhaustion of newly-raised and unexhausted claims in a successive post-conviction petition in the Ohio courts (Doc. No. 70).  In March, 2005, the Court determined that the successive state proceedings had been completed and vacated the abeyance order (Doc. No. 75).  The First Amended Petition was actually filed March 8, 2005 (Doc. No. 76).  On August 5, 2005, Judge Rice dismissed the second, thirty-seventh, and thirty-eighth grounds for relief as barred by the statute of limitations (Doc. No. 87) and the case became ripe for decision on the remaining claims.

### Petitioner's Claims

In his original Petition (Doc. No. 14), Petitioner pled the following grounds for relief:

#### First Ground for Relief:

Walter Raglin was denied his right to the effective assistance of counsel at the pretrial and trial phases of his capital trial in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments.

    A.    Trial counsel was ineffective for failing to file, renew and conduct hearings on appropriate motions

        1.    Failure to file Motion to Suppress Statements obtained through Mr. Raglin's illegal arrest

        2.    Failure to appropriately renew Motion for Change of Venue after voir dire clearly indicated that potential jurors were biased as a result of media exposure

        3.    Failure to adequately present Motion for New Trial on issue of juror media exposure

        4.    Failure to adequately conduct hearing on Motion to Suppress Statements

B.    Trial counsel was ineffective for failing to conduct voir dire in a manner sufficient to choose a fair and impartial jury

1.    Failure to adequately voir dire on racial basis

2.    Failure to adequately voir dire regarding media exposure

3.    Failure to adequately voir dire regarding mitigating factors

4.    Failure to adequately voir dire and remove Juror Veesart

C.    Trial counsel was ineffective for repeatedly conceding Mr. Raglin's guilt and then after such concession presenting conflicting arguments to the jury

1.    Trial counsel's concession of Mr. Raglin's guilt

2.    Conflicting arguments presented to the jury

D.    Trial counsel was ineffective for failing to adequately present a defense, including failing to support counsel's request for a manslaughter instruction with evidence sufficient to warrant the instruction, failing to secure the assistance of experts, and failing to object to prosecutorial misconduct.

1.    Failure to put on evidence in support of manslaughter instruction

2.    Failure to secure the assistance of experts

a.    Firearms expert

b.    toxicologist

1.    assistance with respect to behavior on the night of the offense

-3-

        2.      assistance with respect to behavior at time of arrest and during statement to police

        3.      assistance with respect to victim's intoxication

    3.    Failure to object to prosecutorial misconduct

## Second Ground for Relief:

Walter Raglin was denied his right to the effective assistance of counsel at the mitigation phase of his capital trial in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments.

    A.    Trial counsel failed to present psychological information critical to mitigation

    B.    Trial counsel failed to adequately secure expert assistance and present information critical to the mitigation defense with respect to homeless, or "street" culture

    C.    Trial counsel failed to adequately prepare Mr. Raglin for his unsworn statement

## Third Ground for Relief:

Walter Raglin was denied his right to the effective assistance of counsel under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments when his attorneys failed to object and properly preserve numerous errors.

## Fourth Ground for Relief:

Walter Raglin was denied his right to the effective assistance of counsel on his direct appeals in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

**Fifth Ground for Relief:**

Walter Raglin's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated when the trial court admitted into evidence at the trial phase of the capital proceedings his inculpatory statement made to members of the Cincinnati Police Department on January 3, 1996, because his statement was the fruit of an illegal arrest.

**Sixth Ground for Relief:**

Walter Raglin's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated when the trial court failed to suppress his statement made to members of the Cincinnati Police Department on January 3, 1996, because his statement was made during a custodial interrogation following an unfulfilled request for counsel. *Miranda v. Arizona,* 384 U.S. 436 (1966); *Edwards v. Arizona,* 451 U.S. 477 (1981); *Minnick v. Mississippi,* 489 U.S. 146 (1990).

**Seventh Ground for Relief:**

Walter Raglin's rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated when the trial court failed to suppress his statement made to members of the Cincinnati Police Department on January 3, 1996, because his statement was involuntarily given.

**Eighth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment Rights were violated when the judge refused to instruct the jury at the end of the trial phase that it could find Mr. Raglin guilty of involuntary manslaughter, a lesser included offense of aggravated murder.

**Ninth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights were violated when the judge erroneously instructed the jury at the end of the trial phase on the issues of causation, forseeability [sic], intent, and purpose.

**Tenth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights were violated when the judge failed to properly instruct the jury at the end of the trial phase as to the definitions for reasonable doubt, beyond a reasonable doubt and circumstantial evidence.

**Eleventh Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that its verdict of death merely constituted a recommendation to the bench and that the Judge would make the final decision with respect to the imposition of the death penalty

**Twelfth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge failed to properly instruct the jury at the end of the mitigation phase as to the definition of reasonable doubt.

**Thirteenth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it should consider all the evidence admitted during the trial phase of the proceedings with respect to its deliberations following the mitigation phase of the trial.

**Fourteenth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth

Amendment rights were violated when the judge failed to properly instruct the jury at the end of the mitigation phase as to the definition of the mitigating circumstances that the jury should consider during its deliberations.

**Fifteenth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it could consider any other factors that are relevant to the issue of whether it should recommend that Walter Raglin by sentenced to death.

> A.    The trial court's mitigation phase instructions violated Mr. Raglin's rights by permitting the jury to consider any factor it desired in determining the appropriate penalty in his case.
>
> B.    The trial court's mitigation phase instructions violated Ohio's statutory death penalty scheme.

**Sixteenth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it could consider the killing itself as a factor relevant to the issue of whether it should recommend that Walter Raglin be sentenced to death and by instructing the jury that the killing itself was an aggravating circumstance.

**Seventeenth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase in such a manner that the jury could conclude that it had to consider and reject a recommendation as to the imposition of death before it could consider either life sentence option.

**Eighteenth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it could consider the nature and circumstances of the offense as a mitigating factor in its determination of whether it should recommend that Walter Raglin be sentenced to death.

**Nineteenth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge refused to instruct the jury at the end of the mitigation phase that it could consider Walter Raglin's remorse, residual doubt and cooperation with law enforcement as mitigating factors it could consider in its determination of whether it should recommend that Walter Raglin be sentenced to death.

**Twentieth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge refused to instruct the jury at the end of the mitigation phase that it could consider the sentencing alternative of life without parole.

**Twenty-First Ground for Relief:**

Walter Raglin was denied his rights to an impartial and disinterested jury due to the bias of Juror Tara Veesart in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**Twenty-Second Ground for Relief:**

Walter Raglin was denied his Sixth Amendment rights because juror Tara Veesart was influenced by occurrences from outside of the courtroom, out of the presence of the jury and without the rights of confrontation, cross-examination, and of counsel. These occurrences were communicated to, and thereby prejudicially influenced, other members of Walter Raglin's jury in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

**Twenty-Third Ground for Relief:**

Walter Raglin was denied his constitutional rights to a fair and impartial trial under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments as a result of prosecutorial misconduct during both phases of his capital proceedings.

**Twenty-Fourth Ground for Relief:**

Walter Raglin was denied his rights in violation of the Eighth Amendment, the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments and the "Fair Cross Section" requirement of the Sixth Amendment to the United States Constitution because procedures used by the Hamilton County Court of Common Pleas and the Hamilton County Prosecutor's Office to discriminate against African-Americans result in the imposition of the death sentence with much greater frequency upon those who kill white persons than those who kill African-Americans.

A. Members of The Grand Jury Venire were Improperly Chosen.

B. Grand Jury Forepersons were Improperly Chosen.

C. Members of The Petit Jury Venire were Improperly Chosen.

D. Prosecutor's Use of Peremptory Challenges to Exclude African-Americans

E. The Hamilton County Procedures Discriminate Against African-Americans

**Twenty-Fifth Ground for Relief:**

Walter Raglin was denied his rights under the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments and the "Fair Cross Section" requirement of the Sixth Amendment to the United States Constitution because the process of selecting grand jurors, grand jury forepersons, and petit jurors in Hamilton County

was tainted in 1996 due to consideration of the factor of race in the drawing, selection and impanelment of grand jurors and petit jurors; and due to consideration of the factors of race and gender in the selection of grand jury forepersons.

**Twenty-Sixth Ground for Relief:**

Walter Raglin was denied his rights under the Equal Protection Clause because the prosecutors used their peremptory challenges to exclude members from the jury based on their race.

**Twenty-Seventh Ground for Relief:**

Walter Raglin's constitutional rights as guaranteed by the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments were violated when the trial court, in its decision to impose a sentence of death, improperly considered and weighed valid or improper aggravating circumstances; failed to specify the reasons why aggravation outweighs mitigation beyond a reasonable doubt; and failed to consider and weigh valid mitigating factors presented by the defense.

> A.  The trial court improperly considered an uncharged and unproven statutory aggravating factor in sentencing Mr. Raglin to death.
>
> B.  The trial court's failure to state reasons why aggravation outweighed mitigation.

C.  The trial court failed to consider and weigh valid mitigating factors presented by the defense

**Twenty-Eighth Ground for Relief:**

The State failed to prove beyond a reasonable doubt the essential element of purpose to kill and Mr. Raglin's conviction is contrary to the manifest weight of the evidence. Therefore, Walter Raglin's death sentence must be vacated pursuant to the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

**Twenty-Ninth Ground for Relief:**

Walter Raglin was denied his constitutional rights to a fair trial and impartial jury under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments during the mitigation phase because the trial court permitted the prosecutor to introduce irrelevant and highly prejudicial evidence from the trial phase of the capital proceedings.

**Thirtieth Ground for Relief:**

Walter Raglin was denied his constitutional rights under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments during the mitigation phase because the trial court permitted the prosecutor to introduce inadmissable rebuttal evidence that was unfairly prejudicial to Mr. Raglin's rights to a fair trial and impartial jury.

**Thirty-First Ground for Relief:**

Walter Raglin was denied his constitutional rights to a fair trial and impartial jury under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments when the trial court overruled trial counsel's challenge to the state's use of peremptory challenges under *Batson v. Kentucky.*

**Thirty-Second Ground for Relief:**

Walter Raglin's rights as guaranteed by the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments were violated when the trial court committed multiple errors during the pretrial, trial and mitigation phases of his capital case.

**Thirty-Third Ground for Relief:**

The proportionality review that the appellate courts must conduct pursuant to Ohio Revised Code §2929.05 is fatally flawed. Therefore, Walter Raglin's death sentence must be vacated pursuant to the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

**Thirty-Fourth Ground for Relief:**

Walter Raglin's death sentence is constitutionally infirm because Ohio's capital punishment system operates in an arbitrary, capricious and discriminatory manner in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments. Additionally, Walter Raglin's death sentence is constitutionally infirm because within Hamilton County, Ohio, the death penalty is selectively imposed, rendering the penalty as applied in Hamilton County, arbitrary and capricious on the hone hand and the product of racial discrimination on the other.

**Thirty-Fifth Ground for Relief:**

Walter Raglin's death sentence is constitutionally infirm because the amendments to the Ohio Constitution occasioned by the passage of Issue One, and the amendments to the Ohio Revised Code enacted by the Ohio General Assembly to facilitate the changes in the Ohio Constitution governing capital cases, violates the rights of capital defendants in general and Mr. Raglin, in particular, under the Fifth, Sixth, Eighth and Fourteenth Amendments.

**Thirty-Sixth Ground for Relief:**

Walter Raglin's conviction and death sentence are invalid under the federal constitutional guarantees of due process, equal protection, the effective assistance of counsel, and a reliable sentence due to the cumulative errors in the admission of evidence and instructions, and gross misconduct of state officials in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

In his First Amended Petition (Doc. No. 76), Petitioner abandoned Claims A.1, A.2, A.3, A.4, B.1, B.2, B 3,[2] and D.2.b from the First Ground for Relief, Claims A, B, and C from the Second Ground for Relief and the Fifth, Seventh, Tenth, Eleventh, Twentieth, Twenty-Second, Twenty-Fourth, Twenty-

---

[2] In the First Amended Petition, a typographical error makes it appear that Claim B.2 has been abandoned twice; the context makes it clear that Claim B.3 has been abandoned along with B.2. *See* Doc. No. 76 at 22-23.

Sixth, Twenty-Eighth, Thirty-First, Thirty-Third, and Thirty-Fifth Grounds for Relief in their entirety

(Doc. No. 76 at i-vii and 57.)  Also in the First Amended Petition, Mr. Raglin added subpart D of the

Second Ground for Relief and Grounds for Relief Thirty-Seven and Thirty-Eight.  Those newly-added

claims were dismissed as barred by the statute of limitations as interpreted in *Mayle v. Felix*, ___ U.S.

___, 125 S. Ct. 2562; 162 L. Ed. 2d 582 (2005)(Doc. Nos. 86, 87).


## Analysis

The facts of the crime for which Petitioner was convicted are recounted as follows by the

Ohio Supreme Court:

> During the early morning hours of December 29, 1995, appellant, Walter
> Raglin, and appellant's friend, Darnell "Bubba" Lowery, were looking for
> someone to rob.  Appellant was wearing dark clothes and a black ski mask
> and was armed with a .380 semiautomatic pistol he had obtained from
> Lowery.    The two men considered robbing a "dope boy," *i.e.*, a drug
> dealer, but decided against it for fear that such a person could be armed.
> They also discussed the possibility of robbing a taxicab driver, but
> appellant suggested that it might be safer for the two men to rob a more
> vulnerable victim.
>
> Meanwhile, at approximately 1:30 a.m., Michael Bany, a musician,
> concluded an engagement at a bar on Main Street in Cincinnati.    At
> approximately 1:45 a.m., Bany left the bar carrying a bass guitar and a
> black bag or suitcase with music equipment and headed toward the parking
> lot where he had parked his car.    Appellant and Lowery saw Bany and
> decided to rob him. While Bany was attempting to unlock the door to his
> vehicle, appellant approached him from behind, pulled out the .380
> semiautomatic pistol, and demanded Bany's money.    Bany handed
> appellant three $20 bills.  Appellant then asked Bany whether Bany's car
> had an automatic or manual transmission since appellant planned to steal
> the car if it was an automatic.   Bany did not reply to appellant's question.
> Appellant repeated the question, but Bany remained silent.  At some point,
> Bany bent down to pick up his guitar case and/or his music equipment and
> turned to face appellant.   While appellant and Bany were looking at each
> other, appellant shot Bany once in the side of the neck, killing him.   The
> projectile entered through the left side of Bany's neck, just below the
> earlobe, and exited through the right side.    The path of the projectile
> indicated that appellant and Bany were not standing face-to-face at the time
> of the shooting.   Additionally, the record indicates that the shot was fired

at the victim from a distance of more than three feet.

Following the killing, appellant and Lowery ran to a house several blocks away from the scene of the murder. There, appellant cleaned the pistol of fingerprints and gave it to Lowery. Appellant told Lowery that he (appellant) had received only $20 from the victim. Later, appellant spent the $60 he had taken from Bany to purchase marijuana.

On January 3, 1996, Cincinnati police received an anonymous telephone call identifying appellant as a suspect in the murder. Appellant was apprehended by police and was taken to an interview room for questioning. There, appellant voluntarily agreed to speak with police after being advised of his *Miranda* rights. See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

During questioning, appellant lied to the police and denied any involvement in the murder. When police informed appellant that they had received telephone calls naming appellant as a suspect, appellant changed his story and admitted that he had been at the scene of the murder. Appellant told police that he had been paid $25 for being a lookout for Lowery, and that Lowery had robbed and killed Bany. The police officers then left the interview room. A short time later, appellant summoned an officer back to the room and admitted that he had shot Bany. Appellant then confessed to robbing and killing Bany and gave police a detailed account of the murder.

After giving a full confession to police, appellant agreed to repeat his statement on tape. Appellant was once again advised of his *Miranda* rights. At that time, appellant indicated that he wanted to speak to an attorney. Therefore, police stopped the recorder, ceased their interrogation of appellant, and offered to bring appellant a telephone book and to assist him in obtaining counsel. Appellant stated that he did not want to inconvenience the officers, but police assured him that his request for counsel was not an inconvenience. Nevertheless, despite these assurances, appellant told police that he had changed his mind concerning his request for counsel and that he wished to continue with his statement. At that point, police resumed the interview and once again advised appellant of his rights. After ensuring that appellant fully understood his right to counsel and had freely and intelligently abandoned his known rights, police resumed the interrogation and tape recording of appellant's statement, and appellant reiterated the details of the robbery and killing.

*State v. Raglin*, 83 Ohio St. 3d 253, 253-55, 699 N.E. 2d 482 (1998).

**First Ground for Relief**

-14-

In his First Ground for Relief as amended, Petitioner asserts he was denied effective assistance of counsel in that counsel failed to adequately voir dire and remove Juror Tara Veesart (Claim B.4), conceded Petitioner's guilt and then made conflicting arguments to the jury (Claim C), failed to put on evidence which would have justified a jury instruction on manslaughter (Claim D.1), failed to procure the assistance of a firearms expert (Claim D.2.a), and failed to object to prosecutorial misconduct (Claim D.3).

Respondent contends that each of these claims is procedurally defaulted because it was not raised in the state courts until it was included in Mr. Raglin's petition for post-conviction relief, or, in the case of the prosecutorial misconduct claim, not raised at all (Amended Return of Writ, Doc. No. 80 at 24-37).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998) *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d at 138.

In deciding Mr. Raglin's appeal from denial of his petition for post-conviction relief, the

Hamilton County Court of Appeals held

> An ineffective- assistance-of-counsel claim, however, may be dismissed as
> *res judicata* where the petitioner was represented by new counsel on direct
> appeal, that counsel failed to raise the issue of trial counsel's incompetence,
> and the issue could fairly have been determined without evidence *dehors*
> the record.

*State v. Raglin,* 1999 WL 420063 (Ohio App. 1 Dist.1999) *citing State v. Sowell,* 73 Ohio App. 3d 672, 598

N.E. 2d 136 (1st Dist. 1991). As to each claim of ineffective assistance of counsel made in Ground One,

the Court of Appeals applied to the Ohio criminal *res judicata* rule to bar consideration of the claim on

the merits in post-conviction proceedings because it could have been raised on direct appeal. In doing

so, the Court of Appeals cited to numerous Ohio cases which stand for the proposition that a criminal

defendant cannot raise in a post-conviction proceeding a claim which could be decided on the face of

the record on direct appeal. *See, e.g.*, *State v. Perry,* 10 Ohio St. 2d 175, 226 N.E. 2d 104 (1967).

Petitioner asserts that the Ohio *res judicata* rule is not applicable at all to Ground One for relief

because he did raise these claims on direct appeal, to wit, by filing an application to re-open his direct

appeal in the Ohio Supreme Court. The record reflects that Petitioner did file such an Application on

December 29, 1998, and the Ohio Supreme Court declined to consider the Application. *State v. Raglin*,

85 Ohio St. 3d 1407, 706 N.E. 2d 789 (1999).

However, an application for reopening under Ohio Sup. Ct. Prac. R. XI is, by the very terms of

the Rule, limited to an opportunity to assert ineffective assistance of appellate counsel. This Rule

parallels Ohio R. App. P. 26(B) for death penalty cases after January 1, 1995, such as this case, where

appeal is directly to the Ohio Supreme Court and the Ohio intermediate courts of appeals are bypassed.

Like Rule 26(B), it is a collateral attack on the judgment and not a part of direct appeal. *Morgan v.*

*Eads,* 104 Ohio St. 3d 142, 818 N.E. 2d 1157 (2004); *Lopez v. Wilson*, 426 F.3d 339 (6th Cir.

2005)(*en banc*)(overruled *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000), relied on by Petitioner

and holding that 26(B) proceedings are collateral.)

　　Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St.

2d 175, 226 N.E. 2d 104 (1967), is an adequate and independent state ground. *Mason v. Mitchell*,

320 F.3d 604 (6th Cir. 2003), *citing Coleman v. Mitchell, infra, Rust v. Zent, infra, and Riggins v.

McMackin,* 935 F.2d 790 (6th Cir. 1991); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman

v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000), *cert.

denied* 531 U.S. 1082 (2001); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994); *Van Hook v.

Anderson*, 127 F. Supp. 2d 899 (S.D. Ohio 2001).

　　Finally, Petitioner claimed that he could demonstrate cause and prejudice to excuse this

procedural default, but stated he would need an evidentiary hearing in which to do so (Traverse, Doc.

No. 16 at 51).  However, no motion for evidentiary hearing was ever filed and the Court therefore treats

the assertion of excusing cause and prejudice as abandoned.

　　Petitioner's Ground One for Relief is barred by procedural default and should be dismissed with

prejudice.


**Second Ground for Relief**


　　The Second Ground for Relief has been abandoned in part and dismissed in part as barred by the

statute of limitations.


**Third Ground for Relief**

-17-

In his Third Ground for Relief, Petitioner asserts he was denied effective assistance of trial counsel when his attorneys failed to object and properly preserve numerous errors for appeal. This Ground for Relief is barred by procedural default on the same basis as the First Ground for Relief. That is, it was not presented on direct appeal, but only in the petition for post-conviction relief, where it was held barred by Ohio's criminal *res judicata* rule. The analysis given with respect to the First Ground for Relief is fully applicable here.

The Third Ground for Relief should be dismissed with prejudice.

### Fourth Ground for Relief

In his Fourth Ground for Relief, Mr. Raglin asserts he received ineffective assistance of counsel on direct appeal when his appellate counsel failed to raise the following assignments of error:

1.  Walter Raglin was denied the effective assistance of counsel when his counsel failed to challenge a prospective juror for cause or utilize a peremptory challenge to remove a juror who had personal knowledge of the crime alleged and personal relationships with those affected by the crime alleged.

2.  Walter Raglin was denied the effective assistance of counsel when, without his consent, counsel repeatedly conceded the issue of guilt at the trial phase of his capital trial, thereby voiding the state's burden of proof and eviscerating the defendant's right to confront witnesses.

3.  Walter Raglin was denied the effective assistance of counsel when defense counsel repeatedly conceded the issue of guilt to the charged aggravated murder during voir dire and opening statement, but then inconsistently argued in closing that the state failed to prove the element of purpose beyond a reasonable doubt.

4.  Walter Raglin was denied the effective assistance of counsel when his counsel failed to exercise his rights to procure reasonable and

necessary experts to present forensic evidence essential to an effective defense, including, but not limited to, an expert to rebut the state's suspect evidence regarding the operability of the alleged murder weapon when that evidence bore directly on the element of intent central to the capital offenses alleged.

5.    Walter Raglin was denied the effective assistance of counsel when his counsel failed to put on a defense case-in-chief targeting a lesser included offense in a situation where the need for such defense is clearly indicated by the facts and necessary to rebut the state's suspect evidence regarding the element of intent.

6.    Walter Raglin was denied the effective assistance of counsel when his counsel failed to investigate and present substantial mitigating evidence of remorse during the sentencing phase hearing.

7.    Walter Raglin was denied the effective assistance of appellate counsel when his counsel failed to raise as error, trial instructions which undermine the state's burden of proof beyond a reasonable doubt and which shift the burden of proof to the defendant.

8.    Walter Raglin was denied the effective assistance of counsel when his counsel failed to object to a prosecutor's closing argument that is presented in a manner to inflame the jurors against the defendant.

(First Amended Petition, Doc. No. 76 at 36-37.)

In his original Petition, Petitioner pled fourteen omitted assignments of error (Doc. No. 14 at 56-59). When he filed his First Amended Petition, Raglin omitted seven of those assignments of error without stating that they were expressly abandoned. Since they have not been included in the First Amended Petition, however, the Court treats them as abandoned. Asserted assignment of error number 6 above was not in the original Petition at all, but was pled for the first time in the First Amended Petition. For the reasons stated in the Report and Recommendations on the statute of limitations (Doc. No. 77), this new claim does not "relate back" to the original filing and is thus barred by the statute of limitations because the First Amended Petition was filed after the statute expired. *See Mayle v. Felix, supra.* Alternatively, as Respondent points out, this claim is procedurally defaulted because it was not

among those presented to the Ohio Supreme Court on the Application to Reopen.

Respondent concedes that the remaining seven omitted assignments of error (1-5, 7-8) are not procedurally defaulted and that this Court should decide them on the merits.

The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

*Id*. at 694. *See also Darden v. Wainright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987); *see generally* Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). However, the appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52. Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *See Smith v. Murray*, 477 U.S. 527 (1986).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674(6th Cir. 2000) *citing Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsels' failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004) *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001) *cert.*

*denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000) *citing Strickland*. To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented. *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

While accepting these standards for claims of ineffective assistance of appellate counsel, Petitioner makes no argument as to why these omitted assignments of error are meritorious or how they are more meritorious than the assignments of error which actually were presented on direct appeal. In other words, Petitioner's Traverse merely asserts these were meritorious without making any argument (*See* Traverse, Doc. No. 16 at 106-109).

Petitioner has not demonstrated that he is entitled to relief on this Ground and it should be dismissed with prejudice.

### Fifth Ground for Relief

This Ground for Relief has been abandoned (First Amended Petition, Doc. No. 76 at 38).

### Sixth Ground for Relief

In his Sixth Ground for Relief, Petitioner asserts his constitutional rights were violated when the trial court failed to suppress his confession to Cincinnati police because it was given while he was in custody and after he had made a request for counsel. Respondent concedes that this Ground

is properly preserved for merits review in this Court (Amended Return of Writ, Doc. No. 80 at 92).

The Ohio Supreme Court decided this claim on the merits as part of its decision on Raglin's

Fourteenth Proposition of Law.  It held:

> The second (and far more significant) issue raised by appellant is whether he effectuated a valid -- i.e., voluntary, knowing, and intelligent -- waiver of his rights under the Fifth and Fourteenth Amendments to have counsel present during custodial interrogation. Specifically, appellant contends that the audiotaped confession should have been suppressed and held inadmissible under the rule of *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378. We disagree.
>
> Edwards holds that once an accused undergoing custodial interrogation invokes his right to have counsel present during questioning, all further interrogation must cease, and the accused "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." (Emphasis added.) 451 U.S. at 484-485, 101 S. Ct. at 1885, 68 L. Ed. 2d at 386. We find no violation of *Edwards* here.
>
> Appellant was advised of his *Miranda* rights before any questioning by police. He voluntarily agreed to speak with police and signed a written waiver of his Miranda rights. He then gave a full confession to police, but that confession was not recorded on tape. When asked to repeat his statement on tape, appellant agreed and was once again advised of his Miranda rights. However, at that point, appellant informed police that he wished to speak to an attorney before proceeding further. Therefore, police ceased questioning appellant and turned the recorder off. The record indicates that police offered to get appellant a telephone book and to assist him in obtaining counsel. Appellant told police that he did not want to "put [the police officers] to any trouble," but the officers assured him that his request for counsel was no trouble. Appellant then told police that he had changed his mind concerning counsel and that he wanted to "put it [his confession] on tape," and "get it off his chest." There is no evidence whatsoever that police said or did anything to change appellant's mind, and appellant changed his mind after only two or three minutes. Police then turned the recorder on and proceeded to ask appellant a series of questions regarding his waiver of the right to counsel. In response to these questions, appellant indicated that he

-23-

fully understood his rights, that no threats or promises had been made to induce or coerce him into confessing, and that he wanted to put his confession on tape without talking to an attorney or having one present during questioning. The record in this case clearly reveals that it was appellant himself who, after invoking the right to counsel, initiated further conversations or communications with police concerning his wish to confess, and that appellant fully understood his right to counsel and voluntarily, knowingly, and intelligently abandoned that right before the custodial interrogation resumed.

The trial court, in denying appellant's pretrial motion to suppress, implicitly determined that appellant's confessions to police were voluntarily given and that appellant had effectuated a voluntary, knowing, and intelligent waiver of his Miranda rights before his initial (unrecorded) confession to police, and again when he voluntarily confessed on tape after rescinding a request for counsel. The record before us supports the trial court's conclusions in this regard, and we find no error in that court's decision denying the motion to suppress. Accordingly, we reject appellant's fourteenth proposition of law.

*State v. Raglin*, 83 Ohio St. 3d 253, 262-264 (1998) (footnote omitted).

The Supreme Court has recently elaborated on the standard of review of state court decisions on claims later raised in federal habeas corpus:

The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To these ends, § 2254(d)(1) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529

-24-

U.S., at 404-405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405-406, 120 S. Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685 (2002).

AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* ___ U.S. ___, 125 S. Ct. 1432 (2005).

All parties agree that *Edwards v. Arizona*, 451 U.S. 477 (1981), is the relevant Supreme

Court precedent and that is the clearly established Supreme Court law which the Ohio Supreme

Court applied to this asserted *Miranda* violation.  Petitioner has not demonstrated in what way the Ohio Supreme Court's decision is an unreasonable application of *Edwards* or why the findings of fact on which that court based its conclusions are somehow an unreasonable determination of the facts in light of the evidence offered in the state court.  Mr. Raglin, given his *Miranda* warnings, made a complete confession to the police before any audiotaping occurred.  Once the police evinced a desire to put the confession on tape, he hesitated about getting an attorney.  However, once the police brought him a telephone book to enable him to do that, he changed his mind and said he wanted to go ahead and put the confession on tape.  The interchange between Mr. Raglin and the interrogating police officer which Petitioner's counsel characterize as "hounding" is just as reasonably read as conversation about what Mr. Raglin wanted to do.  There is no evidence of any effort by the police to talk Mr. Raglin out of calling an attorney nor evidence to contradict the state court findings that it was Mr. Raglin who re-initiated the audiotaping.

Moreover, no evidence has been offered which suggests that there are any material differences in the content of the taped and untaped confessions.  While the audiotape would probably be more persuasive to a jury and would forestall attempts to repudiate the confession, which otherwise would only have come to the jury through an officer's testimony, that does not eliminate the fact that the police had a *Mirandized* confession before any talk of an attorney occurred.  Thus a full confession would have been admissible entirely apart from the audiotape.

The Ohio Supreme Court's disposition of this claim was not an unreasonable application of *Edwards* and this Ground for Relief should therefore be dismissed with prejudice.

**Seventh Ground for Relief**

This Ground for Relief has been abandoned (First Amended Petition, Doc. No. 76 at 41).

## Eighth Ground for Relief

In his Eighth Ground for Relief, Petitioner asserts the trial court erred in not instructing the jury that it could find Petitioner guilty of the lesser included offense of involuntary manslaughter (First Amended Petition, Doc. No. 76 at 42).

In deciding Petitioner's lesser included offense proposition of law, the Ohio Supreme Court held:

> Appellant contends that the trial court erred by refusing to instruct the jury on involuntary manslaughter as a lesser included offense of aggravated murder. We disagree. We have considered similar issues in a number of prior cases and have discussed those issues to exhaustion. The applicable rule is that "[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. We find no evidence in this case to reasonably suggest that appellant lacked the purpose to kill his victim.
>
> The facts of this case are clear. Appellant and his accomplice, Darnell Lowery, wandered the streets of Cincinnati looking for a victim to rob. Appellant was carrying a loaded .380 caliber semiautomatic pistol. The men considered two potential classes of victims to rob, but decided to search for easier prey. While appellant and Lowery were searching for a defenseless person to rob, appellant's unfortunate victim, Michael Bany, arrived on the scene. Appellant approached Bany and demanded money. Bany complied with appellant's demands. The record clearly indicates that Bany presented no threat to appellant and that appellant and Bany never argued. Bany never spoke a single word to appellant. While appellant was asking questions concerning Bany's car, Bany bent down and

picked up what appellant referred to as a "suitcase," i.e., either the guitar case or the case containing Bany's music equipment. Bany turned to look at appellant, and appellant looked at Bany. Appellant then pointed the pistol at Bany and shot him in the neck in a manner that was certain to (and did) cause Bany's death.

Appellant told police, "I, I fired the gun at [Bany]. I didn't know where I hit [him] at. I wasn'[t] tryin' to kill [him]." Appellant also claimed to have "panicked" at the time he shot and killed Bany. Appellant told police that he had been "scared" by Bany's movements because appellant "didn'[t] know what * * * was in the suitcase." However, appellant never claimed that the shot had been accidentally or unintentionally fired, and the evidence clearly establishes that the shooting was not accidental or unintentional. Appellant's claims of panic and fright are not reasonably supported by the evidence. Appellant had a loaded weapon, he was pointing that weapon at Bany, and he fired that weapon into the neck of his defenseless victim. Appellant told police that he had fired the weapon directly at Bany. He told police that Bany was not trying to "fiddle" with the suitcase or anything of that nature and that Bany had simply "picked it up." Appellant also admitted to police, "I didn'[t] have to shoot that man." The direct and circumstantial evidence in this case, and all reasonable inferences to be drawn therefrom, lead to one inescapable conclusion, to wit, appellant purposely killed Bany during the commission of an aggravated robbery when he pointed the gun at Bany and pulled the trigger.

Under any reasonable view of the evidence, the killing of Bany was purposeful. Thus, we find that the evidence adduced at trial could not have reasonably supported both an acquittal on aggravated murder and a conviction on the charge of involuntary manslaughter. Accordingly, we hold that the trial court properly rejected appellant's request for an involuntary manslaughter instruction.

*State v. Raglin*, 83 Ohio St. 3d 253, 257-258 (1998).

Petitioner contends that this does not constitute a decision on his federal constitutional claim and thus should not be analyzed under 28 U.S.C. § 2254(d)(1)(Traverse, Doc. No. 16 at 130). However, a state court decision can constitute an "adjudication on the merits" entitled to deference under 28 U. S. C. § 2254(d)(1) even if the state court does not explicitly refer to the federal claim

-28-

or to relevant federal case law. *Sellan v. Kuhlman*, 261 F.3d 303 (2nd Cir. 2001). In order to avoid being contrary to Supreme Court precedent, a state court decision need not cite the controlling precedent or even be aware of it "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3 (2002)(*per curiam*).

Petitioner relies here, as he did in the Ohio Supreme Court, on *Beck v. Alabama,* 447 U.S. 625 (1980). In that case the Supreme Court granted *certiorari* to decide:

> May a sentence of death constitutionally be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense and when the evidence would have supported such a verdict?

*Id*. at 627. Under Alabama law felony murder was a lesser included offense of capital murder under the usual test for lesser included offenses: the lesser offense includes all but one of the elements of the greater offense. However, the judge was statutorily prohibited from allowing the jury to convict of the lesser included offense; instead, they had to convict of capital murder or acquit. *Id*. at 628-629. In *Beck* the State conceded that,

> [A]bsent the statutory prohibition on such instructions, this testimony would have entitled petitioner to a lesser included offense instruction on felony murder as a matter of state law." *Id*. at 630. The Court noted that this statute was "unique in American criminal law. In the federal courts it has long been 'beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater. . . . Similarly, the state courts that have addressed the issue have unanimously held that a defendant is entitled to a lesser included offense instruction where the evidence warrants it.

*Id*. at 635-636 *quoting Keeble v. United States*, 412 U.S. 205, 208 (1973) *citing* as to the Ohio practice *State v. Kilby*, 50 Ohio St. 2d 2, 361 N.E. 2d 1336 (1977). The Court held the Alabama

statute was unconstitutional, but also said "we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, . . ." *Id.* at 637.

The decision in this case is completely consistent with *Beck*. The hypothesis in *Beck* as it is in general in lesser included offense cases is that, on the evidence presented, a jury could rationally find the defendant guilty of the lesser included offense but not guilty on the element which elevates the crime to the greater offense. The whole burden of Justice Douglas' analysis on this point for the Ohio Supreme Court is that no jury could rationally have found that the victim's killing was not purposeful. Given the evidence before the Ohio courts, that finding was not an unreasonable determination of the facts in light of the evidence presented.

Petitioner's Eighth Ground for Relief should be dismissed with prejudice.

## Ninth Ground for Relief

In his Ninth Ground for Relief, Petitioner contends that the trial phase instructions on the issues of causation, foreseeability, intent, and purpose were constitutionally infirm (First Amended Complaint, Doc. No. 76 at 43). The portions of the jury instructions to which Petitioner objects are as follows:

> [W]hen the death is the natural and foreseeable result of the act. . . .
> "Result occurs when the death is naturally and foreseeably caused by
> the act. . . . The causal responsibility of the defendant for an
> unlawful act is not limited to its most obvious result. The defendant
> is responsible for the natural, logical and foreseeable results that
> follow, in the ordinary course of events, from an unlawful act.

(First Amended Petition, Doc. No. 76 at 44 *quoting* trial transcript at 1476.[3])  Petitioner claims (1) this instruction undercut the other instruction the judge gave that the State had to prove Petitioner purposely caused the death of the victim, (2) the trial court erroneously gave "both prongs of the statutory definition,"[4] whereas only the first prong was applicable, and (3) that the instruction that "purpose is determined from the use of a weapon and the facts in evidence" created a conclusive presumption and in addition that it was mandatory to give an instruction that any inference of intent to kill from the use of a deadly weapon was permissive. *Id*.

Respondent collapses this claim: "Raglin argues that the instruction on purpose was invalid because it created a mandatory presumption." (Amended Return of Writ, Doc. No. 80 at 54.)  She then asserts this claim is procedurally defaulted because Petitioner had conceded in the Ohio Supreme Court that the instruction stated only a permissive inference and not a mandatory one. *Id*. at 54-55.

Petitioner's Proposition of Law No. 17 as presented to the Ohio Supreme Court was

> Where, in a capital case, the guilt phase jury instructions, over defense objections, state (1) that the essential element of cause as being where the death is the foreseeable result of the act, and (2) that purpose may be inferred from the use of a deadly weapon, the right of the accused to due process of law under the Fourteenth Amendment of the U.S. Constitution has been violated, requiring reversal of his conviction.

(Appellant's Brief, Joint Appendix, Vol. VI at 813.)  Although Petitioner pled this claim in state court as a federal constitutional claim, he argued it entirely in terms of state precedent – *State v. Burchfield*, 66 Ohio St. 3d 261, 611 N.E. 2d 819 (1993); *State v. Jacks*, 63 Ohio App. 3d 200, 578

---

[3] The other two page references made at this point in the First Amended Petition are to places where objections were lodged to the instructions.

[4] There is no citation in the First Amended Petition to whatever statute is intended to be referenced.

N.E. 2d 512 (Ohio App. 8th Dist. 1989); and *State v. Loza*, 71 Ohio St. 3d 61, 641 N.E. 2d 1082

(1994);(*See* Appellant's Brief, Joint Appendix, Vol. VI at 917-919.)   The sole federal precedent

cited was *County Court of Ulster Co. v. Allen*, 442 U.S. 140 (1979). (Appellant's Brief, Joint

Appendix, Vol. VI at 919.)  In his Traverse, however, to escape the force of 28 U.S.C. § 2254(d)(1),

he asserts that the Ohio Supreme Court did not decide his federal constitutional claim and he is thus

entitled to *de novo* review.  (Traverse, Doc. No. 18 at 133-134.)

The Ohio Supreme Court dealt with Petitioner's Proposition of Law No. 17 as follows:

> Appellant contends that the trial court's instructions to the jury in the guilt
> phase that defined "causation" in terms of foreseeability permitted a
> conviction for aggravated murder without proof of purpose to kill.
> Appellant makes a similar argument with respect to the trial court's
> instruction to the jury that "[i]f a wound is inflicted upon a person with a
> deadly weapon in a manner calculated to destroy life, the purpose to cause
> the death may be inferred from the use of the weapon."   Appellant's
> arguments are not persuasive.   The trial court's instructions to the jury,
> viewed as a whole, made it clear that a finding of purpose (and specific
> intent) to kill was necessary in order to convict appellant on the charge of
> aggravated murder.    The jury in this case returned its verdicts in
> accordance with the overwhelming evidence on the issue.  Accordingly, we
> find no reversible error here.

*State v. Raglin*, 83 Ohio St. 3d 253, 264 (1998).

The relevant portions of the jury instruction are as follows:

> Aggravated murder in Count 2 is purposely causing the death of
> another. . .
>
> Before you can find the defendant guilty, you must find . . . the
> defendant purposely caused the death of Michael Baney. . . .
> Purpose to cause the death of Michael Baney is an essential element
> of the crime of Aggravated Murder.  A person acts purposely when
> it is his or her specific intention to cause a certain result.  It must be
> established in this case that at the time in question there was present
> in the mind of the defendant a specific intention to cause the death of
> Michael Baney.
>
> **Purpose**

Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result or engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to him or herself, unless he or she expresses it to others or indicates it by his or her conduct.

The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means or weapons used and all the other facts and circumstances in evidence. . . .

If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be inferred from the use of the weapon.

### Cause

Cause is an essential element of the offense charged. The State charges that the act by the defendant caused the death of Michael Baney.

Cause is an act which in the natural and continuous sequence directly produces the death, and without which it would not have occurred. Cause occurs when the death is the natural and foreseeable result of the act.

A death is the result of an act when it is produced directly by the act in the natural and continuous sequence and would not have occurred without the act. "Result" occurs when the death is naturally and foreseeably caused by the act. . . .

The causal responsibility of the defendant for an unlawful act is not limited to its immediate or most obvious result. The defendant is responsible for the natural, logical and foreseeable results that follow, in the ordinary course of events, from the unlawful act.

(Trial Tr. at 1473-1476.) Petitioner's counsel made no explicit objection to this portion of the charge at its conclusion, but merely incorporated his prior objections. *See Id*. at 1412, 1487.

Petitioner's sole reliance in argument is on *Francis v. Franklin*, 471 U.S. 307 (1985)(*See*

Traverse, Doc. No. 18 at 135). In *Franklin* the Supreme Court was faced with a capital murder statute which required proof of intent, the fatal shot was fired through a door which was being slammed in the defendant's face, and the sole relevant instruction was

> A crime is a violation of a statute of this State in which there shall be a union of joint operation of act or omission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

*Franklin*, 471 U.S. at 311-312. The Court decided that this language created a mandatory presumption which violated *Sandstrom v. Montana*, 442 U.S. 510 (1979), even though the presumption was rebuttable. The Court recognized that

> If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of the offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption.

*Id*. at 315 *citing Cupp v. Naughton*, 414 U.S. 141 (1973). However, the charge in *Franklin*'s case only included general language about the burden of proof and presumption of innocence. *Id*. at 319.

The charge in this case is far different from the criticized charge in *Franklin*. Here the trial judge told the jury that purpose to cause death was an essential element and twice in the same

paragraph told them that proof of purpose required proof of specific intent to cause death. Then he went on to define purpose in terms of intention. Because, as he told the jury, we never have direct proof of someone's purpose, purpose being an internal mental state, purpose must be determined from circumstantial evidence. The Court agrees with Petitioner that the language the trial judge used – "is determined" – told the jury that it must decide Petitioner's *mens rea* from circumstantial evidence. But that is accurate. In criminal cases as in life in general, we never have direct evidence of another's person's state of mind, even when that person declares openly what his or her state of mind is.

Finally, of course, the judge's instruction that the jury "may infer" intent to cause death from the use of a deadly weapon is perfectly proper under *Sandstrom* and a manifestly reasonable, albeit not necessarily compelling, inference.

These completely proper instructions about purpose and specific intent were given virtually in the same breath with the causation instructions. Foreseeability of death as a result of conduct is permissible in a capital case when combined with specific intent instruction. *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000).

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair. *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977). The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62 (1991) *quoting Cupp v. Naughten*, 414 U.S. 141(1973). The category of infractions that violate fundamental fairness is very

narrow. *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000) *citing Dowling v. United States*, 493 U.S. 342, 352 (1990).

As noted above with respect to the Eighth Ground for Relief, a state court decision can "count" as an adjudication of a federal constitutional claim and therefore be entitled to deference under the AEDPA even if federal case law is not cited. Justice Douglas' opinion here applies the appropriate federal standard – the fairness of the instructions on *mens rea* taken as a whole. That decision is not an unreasonable application of *Sandstrom* or *Franklin*. Therefore Petitioner's Ninth Ground for Relief is without merit.

### Tenth Ground for Relief

Petitioner has abandoned his Tenth Ground for Relief (First Amended Petition, Doc. No. 76 at 45).

### Eleventh Ground for Relief

Petitioner has abandoned his Eleventh Ground for Relief (First Amended Petition, Doc. No. 76 at 45).

### Twelfth Ground for Relief

In his Twelfth Ground for Relief, Petitioner objects that at the end of the mitigation phase of the trial, the trial judge instructed the jury that "[r]easonable doubt is present when the jurors, after they have carefully considered and compared all the evidence, cannot say that they are <u>firmly</u>

<u>convinced of the truth of the charge</u>." (First Amended Petition, Doc. No. 76 at 45; emphasis *sic*.)

Obviously, the instruction should read that reasonable doubt exists at the mitigation stage if the jury is not firmly convinced that the aggravating circumstances outweigh the mitigating factors; that is the issue the jury must decide beyond a reasonable doubt at the penalty phase of a capital trial. This error of speaking, which the Court has encountered in other capital cases, probably arises from transposing the reasonable doubt definition in the statute and in Ohio Jury Instructions from the conviction stage to the penalty phase.

Nevertheless, the error does not rise to the level of making the penalty phase instructions, considered as a whole, misleading and unfair. The language was used in the context of telling the jury precisely what they had to decide, to wit, whether "the aggravating circumstances which the defendant was found guilty of committing is [sic] sufficient to outweigh the factors in mitigation." (Trial Transcript at 1909-1910.) The Ohio Supreme Court reviewed the penalty phase instructions as a whole in response to Petitioner's Proposition of Law No. 9 and found Petitioner's argument unpersuasive. Although the Ohio Supreme Court's analysis is cursory, it is not an unreasonable application of clearly established United States Supreme Court law. *See Cupp v. Naughton, supra.*

Petitioner's Twelfth Ground for Relief is without merit.


**Thirteenth Ground for Relief**


In his Thirteenth Ground for Relief, Petitioner objects that the trial judge instructed the jury at the end of the penalty phase that they should consider all the evidence admitted at the guilt phase in making their determination.

Respondent argues this claim is procedurally defaulted because it was never fairly presented to the Ohio courts for decision as a federal constitutional claim. The relevant Proposition of Law was No. 9.A which reads in its entirety:

> The trial court instructed the jury that they should consider all evidence admitted at the guilt-innocence phase of the proceedings, including the photos of the body of the deceased, to the introduction of which Appellant had objected (R.1909, 1911, 1916). This was error, *State v. DePew,* [38 Ohio St. 3d 275 (1989)] *supra; State v. Williams,* [73 Ohio St. 3d 153 (1995)] *supra.*

(Appellant's Brief, Joint Appendix, Vol. VI at 863.) The Ohio Supreme Court summarily rejected all of Petitioner's claims with respect to the penalty phase jury instructions made in Proposition of Law No. 9. *State v. Raglin*, 83 Ohio St. 3d 253, 260 (1998).

Petitioner did not cite any purportedly controlling federal case law in his Brief to the Ohio Supreme Court; he merely mentions the Eighth and Fourteenth Amendments in the text of Proposition of Law No 9. Indeed, his argument in the Traverse in this Court merely repeats the citations to *DePew* and *Williams* (Traverse, Doc. No. 18 at 150, 152.)     There are, however, occasions when a state court defendant will have made claims in the state courts which, while not explicitly invoking the United States Constitution, in fact fairly place before the state courts the substance, both facts and legal theory, of a claim or claims later made in habeas corpus. In *Franklin v. Rose*, 811 F.2d 322 (6th Cir. 1987), the Sixth Circuit cited with approval a Second Circuit analysis in *Daye v. Attorney General,* 696 F.2d 186 (2nd Cir. 1982) *after remand*, 712 F.2d 1566 (1983):

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d)

> allegation of a pattern of facts well within the mainstream of
> constitutional litigation.

811 F.2d at 326 *quoting* 696 F.2d at 193-94; *accord McMeans v. Brigano,* 228 F.3d 674, 681 (6th

Cir. 2000). The claim must be "fairly presented" to the state courts in a way which provides them

with an opportunity to remedy the asserted constitutional violation. *Levine v. Torvik*, 986 F.2d 1506

(6th Cir. 1993); *Riggins v. McMackin,* 935 F.2d 790 (6th Cir. 1991). Merely using talismanic

constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal

constitutional issue. *Franklin v. Rose,* 811 F.2d 322 at 326 (6th Cir. 1987); *McMeans v. Brigano,* 228

F.3d 674, 681 (6th Cir. 2000) *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984).

    If a petitioner's claims in federal habeas rest on different theories than those presented to the

state courts, they are procedurally defaulted. *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002) *citing*

*Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir.

2001)("relatedness" of a claim will not save it).

    A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that

court must read beyond a petition, a brief, or similar papers to find material that will alert it to the

presence of such a claim. *Baldwin v. Reese*, 541 U.S. 27 (2004).

    A petitioner fairly presents a federal habeas claim to the state courts only if he "asserted both

the factual and legal basis for his claim. *Hicks v. Straub*, 377 F.3d 538, (6th Cir. 2004) *citing*

*McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); and *Picard v. Connor*, 404 U.S. 270, 276,

277-78 (1971).

> In determining whether a petitioner "fairly presented" a federal
> constitutional claim to the state courts, we consider whether: 1) the
> petitioner phrased the federal claim in terms of the pertinent
> constitutional law or in terms sufficiently particular to allege a denial
> of the specific constitutional right in question; 2) the petitioner relied

> upon federal cases employing the constitutional analysis in question;
> 3) the petitioner relied upon state cases employing the federal
> constitutional analysis in question; or 4) the petitioner alleged "facts
> well within the mainstream of [the pertinent] constitutional law."

*Hicks*, 377 F.3d at 553 *citing McMeans*, 228 F.3d at 681.

In *DePew*, the Ohio Supreme Court decided as a matter of state law that introduction of victim photographs at the penalty phase of a capital trial was appropriate if relevant to the nature and circumstances of the aggravating circumstances of the crime. *State v. Depew*, 38 Ohio St. 3d 275, 282, 528 N.E. 2d 542, 551-552 (1989). This holding was in the context of finding that Ohio law permitted the introduction at the penalty phase of virtually all the evidence already admitted at the guilt phase. *Id.* In *Williams*, the Ohio Supreme Court relied on *DePew* for the same proposition of state law. *State v. Williams*, 73 Ohio St. 3d 153, 159, 652 N.E. 2d 721, 727-728 (1995). Neither case discusses on this point any relevant principle of federal constitutional law or cites any federal case law. Thus neither *DePew* nor *Williams* is a state case relying on federal constitutional analysis.

The Court concludes that Petitioner did not fairly present to the Ohio courts the federal constitutional claim he now makes in his Thirteenth Ground for Relief and thus is procedurally barred from obtaining review of that Ground for Relief; it should be dismissed with prejudice.

### Fourteenth Ground for Relief

In his Fourteenth Ground for Relief, Petitioner claims that the jury should have been given a definition of mitigating factors in the penalty phase instructions (First Amended Petition, Doc. No. 76 at 47). He raised this claim before the Ohio Supreme Court as Proposition of Law No. 9.C:

> The trial court failed to define mitigating circumstances, merely

> advising the jury which mitigating factors were to be considered. Not advising the jury of the definition of a mitigating factor renders it impossible to comply with the constitutional requirement that jurors be advised to consider all relevant mitigating factors, Penry v. Linaugh (1989), 492 U.S. 302, 109 S. Ct. 2934.  Years ago, this Court has [sic] fashioned a proper definition of mitigating circumstances in State v. Steffen, supra, and Appellant was entitled to have his jury given that instruction, especially since he specifically asked for it (R. 1768).

(Appellant's Brief, Joint Appendix, Vol. VI at 863-64.)  As noted above, the Ohio Supreme Court summarily rejected Proposition of Law No. 9.  Respondent concedes that this claim is preserved for merit review in this Court (Amended Return of Writ, Doc. No. 80 at 63-64).

Petitioner's sole reliance for this claim is on *Penry, supra.  Penry* does not, however, stand for the proposition that it is constitutional error to fail to provide a jury with a definition of the term "mitigating factors."  Instead, the *Penry* Court held that, in the context of the Texas death penalty statute which required the jury to answer three special questions, failure to define the word "deliberately" in one of them prevented the jury from taking into account all the mitigating evidence which was offered.  *Penry v. Linaugh*, 492 U.S. 302, 323 (1989).  *Penry* is thus an application of *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Eddings v. Oklahoma,* 455 U.S. 104 (1982).  Petitioner has cited no clearly established federal constitutional law which requires a trial judge to define "mitigating factors."  Thus his Fourteenth Ground for Relief is without merit.

### Fifteenth Ground for Relief

In his Fifteenth Ground for Relief, Petitioner asserts that the instruction that the jury could consider "any other factors that are relevant to the issue of whether the offender should be sentenced

to death" meant that the "sentencing discretion of the jury was wholly undirected and without limitation. . . ." (First Amended Petition, Doc. No. 76 at 48). He also asserts that the mitigation phase instructions violated Ohio's statutory death penalty scheme. *Id*.

This claim, also raised as part of Proposition of Law No. 9 on direct appeal, was summarily rejected by the Ohio Supreme Court along with the balance of that proposition.

As noted by Respondent, the United States Supreme Court has never held that consideration of mitigating evidence must be structured in any particular way. (Amended Return of Writ, Doc. No. 80 at 63-64 *citing Buchanon v. Angelone*, 522 U.S. 269 (1998)). Of course, under *Lockett* and *Eddings, supra*, the trial court must allow a defendant to present any evidence which could rationally be considered to be mitigating. This particular instruction, taken verbatim from Ohio Revised Code § 2929.04(B)(7), is designed to comply with *Lockett*. Given the tight line which a trial judge must walk between admitting any mitigating evidence and giving an instruction which might "structure" the jury's consideration of that evidence in a way which might appear to minimize it, this Court cannot say that quoting the statute under the circumstances of this case was likely to mislead the jury. Thus the Ohio Supreme Court's rejection of this claim is not an unreasonable application of any clearly established federal constitutional law and the Fifteenth Ground for Relief is without merit.

## Sixteenth Ground for Relief

In his Sixteenth Ground for Relief, Petitioner contends he was denied a fair trial because the

judge instructed the jury that the killing itself was a factor relevant to whether a death sentence should be recommended and that the killing itself was an aggravating circumstance (First Amended Petition, Doc. No. 76 at 49).

Petitioner presented this claim to the Ohio Supreme Court as Proposition of Law No. 9.E:

> The penalty phase instructions were also erroneous in that, in defining aggravating circumstances, the trial court included the killing itself, having denied a defense motion to instruct the jury that the killing itself was not an aggravating factor (R. 1520; 1764). This is contrary to Ohio law, *State v. DePew, supra, State v. Henderson* (1988), 39 Ohio St. 3d 25, 26, 528 N.E. 2d 1237, *cert. denied,* 489 U.S. 1072. The defense objection was repeated at the proper juncture.

(Appellant's Brief, Joint Appendix, Vol. VI at 865.) As noted above, Proposition of Law No. 9 was summarily rejected by the Ohio Supreme Court.

Because Petitioner's federal claim made in this Ground for Relief was not fairly presented to the Ohio courts, it is procedurally defaulted, in accordance with the authority cited with respect to the Thirteenth Ground for Relief. The Sixteenth Ground for Relief should be dismissed with prejudice.

## Seventeenth Ground for Relief

In his Seventeenth Ground for Relief, Petitioner asserts that the mitigation phase instructions would have led the jury to conclude that it had to consider and reject a recommendation as to imposition of the death penalty before it could consider either of the life sentence options (First Amended Petition, Doc. No. 76 at 50).

This claim was presented to the Ohio Supreme Court as Proposition of Law 9.F as follows:

> The trial court in effect instructed the jury that it had to consider, and reject, the death sentence before considering either life option (R.1917). While not stating expressly that the jury was required to consider death before considering life, that is the clear import of the instruction. This is error sufficient to warrant reversal of the death sentence, *State v. Brooks* (1996), 75 Ohio St.3d 148, 159-160, 661 N.E.2d 1030, 1042. Furthermore, the trial court failed to instruct that one juror could prevent the imposition of the death penalty, as required by *Brooks* henceforth from that decision (which preceded Appellant's trial by several months), although the trial court did instruct the jury that any verdict it returned had to be unanimous, and the jury verdict forms also reflected the requirement of unanimity (R.1917-1919).

(Appellant's Brief, Joint Appendix, Vol. VI at 865-66.)  Because this claim is phrased entirely as a matter of state law, it was not fairly presented to the Ohio Supreme Court and is thus procedurally defaulted.  It should be dismissed with prejudice.

## Eighteenth Ground for Relief

In his Eighteenth Ground for Relief, Petitioner contends he was denied a fair trial because the jury was told in the penalty phase instructions that it could consider the nature and circumstances of the offense as a mitigating factor.  This contention was presented in the Ohio Supreme Court as Proposition of Law No. 9.H:

> The trial court instructed the jurors to consider as a mitigating factor the nature and circumstances of the offense although that factor was not advanced by Appellant in mitigation. Present counsel perceive nothing mitigating about the nature and circumstance. The instruction thus violates State v. Depew, supra.

(Appellant's Brief, Joint Appendix, Vol. VI at 866-867.)  Because this claim is phrased entirely as a matter of state law, it was not fairly presented to the Ohio Supreme Court and is thus

procedurally defaulted.  It should be dismissed with prejudice.

### Nineteenth Ground for Relief

Petitioner asserts the trial court denied him a fair trial when it refused to instruct that remorse, residual doubt, and cooperation with law enforcement could be considered as mitigating factors (First Amended Petition, Doc. No. 76 at 51.)  This contention was presented to the Ohio Supreme Court as Proposition of Law No. 9.I as follows:

> The trial court refused defense requests to instruct the jury as requested by the defense (R. 1765) to the mitigating factors of remorse, residual doubt and cooperation with police, although those are well-recognized mitigating factors, State v. Smith (1991), 61 Ohio St. 3d 284, 574 N.E. 2d 510, *cert. denied,* 502 U.S. 1110, Bell v. Ohio, supra (cooperation with police); State v. Buell, supra (residual doubt), and remorse for what he had done, State v. Hicks, supra.  Given the vagueness with which the trial court defined the (B)(7) mitigator, it is not at all clear that the jury understood that these mitigating factors, all recognized by this Court as mitigating, could be considered.

(Appellant's Brief, Joint Appendix, Vol.VI at 867.)  Because this claim is phrased entirely as a matter of state law, it was not fairly presented to the Ohio Supreme Court and is thus procedurally defaulted.  It should be dismissed with prejudice.

### Twentieth Ground for Relief

Petitioner has abandoned this Ground for Relief (First Amended Petition, Doc. No. 76 at 52).

**Twenty-First Ground for Relief**

In his Twenty-First Ground for Relief, Petitioner asserts that the presence of Juror Tara Veesart on his jury deprive him of a fair trial (First Amended Petition, Doc. No. 76 at 52-53). He cites various facts about Ms. Veesart which he says made her biased and which should have led the trial judge to strike her *sua sponte*; it is conceded that Petitioner's counsel did not object to her being seated.

This claim has never been presented to the Ohio courts except when it was pled as an assignment of error in which, Petitioner claimed, it was ineffective assistance of appellate counsel to fail to raise on direct appeal. For reasons already given, the only claim which can be made in an application for reopening direct appeal in Ohio is a claim of ineffective assistance of appellate counsel; alleging matter as an underlying deficiency does not "resurrect" a claim already defaulted unless, of course, the appellate court reopens the appeal. "Neither *Murnahan* nor App. R. 26(B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals." *State v. Reddick* 72 Ohio St. 3d 88, 90-91, 647 N.E. 2d 784 (1995). "In light of the requirements of Rule 26(B), the [appellate] court's holding must be read as pertaining to the merits' of [petitioner's] ineffective assistance of appellate counsel claim, not his state procedural rule claim." *Roberts v. Carter,* 337 F.3d 609 (6th Cir. 2003).

The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his
> federal claims in state court pursuant to an adequate

> and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainright v. Sykes*, 433 U.S. 72, 87 (1977).  *Wainright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Because this claim was never raised in the state courts, it has not been preserved for review here and should be dismissed with prejudice.

### Twenty-Second Ground for Relief

Petitioner has abandoned his Twenty-Second Ground for Relief (First Amended Petition, Doc. No. 76 at 53).

## Twenty-Third Ground for Relief

In his Twenty-Third Ground for Relief, Petitioner contends he was denied his right to a fair trial by numerous instances of prosecutorial misconduct (First Amended Petition, Doc. No. 76 at 53).

In the Ohio Supreme Court, Petitioner presented the following Proposition of Law No. 5:

> Egregious misconduct by the prosecutor **in the penalty phase** of capital proceedings requires reversal, and where the prosecutor's final argument for death argues nonstatutory aggravating factors, argues "facts" outside the evidence, attacks the relevance of evidence admitted by the court, contains inflammatory remarks and invective against the accused and his counsel, a death sentence based on a jury verdict following such arguments violates due process and the Eighth Amendment to the United States Constitution, and their counterparts in the Ohio Constitution, requiring reversal of the death sentence.

(Appellant's Brief, Joint Appendix, Vol. VI at 844, emphasis added). As Respondent notes, this claim as made to the Ohio Supreme Court is limited to alleged misconduct occurring during the penalty phase of the trial. Thus the following asserted instances of prosecutorial misconduct were not presented at all to the state courts and cannot be considered here:

> • "the prosecutors made expressions as to what the opinions of Mr. Raglin's counsel might be and denigrated defense counsel with regard to their argument (Tr. 1447)."

> • "The prosecutors frequently stated their opinion as to Mr. Raglin's state of mind during the shooting, without any evidentiary foundation. (Tr. 1450, 1457)."

> • "The prosecutors also sarcastically mis-characterized[sic] Mr. Raglin's statement that the gun went off accidentally. (Tr. 1451)."

> • "Prosecutors also stated that trial counsel was asking them to not follow the law. (Tr. 1896)."

• "The prosecutors made impermissible statements of personal opinion to the jury. (Tr. 1900, 1901, 1904)."

• "The prosecutors consistently substituted emotion for reasoned advocacy in their closing arguments. (Tr. 1419-1420, 1427, 1428, 1457-1460)."

• "The prosecutors also repeatedly referred to Mr. Raglin's silence as well as to facts that were not in evidence. (Tr. 1420, 1450-1454, 1838, 1839, 1896, 1901)."

• "The prosecutors blamed the need for a trial on Mr. Raglin's unwillingness to plead guilty. (Tr. 1424, 1431)."

• "The prosecutors attempted to reduce the state's burden of proof by arguing that jurors should not 'make this case more difficult than it is.' (Tr. 1444)."

• "The prosecutors assured the jury that the case was that simple and that they could 'sit on a hundred more cases' and they would never find one as easy to decide as this one. (Tr. 1444-1445)."

• The prosecutors' handling of the murder weapon during the guilt phase closing argument

• "the prosecutor invited the jury to look at Walter Raglin and, with respect to the hours following Mr. Bany's murder 'see him bragging and laughing and about it and bragging about it.' (Tr. 1900).

• "the prosecutor invited the jury to speculate on where Mr. Raglin would have gone or what he would have done if he had escaped from the Hamilton County Justice Center (Tr. 1904). The prosecutor compounded this misconduct by telling the jury that Walter Raglin would have committed more murders if his escape from the Hamilton County Justice Center had been successful…"

(Amended Return of Writ, Doc. No. 80 at 80-81.)

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process, *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainright,*

477 U.S. 168 (1986); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) or whether it was "so

egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117

(6th Cir. 1979); accord *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*,

*Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983).

The Sixth Circuit has recently articulated the relevant standard for habeas claims of

prosecutorial misconduct as follows:

> On habeas review, claims of prosecutorial misconduct are reviewed
> deferentially. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To
> be cognizable, the misconduct must have "'so infected the trial with
> unfairness as to make the resulting conviction a denial of due
> process.'" *Id.* (citation omitted). Even if the prosecutor's conduct
> was improper or even "universally condemned," *id.*, we can provide
> relief only if the statements were so flagrant as to render the entire
> trial fundamentally unfair. Once we find that a statement is
> improper, four factors are considered in determining whether the
> impropriety is flagrant: (1) the likelihood that the remarks would
> mislead the jury or prejudice the accused, (2) whether the remarks
> were isolated or extensive, (3) whether the remarks were deliberately
> or accidentally presented to the jury, and (4) whether other evidence
> against the defendant was substantial. *See Boyle v. Million*, 201 F.3d
> 711, 717 (6th Cir. 2000). Under [the] AEDPA, this bar is heightened
> by the deference we give to the . . . [Ohio] Supreme Court's
> determination of . . . [Petitioner's] prosecutorial-misconduct claims.
> *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If
> this court were hearing the case on direct appeal, we might have
> concluded that the prosecutor's comments violated Macias's due
> process rights. But this case is before us on a petition for a writ of
> habeas corpus. So the relevant question is not whether the state
> court's decision was wrong, but whether it was an unreasonable
> application of clearly established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003).

In deciding Petitioner's Proposition of Law No. 5, the Ohio Supreme Court wrote:

> Appellant raises claims of prosecutorial misconduct, but many of
> appellant's arguments have been waived. Additionally, many of
> appellant's claims of prosecutorial misconduct are simply not

> supported by a fair and impartial review of the record, such as
> appellant's various attempts to persuade us that the arguments by the
> prosecution essentially converted the nature and circumstances of the
> offense into "a grossly prejudicial nonstatutory aggravating factor."
> We have carefully reviewed the record in its entirety and have
> considered all of appellant's claims of prosecutorial misconduct. We
> have found no instance of prosecutorial misconduct that would rise
> to the level of reversible error. The instances of alleged misconduct,
> taken singly or together, did not substantially prejudice appellant or
> deny him a fair trial.

*State v. Raglin*, 83 Ohio St. 3d 253, 259 (1998). Having reviewed those instances of alleged

prosecutorial misconduct during the penalty phase of which Petitioner complains, the Court is not

persuaded that the Ohio Supreme Court's resolution of this claim is an unreasonable application of

*Donnelly v. DeChristoforo*, *supra*. The Twenty-Third Ground for Relief should be dismissed with

prejudice, in part because of procedural default and in part because it is without merit.

### Twenty-Fourth Ground for Relief

Petitioner has abandoned his Twenty-Fourth Ground for Relief (First Amended Petition,

Doc. No. 76 at 57).

### Twenty-Fifth Ground for Relief

In his Twenty-Fifth Ground for Relief, Petitioner contends he was denied his constitutional

rights because in 1996 race was a factor considered in the selection of grand jurors, grand jury

forepersons, and petit jurors and because gender was also a factor considered in selecting grand jury

forepersons (First Amended Petition, Doc. No. 76 at 57).

Respondent asserts that this claim is procedurally defaulted because it has never been presented to the state courts (Amended Return of Writ, Doc. No. 80 at 76). Although Petitioner asserts in his Traverse (Doc. No. 18 at 220) that the claim was presented at Proposition of Law 12.B, that proposition has nothing to do with racially or sexually discriminatory selection of jurors, but rather asserts that the death penalty is inflicted disproportionately on those who kill whites (*See* Appellant's Brief, Joint Appendix, Vol. VI at 883).

The Court concludes that Petitioner's Twenty-Fifth Ground for Relief is procedurally defaulted because it was never presented to the state courts and should therefore be dismissed with prejudice.

### Twenty-Sixth Ground for Relief

Petitioner has abandoned the Twenty-Sixth Ground for Relief (First Amended Petition, Doc. No. 76 at 62).

### Twenty-Seventh Ground for Relief

In his Twenty-Seventh Ground for Relief, Petitioner asserts the trial judge improperly considered and weighed invalid or improper aggravating circumstances, failed to specify the reasons why the aggravating circumstances outweighed the mitigating factors, and failed to consider and weigh valid mitigating factors (First Amended Petition, Doc. No. 76 at 62).

This claim was, as Respondent concedes, properly presented to the Ohio Supreme Court as

Petitioner's Proposition of Law No. 1 (*See* Appellant's Brief, Joint Appendix, Vol.VI at 828).  In denying relief on this Proposition, the Ohio Supreme Court wrote:

> The trial court, in its sentencing opinion, considered and weighed an R.C. 2929.04(A)(3) aggravating circumstance even though appellant was neither charged with nor convicted of an R.C. 2929.04(A)(3) death penalty specification. However, this error in the trial court's sentencing opinion, and all other allegations of error raised by appellant in Proposition of Law No. 1, can be readily cured by our independent review of appellant's death sentence. See, generally, State v. Lott (1990), 51 Ohio St.3d 160, 170- 173, 555 N.E.2d 293, 304-307. See, also, State v. Reynolds (1998), 80 Ohio St.3d 670, 684-685, 687 N.E.2d 1358, 1373; State v. Gumm (1995), 73 Ohio St.3d 413, 424, 653 N.E.2d 253, 265; and State v. Fox (1994), 69 Ohio St.3d 183, 191-192, 631 N.E.2d 124, 131.

*State v. Raglin*, 83 Ohio St. 3d at 257.  The Ohio Supreme Court thus recognized the weighing error which the trial judge made, but reweighed the proper aggravating circumstances against the mitigating factors and reached the same conclusion that the trial court had.  That reweighing is constitutionally sufficient to eliminate the impact of the invalid aggravating circumstance. *Fox v. Coyle*, 271 F.3d 658, 667 (6th Cir. 2001)(citing *Wainright v. Goode*, 464 U.S. 78 (1983), and *Barclay v. Florida*, 463 U.S. 939 (1983)).  Petitioner's Twenty-Seventh Ground for Relief is therefore without merit.


### Twenty-Eighth Ground for Relief


Petitioner has abandoned his Twenty-Eighth Ground for Relief (First Amended Petition, Doc. No. 76 at 67).


### Twenty-Ninth Ground for Relief

Petitioner contends in the Twenty-Ninth Ground for Relief that he was denied his constitutional rights when all of the evidence from the guilt phase of trial was reintroduced at the penalty phase, particularly the photos of the deceased (First Amended Petition, Doc. No. 76 at 67).

Petitioner presented this claim to the Ohio Supreme Court as Proposition of Law No. 6 (Appellant's Brief, Joint Appendix, Vol. VI at 855-856). Therein, he cited only Ohio state law, to wit, *Depew and Williams, supra,* and *State v. Woodward*, 68 Ohio St. 3d 70, 623 N.E. 2d 75 (1993). The Ohio Supreme Court rejected the claim summarily on the authority of its decision in *DePew.* *State v. Raglin*, 83 Ohio St. 3d 253, 259 (1998).

This again is a claim not fairly presented to the Ohio courts as a federal constitutional claim. Indeed, in this Court the Petitioner relies on the same three Ohio opinions (*See* Traverse, Doc. No. 18 at 242). The claim is therefore procedurally defaulted and should be dismissed with prejudice.

### Thirtieth Ground for Relief

In his Thirtieth Ground for Relief, Petitioner claims the trial court committed constitutional error in permitting the prosecutor to introduce inadmissible rebuttal evidence, to wit, a death threat to a corrections officer and an escape attempt while awaiting trial (First Amended Petition, Doc. No. 76 at 68).

In rejecting this Proposition, the Ohio Supreme Court wrote:

> Appellant contends that he was unfairly prejudiced by the state's presentation of the rebuttal witnesses and that testimony of the corrections officers "injected evidence of a nonstatutory aggravating circumstance, future dangerousness," into the penalty phase. We disagree. The prosecution was entitled to introduce relevant evidence rebutting the existence of any statutorily defined or other mitigating

> factor first asserted by the defense. Gumm, 73 Ohio St. 3d 413, 653 N.E.2d 253, syllabus. Here, that is precisely what occurred. The testimony of the state's rebuttal witnesses was indeed relevant to rebut mitigating evidence that had been offered by the defense that appellant was remorseful for the killing, that he would help or benefit others while serving a term of life imprisonment, and that his life should therefore be spared. The testimony of the state's rebuttal witnesses was not unfairly prejudicial to appellant, was not offered for an improper purpose, and did not inject a "nonstatutory aggravating factor" into the mix.

*State v. Raglin*, 83 Ohio St.3d 253, 261 (1998).

In essence, the Ohio Supreme Court decided that this evidence was relevant to rebut Mr. Raglin's unsworn statement that he was remorseful or that he would help or benefit others while in prison. The death threat to a corrections officer who had asked him to move to another area was indeed relevant to rebut a claim of remorse. The escape attempt was relevant to his claim he would help or benefit others while imprisoned. Petitioner attempted to characterize these as the introduction of an invalid aggravating circumstance – future dangerousness. If that were a an aggravating circumstance under Ohio law, which it is not, this evidence might have been relevant to prove it. But the fact that evidence might be relevant to prove one proposition does not make it irrelevant to prove another. One might expect that a person who was sincerely remorseful for killing another human being would be slow to threaten death to others; the fact that Petitioner readily threatened death to a corrections officer for what was at most a minor inconvenience casts doubt on the sincerity of his claim of remorse and thus was properly admitted as rebuttal to that claim.

In addition, Petitioner relies on cited federal case law for very broad propositions, failing to cite any Supreme Court precedent suggesting evidence such as this is irrelevant or that its introduction thereby renders a trial fundamentally unfair.

Petitioner's Thirtieth Ground for Relief is without merit.

### Thirty-First Ground for Relief

Petitioner has abandoned his Thirty-First Ground for Relief (First Amended Petition, Doc. No. 76 at 80).

### Thirty-Second Ground for Relief

In his Thirty-Second Ground for Relief, Petitioner contends that the cumulative effect of trial court error denied him his constitutional right to a fair trial (First Amended Petition, Doc. No. 76 at 70).

Petitioner presented this "cumulative error" argument to the Ohio Supreme Court as Proposition of Law No. 21(Appellant's Brief, Joint Appendix, Vol. VI at 929-930). That court summarily rejected the claim. *State v. Raglin*, 83 Ohio St. 3d 253, 266 (1998).

The Sixth Circuit has held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, (6th Cir. 2005) *citing Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002). Petitioner has not demonstrated that any of the asserted errors he lists in this claim are constitutional errors. Their cumulation also cannot be a basis for relief. The Thirty-Second Ground for Relief should be dismissed on the merits.

### Thirty-Third Ground for Relief

Petitioner has abandoned his Thirty-Third Ground for Relief (First Amended Petition, Doc. No. 76 at 71).

## Thirty-Fourth Ground for Relief

In his Thirty-Fourth Ground for Relief, Petitioner claims that both the Ohio death penalty system in general and the manner in which that system is carried out in Hamilton County are unconstitutional (First Amended Petition, Doc. No. 76 at 71).

Petitioner alleges that "virtually uncontrolled discretion of prosecutors in indictment" leads to arbitrary and capricious imposition of the death penalty. This argument has been rejected by this Court on the authority of *Gregg v. Georgia*, 428 U.S. 153 (1976). *Zuern v. Tate*, 101 F. Supp. 2d 948 (S.D. Ohio 2000), *rev'd on other grounds*, 336 F.3d 478 (6th Cir. 2003). The argument that the system as a whole has racially discriminatory impact was also rejected in *Zuern* on basis of *McCleskey v. Kemp*, 481 U.S. 279 (1987).

Petitioner's contention that Ohio unconstitutionally requires proof of aggravating circumstance at guilt rather than penalty phase was rejected in *Zuern* on authority of *Tuilaepa v. California,* 512 U.S. 967 (1994).

Petitioner's claim that the Ohio death penalty scheme is unconstitutional because Ohio R. Crim P. 11(C)(3) permits life sentence on guilty plea was rejected in *Zuern* on authority of *Corbitt v. New Jersey*, 439 U.S. 212 (1978), because the three-judge court can still impose a death sentence. *Accord, Scott v. Anderson*, 58 F. Supp. 2d 767, 796 (N.D. Ohio 1999).

Petitioner contends that Ohio's scheme lacks adequate proportionality review. This

proposition was rejected in *Zuern* on authority of *Pulley v. Harris,* 465 U.S. 37 (1984)(proportionality review on appeal not required). *Accord*, *Byrd v. Collins,* 209 F.3d 486 (6th Cir. 2000).

Petitioner's contention that the Ohio death penalty scheme is unconstitutional because a pre-sentence investigation report and mental evaluation require submission of these documents to the judge and jury if prepared was not presented at all to the Ohio Supreme Court on direct appeal.

The Thirty-Fourth Ground for Relief must be dismissed on the basis of the cited authority.

### Thirty-Fifth Ground for Relief

Petitioner has abandoned his Thirty-Fifth Ground for Relief (First Amended Petition, Doc. No. 76 at 76.)

### Thirty-Sixth Ground for Relief

In his Thirty-Sixth Ground for Relief, Petitioner asserts that the cumulative effect of the other errors already argued make his conviction unconstitutional. This Ground for Relief should be dismissed on the basis of the authority cited with respect to the Thirty-Second Ground for Relief.

### Thirty-Seventh and Thirty-Eighth Grounds for Relief

These claims have previously been dismissed as barred by the statute of limitations.

**Conclusion**

On the basis of the foregoing analysis, it is respectfully recommended that the First Amended Petition be dismissed with prejudice.

February 2, 2006.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).