# IN THE UNITED STATES DISTRICT COURT
## FOR THE SUOTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

WALTER RAGLIN,                      :

       Petitioner,              :       Case No. C-1-00-767

    Vs.                            :       Chief Judge Walter H. Rice

BETTY MITCHELL, Warden             :       Magistrate Judge Michael R. Merz

      Respondent.              :

## PETITIONER WALTER RAGLINS OBJECTIONS TO THE MAGISTRATE JUDGE'S FEBRUARY 2, 2006, REPORT AND RECOMMENDATIONS THAT THE FIRST AMENDED PETITION BE DISMISSED WITH PREJUDICE

JAMES D. OWEN (0003525)
Trial Counsel
5354 North High Street
Columbus, OH 43214
Telephone: (614) 436-3245
Fax: (614) 436-6788

Counsel for petitioner Walter Raglin

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................... i

I.    INTRODUCTION ..................................................................... 1

II.   PROCEDURAL POSTURE ..................................................... 1

III.  ARGUMENT ............................................................................. 2

      A.    Objection to Report and Recommendations on the First
             Ground for Relief ............................................................. 2

      B.    Objection to Report and Recommendations on the
             Second Ground for Relief ................................................ 7

      C.    Objection to Report and Recommendations on the Third
             Ground for Relief ........................................................... 11

      D.    Objection to Report and Recommendations on the Forth
             Ground for Relief ........................................................... 15

      E.    Objection to Report and Recommendations on the Eighth
             Ground for Relief ........................................................... 19

      F.    Objection to Report and Recommendations on the Ninth
             Ground for Relief ........................................................... 22

      G.    Objection to Report and Recommendations on the
             Seventeenth Ground for Relief ....................................... 25

      H.    Objection to Report and Recommendations on the
             Twenty-Third Ground for Relief .................................... 29

      I.    Objection to Report and Recommendations on the Thirty-
             Seventh Ground for Relief .............................................. 32

      J.    Objection to Report and Recommendations on the Thirty-
             Eighth Ground for Relief................................................. 36

IV.   CONCLUSION....................................................................... 40

## I.    INTRODUCTION

On February 2, 2006, Magistrate Judge Merz issued a Report and

Recommendations that Raglin's First Amended Petition for Writ of Habeas Corpus

be dismissed with prejudice. (Doc 89).  Below, Petitioner sets forth the reasons

why the Court should not adopt the Report and Recommendations as to

Petitioner's First, Second, Third, Fourth, Eighth, Ninth, Seventeenth, Twenty-

Third, Thirty-Seventh, and Thirty-Eighth Grounds for Relief.

## II.    PROCEDURAL POSTURE

On September 13, 2000, Walter Raglin filed a Petition for Writ of Habeas

Corpus in the United States District Court, Southern District of Ohio, Western

Division.  On November 1, 2000, the Respondent filed a Return of Writ.  On

February 22, 2001, Mr. Raglin filed his Traverse to the Respondent's Return of

Writ.  The Discovery ultimately obtained from the State and its agents pursuant to

the Magistrate's Orders was review by Raglin's counsel and ultimately resulted in

the filing of a First Amended Petition.  On August 4, 2003, Mr. Raglin filed the

First Amended Petition for Writ of Habeas Corpus.  On February 2, 2006, Chief

Magistrate Judge Merz issued a Report and Recommendations that the First

Amended Petition be dismissed with prejudice.  Below, Raglin sets forth the

reason why the Court should not adopt the Report and Recommendations as to the

First, Second, Third, Fourth, Eighth, Ninth, Seventeenth, Twenty-Third, Thirty-

Seventh, and Thirty-Eighth Grounds for Relief

## III.    ARGUMENT

### A.    Objection to Report and Recommendations on the First Ground for Relief:  Walter Raglin was denied his right to the effective assistance of counsel at the pretrial and trial phases of his capital trial in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments

In his First Ground for Relief as amended, Raglin claims he was denied

effective assistance of trial counsel when his trial counsel failed to adequately voir

dire and remove Juror Tara Veesart; conceded Raglin's guilt and then made

conflicting arguments to the jury; failed to put on evidence which would have

justified a jury instruction on manslaughter; failed to procure the assistance of an

firearms expert; and failed to object to prosecutorial misconduct.

Instead of resolving the ineffective assistance of counsel claims set forth in

this first ground for relief on the merits, the Magistrate incorrectly ruled that the

claims set forth therein were procedurally defaulted because they could have been

raised in state court on direct appeal, but rather were first raised in state court in a

post–conviction petition.  As a result, the Magistrate found that the claims set forth

in this ground were barred by the doctrine of *res judicata*.  The Magistrate's

determination was based on a finding made by the Hamilton County, Ohio Court

of Appeals that his ineffective assistance of counsel claims could have been

2

determined in state court on direct appeal and therefore could not be raised in state court in post-conviction. The Magistrate's determination that the claims are barred by Ohio's doctrine of *res judicata* is wrong for three reasons.

First, the Magistrate's determination that this ground for relief is barred by Ohio's doctrine of *res judicata* is wrong because Raglin did not fail to comply with this rule when he presented the claims contained in this ground to the trial court in his state post-conviction proceedings. A prerequisite for application of procedural default to bar a claim in federal habeas is a determination that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner actually failed to comply with the rule. Maupin v. Smith, 785 F.2d 135 (6th Cir. 1986). Despite the determination made by the Hamilton County Court of Appeals, Raglin did not actually fail to comply with Ohio's doctrine of *res judicata*, thus the habeas claim is not precluded by procedural default.

Here, the Magistrate simply accepted the correctness of the Hamilton County Court of Appeal's application of the doctrine of *res judicata*, when a review of the Ohio Court's ruling was required. Where the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, federal habeas review of the claim is not precluded. Greer v. Mitchell, 264 F.3d 663, 675 (CA6 2001). The facts in Greer, are nearly identical to the case at hand — in state post-conviction proceedings the Ohio courts held that the defendant's ineffective

assistance of trial counsel claim was barred by the doctrine of *res judicata* because petitioner had not raised the claim on direct appeal.  The Sixth Circuit found that although Greer could have raised an ineffective assistance of counsel claim on direct appeal, the precise arguments advanced in his petition for post conviction relief required significant supplementation of the trial court record.  For that reason the Court determined that the Ohio Court of Appeals may have mistakenly relied upon procedural default in denying petitioner's ineffective assistance of trial counsel claim.  Thus, when evidence outside the record is presented to an Ohio court to support claims of ineffective assistance of counsel and that Ohio court mistakenly applies the *res judicata* bar, a federal habeas court must still address the merits of the purportedly defaulted claim.  Hill v. Mitchell, F.3d (6th Cir. 2004).  In this case, the *res judicata* bar was mistakenly applied by the state court.

Raglin did not fail to comply with Ohio doctrine of *res judicata* because when he presented his ineffective assistance of counsel claims to the trial court in state post-conviction he supported them with evidence dehors the record.  See State Court Record, generally Exhibits A-E contained in Vol. VII, pp. 1227-1666 and Exhibits F-P contained in Vol. VIII, pp. 1568-2025; and specifically VIII, pp. 1568 -1600, Exhibit F, Affidavit of Randall L. Porter.

Ohio's doctrine of *res judicata* does not bar or preclude a post-conviction claim if the claim is supported by evidence dehors the record.  State v. Smith

(1985), 17 Ohio St.3d 98.  The petitioner, in order to secure a hearing on his

petition, must proffer evidence outside the trial record which is supportive of

his claims.  State v. Cole (1982), 2 Ohio St.3d 112, 114, 443 N.E.2d 169, 171;

State v. Hester (1976), 45 Ohio St.2d 71, 341 N.E.2d 304.  The Ohio Supreme

Court in Cole ruled that "[g]enerally, the introduction in an R.C. 2953.21

petition of evidence dehors the record is sufficient, if not to mandate a hearing,

at least to avoid dismissal on the basis of *res judicata*."  Cole at 114, 443

N.E.2d 169, 171.  Accordingly, despite the ruling by the Hamilton County

Court of Appeals, Ohio's doctrine of *res judicata*, as it existed at the time

Raglin presented his post-conviction claims, did not preclude him from

presenting his ineffective assistance of trial counsel claims in state post-

conviction.  This is because those claims were supported in post-conviction by

evidence dehors the record.

Second, the Magistrate's determination that this ground for relief is barred

by Ohio's doctrine of *res judicata* is wrong because Raglin did present his claims

to the Ohio Supreme Court in a timely-filed application to re-open his direct

appeal; and no Ohio court ever ruled that the presentation of those claims in his

application to re-open his direct appeal was made either in violation of Ohio's

doctrine of *res judicata* or in violation of any other state procedural rule.  In short,

the ruling by the state court of appeals that petitioner's post-conviction claims were

barred by Ohio's doctrine of *res judicata* does not apply to Petitioner's presentation of those claims in another forum — to the Ohio Supreme Court in his application to re-open his direct appeal. A prerequisite for application of procedural default in a federal habeas proceeding is a determination that the state court actually enforced the procedural sanction, Maupin v. Smith, 785 F.2d 135 (6th Cir. 1986). In this case there was no such finding.

Third, even if Raglin had violated a state procedural rule, which he did not, there was cause and prejudice sufficient to excuse the alleged procedural default. Raglin's ineffective assistance claim can serve as both cause and prejudice, excusing a procedural default in an underlying substantive claim. Edwards v. Carpenter, 529 U.S. 446 (2000). In order to determine the question of whether an appellate counsel's failure to raise claims on direct appeal amounted to ineffective assistance of appellate counsel, the court must first turn to the question of whether any of the "claims rise to the level of constitutional defects such that appellate counsel's failure to raise them amounted to ineffective assistance of counsel." Franklin v. Anderson, 434 F.3d 412, 421 (2006). Here, the Magistrate failed to determine whether the specified instances of ineffective assistance of trial counsel rise to the level of constitutional defects. Thus, there was no basis for a determination that a failure by Raglin's appellate counsel to raise them on direct

appeal was not both cause and prejudice sufficient to excuse the alleged procedural
default.

> **B.     Objection to Report and Recommendations on the Second
> Ground for Relief: Walter Raglin was denied his right to the
> effective assistance of counsel at the mitigation phase of his capital
> trial in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth
> Amendments**

In his Second Ground for Relief as amended, Raglin claims he was denied
his right to effective assistance of counsel at the mitigation phase of his capital trial
because his trial counsel failed to adequately investigate and present significant
evidence of remorseful behavior that occurred in the hours immediately following
the homicide in question.  The Magistrate incorrectly determined that this Second
Ground for Relief, as amended, was barred by the statute of limitations.  The
Magistrate was wrong because this amended claim, which was added in Raglin's
First Amended Petition, relates back to a common core of operative facts, contains
facts that do not differ in both time and type, and are based on the same essential
predicate as those the original petition set forth in the Third and Twenty-Third
Grounds for Relief.

The determining issue as to whether this claim is barred by the statute of
limitations is whether the original and amended petitions state claims are tied to a
common core of operative facts; claims are tied to a common core of operative

facts if they are based on the same essential predicate and are supported by facts that do not differ in both time and type.

Amendment of a federal habeas petition is controlled by the Federal Rules of Civil Procedure. See *28 U.S.C. § 2242* ("Application for writ of habeas corpus . . . may be amended or supplemented as provided in the rules of procedure applicable to civil actions."). *Rule 15* allows for amendments to relate back to the original date of the pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Fed. R. Civ. P. 15(c)*.

The Supreme Court recently examined *Rule 15(c)* in *Mayle*, stating: "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back with be in order" *Mayle v. Felix, 125 S. Ct. 2562, 2574, 162 L. Ed. 2d 582 (2005)*. The Court went on to say "an amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id. at 2566*. The *Mayle* decision also suggests that new claims must share an "essential predicate" with claims raised in the original petition. *Id. at 2573*.

In Raglin's original Petition for Writ of Habeas Corpus, two Grounds for relief rely upon a common core of operative facts that form the essential predicate

8

to a question of critical importance in Raglin's sentencing hearing—whether or not Raglin's behavior in the hours immediately following the homicide demonstrated remorse for his conduct.  In the Third Ground for Relief,  Raglin claimed he was denied the constitutional right to effective assistance of counsel when his attorneys failed to object to the misconduct of the prosecutor in asking juror's in closing argument to consider whether Raglin's was bragging and laughing about the homicide in the hours immediately thereafter.  (Doc 14 at 54–55).  Similarly, in the Twenty-Third Ground for Relief, Raglin alleged prosecutorial misconduct in the prosecutors asking the jury in closing arguments to imagine that Raglin was bragging and laughing about the homicide in the hours immediately following the homicide. (*Id.* at 95).  The underlying facts critical to both of these claims are set out as follows in the Statement of Facts in Raglin's original petition:

> Trial counsel also failed to obtain the statement of Andrea Buffington which the prosecutor used to impeach Dr. Burch's conclusion that Mr. Raglin was remorseful over the shooting and death of Mr. Bany. (Tr. 1714-1715).  The statement depicts Mr. Raglin as boastful and joking regarding the shooting of Mr. Bany.  (Tr. 1714-1715).

(*Id.* at 23).  Clearly, in both the Third and Twenty-Third Grounds for Relief, the essential predicate is whether Raglin's behavior in those hours demonstrated remorse.

The amended Second Ground for Relief is based on his trial counsel's failure to adequately investigate and present significant evidence of remorseful

behavior that occurred in the hours immediately following the homicide in

question. The underlying facts are set out in the Amended Petition:

> Immediately following the homicide, Mr. Raglin fled to
> Natasha Lowery's home. . . . Ms. Lowery described Mr. Raglin's
> behavior at that time. As soon as Mr. Raglin entered her apartment,
> he took off his jacket and confessed to Ms. Lowery what had
> occurred. Then he began vomiting outside of the window.
> According to Ms. Lowery, Mr. Raglin was vomiting, crying and
> unable to sleep all night.
>
> . . . .
>
> During the cross-examination of trail counsel's psychologist,
> Kathleen Burch, the prosecution sought to discredit Mr. Raglin's
> allegations of remorse. The prosecution introduced a statement by
> Andre Buffington . . . [that] Mr. Raglin was laughing when he told
> them he shot someone. (Tr. 1716).

(Doc. 76 at 31-32). The statements relating Mr. Raglin's remorseful behavior

would have been critically important to refute the statements the prosecution

introduced on the issue of remorse. As a result of trail counsel's failure to

investigate, these statements describing Mr. Raglin's remorseful behavior were not

available to combat the evidence put forth by the prosecution that Mr. Raglin did

not demonstrate remorse in the hours immediately following the homicide. Here

again, the essential predicate is whether Raglin's behavior in the hours following

the homicide demonstrated remorse. The claims in both the amended and original

petition are based on the same essential predicate: whether Raglin's behavior in the

hours following the homicide demonstrated remorse.

Additionally, the Second Ground for Relief relies on evidence of the same time and type as the Grounds for Relief set for in the original habeas petition. The time of the evidence at issue in original Grounds for Relief Three and Twenty-Three and in amended Ground for Relief Two is the period of time following the homicide. The type of the evidence at issue in both the original and the amended Grounds is Raglin's behavior in the hours following the homicide. Hence, the original and amended Grounds are of the same time and type.

Because the Second Ground for Relief is based on the same "essential predicate" and is supported by facts similar in both "time and type" to those set forth in the original pleading, the Second Ground for Relief and the Third and Twenty-Third Grounds for Relief are "tied to a common core of operative facts." Thus, the Second Ground for Relief is not barred by the statute of limitations.

**C.    Objection to Report and Recommendations on the Third Ground for Relief: Walter Raglin was denied his right his right to the effective assistance of counsel under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments when his attorneys failed to object and properly preserve errors.**

In his Third Ground for Relief as amended, Raglin claims he was denied effective assistance of trial counsel when his attorneys failed to object and properly preserve critical errors for appeal. For example, in the prosecutor's closing argument during the mitigation phase, trial counsel failed to object when the prosecutor asked the jury to speculate on facts not in evidence and proceded to

11

introduce evidence into his argument that had not been precented during the

proceedings. Specifically, the prosecutor asked the jury to look at Walter Raglin

and, with respect to the hours following Mr. Bany's death, "see him bragging and

laughing and about it and bragging about it." (Tr. 1900).

Even more egregious than this conduct, is when the prosecutor invited the

jury to speculate on where Mr. Raglin would have gone or what he would have

done if he had escaped from the Hamilton County Justice Center. (Tr. 1904). The

prosecutor compounded this misconduct by telling the jury that Walter Raglin

would have committed more murders if his escape from the Hamilton County

Justice Center had been successful.

> [I]s he going to the Baneys to apologize? Is that why he jumped out
> that window? He's back on the streets. Back hustling again. He's
> going to get some more and he's going to do what he has to do to take
> it.

(Tr. 1904).

The failure of Raglin's trial counsel to object resulted in the improper

admission of evidence and its consideration by the sentencing jury. Here, for

example, counsel's failure to object during the sentencing phase to evidence of

future dangerousness and unrelated criminal acts introduced non-statutory

aggravating factors to the jury for their consideration. The failure to object to these

items of evidence, and consideration of them by the sentencer was in error. Ohio

Rev. Code §2929.04(A) sets forth the only aggravating circumstances that may be

considered in imposing the death penalty. Under Ohio's scheme these must be balanced against the mitigating factors. This balancing is designed to guide the sentencer's discretion in conformance with the provisions of the Eighth Amendment. State v. Davis, 38 Ohio St. 3d 361, 369 (1988). Thus, the introduction of non-statutory factors impermissibly tips the scales in favor of death, in violation of the United States Constitution. Trial counsels' failure to object to the admission of non-statutory aggravating factors during the mitigation phase of Raglin's trial, "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Instead of resolving the ineffective assistance of counsel claims set forth in this first ground for relief on the merits, the Magistrate incorrectly ruled that the claims set forth therein were procedurally defaulted because they could have been raised in state court on direct appeal, but rather were first raised in state court in a post–conviction petition. As a result, the Magistrate found that the claims set forth in this ground were barred by the doctrine of *res judicata*. The Magistrate's determination was based on a finding made by the Hamilton County, Ohio Court of Appeals that his ineffective assistance of counsel claims could have been determined in state court on direct appeal and therefore could not be raised in state court in post-conviction. The Magistrate's determination that the claims are barred by Ohio's doctrine of *res judicata* is wrong.

13

First, the Magistrate's determination that this ground for relief is barred by Ohio's doctrine of *res judicata* is wrong because Raglin <u>did</u> present his claims to the Ohio Supreme Court in a timely-filed application to re-open his direct appeal; and no Ohio court ever ruled that the presentation of those claims in his application to re-open his direct appeal was made either in violation of Ohio's doctrine of *res judicata* or in violation of any other state procedural rule.  In short, the ruling by the state court of appeals that petitioner's post-conviction claims were barred by Ohio's doctrine of *res judicata* does not apply to Petitioner's presentation of those claims in another forum — to the Ohio Supreme Court in his application to re-open his direct appeal.  A prerequsite for application of procedural default in a federal habeas proceeding is a determination that the state court actually enforced the procedural sanction, <u>Maupin v. Smith</u>, 785 F.2d 135 (6th Cir. 1986).  In this case there was no such finding.

Second, even if Raglin had violated a state procedural rule, which he did not, there was cause and prejudice sufficient to excuse the alleged procedural default.  Raglin's ineffective assistance claim can serve as both cause and prejudice, excusing a procedural default in an underlying substantive claim.  <u>Edwards v. Carpenter</u>, 529 U.S. 446 (2000).  In order to determine the question of whether an appellate counsel's failure to raise claims on direct appeal amounted to ineffective assistance of appellate counsel, the court must first turn to the question of whether

14

any of the "claims rise to the level of constitutional defects such that appellate

counsel's failure to raise them amounted to ineffective assistance of counsel."

Franklin v. Anderson, 434 F.3d 412, 421 (2006).  Here, the Magistrate failed to

determine whether the specified instances of ineffective assistance of trial counsel

rise to the level of constitutional defects.  Thus, there was no basis for a

determination that a failure by Raglin's appellate counsel to raise them on direct

appeal was not both cause and prejudice sufficient to excuse the alleged procedural

default.

> **D.    Objection to Report and Recommendations on the Fourth Ground for Relief:  Walter Raglin was denied his right to the effective assistance of counsel on his direct appeal in violation of the Sixth and Fourteenth Amendments to the United States Constitution.**

In his Fourth Ground for Relief as amended, Raglin claims he was denied

effective assistance of appellate counsel when his appellate counsel failed to raise

eight meritorious issues.

Specifically, these omitted issues were:

1.    Walter Raglin was denied the effective assistance of counsel when his counsel failed to challenge a prospective juror for cause or utilize a peremptory challenge to remove a juror who had personal knowledge of the crime alleged and personal relationships with those affected by the crime alleged.

2.     Walter Raglin was denied the effective assistance of counsel when, without his consent, counsel repeatedly conceded the issue of guilt at the trial phase of his capital trial, thereby voiding the state's burden of proof and eviscerating the defendant's right to confront witnesses.

3.     Walter Raglin was denied the effective assistance of counsel when defense counsel repeatedly conceded the issue of guilt to the charged aggravated murder during voir dire and opening statement, but then inconsistently argued in closing that the state failed to prove the element of purpose beyond a reasonable doubt.

4.     Walter Raglin was denied the effective assistance of counsel when his counsel failed to exercise his rights to procure reasonable and necessary experts to present forensic evidence essential to an effective defense, including, but not limited to, an expert to rebut the state's suspect evidence regarding the operability of the alleged murder weapon when that evidence bore directly on the element of intent central to the capital offenses alleged.

5.     Walter Raglin was denied the effective assistance of counsel when his counsel failed to put on a defense case-in-chief targeting a lesser included offense in a situation where the need for such defense is clearly indicated by the facts and necessary to rebut the state's suspect evidence regarding the element of intent.

6.     Walter Raglin was denied the effective assistance of counsel when his counsel failed to investigate and present substantial mitigating evidence of remorse during the sentencing phase hearing.

7.     Walter Raglin was denied the effective assistance of appellate counsel when his counsel failed to raise as error, trial instructions which undermine the state's burden of proof beyond a reasonable doubt and which shift the burden of proof to the defendant.

16

8.    Walter Raglin was denied the effective assistance of counsel when his counsel failed to object to a prosecutor's closing argument that is presented in a manner to inflame the jurors against the defendant.

The Magistrate determined that asserted assignment number six above was barred by the statute of limitations because it was not contained in the original habeas petition, but rather was plead for the first time in the First Amended Petition.  Raglin does not object to this determination, but does object to the Magistrate's finding that the remaining seven asserted assignments of error are without merit.

A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal.  Evitts v. Lucey, 469 U.S. 387, 396 (1985).  In Mapes v. Coyle, 171 F.3d 408, 427-28 (6th Cir. 1999), the court attempted to provide a non-exclusive list of factors to consider when defining deficient performance:

1.  Were the omitted issues "significant and obvious?"
2.  Was there arguably contrary authority on the omitted issues?
3.  Were the omitted issues clearly stronger than those presented?
4.  Were the omitted issues objected to at trial?
5.  Were the trail court's rulings subject to deference of appeal?
6.  Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7.  What was the appellate counsel's level of experience and expertise?
8.  Did the petitioner and appellate counsel meet and go over possible issues?
9.  Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

17

Id.  In addition to the Mapes factors, a habeas court may also consider

"[p]revailing norms of practice as reflected in American Bar Association standards

and the like."  Strickland v. Washington, 466 U.S. 668, 688 (1984).

In this case, Raglin presented the extensive affidavit of attorney Laney

Hawkins setting forth in detail the reasons why Raglin received deficient

performance by his counsel on direct appeal.  JA Vol. IX, pp. 2809-2833.  This

was supplemented by an additional affidavit of attorney Joseph E. Wilhelm, also

explaining why Raglin's appellate counsel was deficient.  JA Vol. IX, pp. 2884-

2891.  This evidence was never challenged by the Respondent either in state court

or in this Federal Habeas Proceeding.

In addition to the information set forth in the foregoing affidavits, the factual

basis of asserted assignment one above is set forth in the First Ground for Relief

subpart B(4) in Raglin's First Amended Petition; the factual basis of asserted

assignments two and three above are set forth in the First Ground for Relief

subpart C(1 and 2); the factual basis of asserted assignment four and five are set

forth in the First Ground for Relief subparts D(1 and 2); the factual basis of

asserted assignment of error seven is set forth in the Ninth and Tenth Grounds for

Relief; and the factual basis of asserted assignment of error eight is set forth in the

First Ground for Relief subpart D(3).  Raglin's merits arguments for asserted

assignments of error one through eight are set forth in his Traverse.

18

**E.    Objection to Report and Recommendations on the Eighth Ground for Relief:  Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment Rights were violated when the judge refused to instruct the jury at the end of the trial phase that it could find Mr. Raglin guilty of involuntary manslaughter, a lesser included offense of aggravated murder.**

In his Eighth Ground for Relief as amended, Raglin claims his constitutional rights were denied when the trial court failed to instruct the jury on the lesser included offense of involuntary manslaughter.  The Magistrate incorrectly ruled that the merits determination made by the Ohio Supreme Court was "not an unreasonable determination."  In so ruling, the Magistrate meant that pursuant to 28 U.S.C. §2254(d)(1) this court had no authority to grant relief on the merits because it was adjudicated on the merits in state court and that decision was not an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States.  Raglin objects to this finding for the reasons set forth below.

In a capital case, the refusal of the trial court to give a proper instruction on a lesser degree of homicide at the trial phase is unconstitutional.  <u>Beck v. Alabama</u>, 447 U.S. 625 (1980).  The dispositive question in this issue is whether the Ohio Supreme Court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §2254(d)(1).

In <u>Williams v. Tayor</u>, 529 U.S. 362 (2000), the Supreme Court explained the meaning of "contrary to" and "unreasonable application."  A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a case differently that the Supreme Court's decisions on materially indistinguishable facts.  <u>Id.</u> at 412-13.  An "unreasonable application" occurs when the state court correctly identified the correct legal principle from Supreme Court precedent but unreasonably applied that principle to the facts of the case before it.  <u>Id.</u>

In this case, in making its determination, the Ohio Supreme Court failed to identify controlling Supreme Court precedent.  However, state court decisions need not cite Supreme Court precedent "so long as neither the reasoning nor the result of the state court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).  Thus, in order to adjudicate the merits of this claim the Magistrate was required to find that "neither the reasoning nor the result" of the Ohio Supreme Court ruling contradicts clearly established Federal Law.  <u>Id.</u>

The clearly established Federal Law regarding the granting of a lesser included instruction is set forth in <u>Beck v. Alabama</u>, 447 U.S. 625 (1980) and <u>Hopper v. Evans</u>, 456 U.S. 605 (1982).  In <u>Beck</u>, the Court held that a death sentence may not be imposed if a jury was not permitted to consider a verdict of

20

guilt of a lesser included offense.  In <u>Hopper</u> the Court clarified beck to mean that due process requires a lesser included offense instruction be given when the evidence supports it.  A lesser included offense instruction must be given if the evidence presented would permit a jury rationally to find a defendant guilty of the lesser offense and acquit him of the greater.

The evidence presented at trial was sufficient for the jury to conclude that Raglin lack the specific purpose to kill Mr. Bany.  For example, Mr. Raglin's statement given to police and introduced by the state, showed that he expressly denied intent or purpose to kill.  In fact, Mr. Raglin stated that he was scared, that he panicked, and that he did not intend to kill Mr. Bany.  Mr. Raglin stated:

> Uh I mean uh I was scared; I didn't know what to do; I mean I panicked uh I mean I ain't never shot nobody; I ain't never stabbed nobody; I ain't never jumped nobody.

. . .

> I, I fired the gun at 'im.  I didn't know where I hit 'im at.  *I wasn't tryin' to kill 'im or nuttin' like that*.  An' I mean, I mean that's the way it happened.

Post-Conviction Petition, Exh. C, JA Vol. VII, p 001536. (emphasis added).  The gun was not Mr. Raglin's.  Post-Conviction Petition, Exh. C, JA Vol. VII, p. 001511.  Acordingly, he could not have been familiar with how it operated.  Mr. Raglin had been drinking and smoking marijuana for a number of hours prior to the incident.  Post-Conviction Petition, Exh. C, JA Vol. VII, p. 001508-001509.

Finally, Mr. Bany made movements toward the case that he was carrying that surprised and panicked Mr. Raglin.    Post-Conviction Petition, Exh. C, JA Vol. VII, p. 001536.  Thus, based on this evidence, it is reasonably possible that the firing of the unfamiliar gun was an instantaneous response to the sudden (as it seemed to Mr. Raglin) movement of the victim as he attempted to collect his musical equipment.

When applying these facts to the test set forth in <u>Beck</u> and <u>Hopper</u>, the merits determination made by the Supreme Court was unreasonable because the result of the Ohio Supreme Court's ruling contracts clearly established Federal Law.

> **F.    Objection to Report and Recommendations on the Ninth Ground for Relief:  Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment Rights were violated when the judge erroneously instructed the jury at the end of the trial phase on the issues of causation, forseeability, intent, and purpose.**

In his Ninth Ground for Relief as amended Raglin claims his constitutional rights were denied when the trial court, over objection, instructed the jury in a manner which created an impermissible presumption that had the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of the crime in violation of his rights under the Due Process Clause of the Fourteenth Amendment.  See <u>Sandstrom v. Mont.</u>, 442 U.S. 510 (1979) (jury instructions shifting burden of proof on mental state unconstitutional);

<u>Francis v. Franklin</u>, 471 U.S. 307 (1985) (instructions to the jury that "acts of a person . . . are presumed to be a product of a person's will," and that a person "is presumed to intend the natural and probable consequences of his acts," unconstitutionally relieve the state of its burden to prove the mental element of purpose beyond a reasonable doubt).

The Magistrate incorrectly ruled that the merits determination made by the Ohio Supreme Court was not an unreasonable application of clearly established Federal Law as determined by the Supreme Court of the United States.  Raglin objects to this finding for the reasons set forth below.

The trial court, over objection, instructed the jury that the essential element of cause is present:

> when the death is the natural and foreseeable result of the act...'Result' occurs when the death is naturally and foreseeably caused by the act...The causal responsibility of the defendant for an unlawful act is not limited to its most obvious result. The defendant is responsible for the natural, most obvious result.  The defendant is responsible for the natural, logical and foreseeable results that follow, in the ordinary course of events, from an unlawful act.

(Tr. 1412, 1476, 1487).  This instruction undercut the instruction given by the trial court that the state prove beyond a reasonable doubt that Mr. Raglin *purposely* caused the death of Mr. Bany.  (Tr. 1474).

The trial court's instruction on "purpose" shifted the burden of proof to Mr. Raglin in violation of Mr. Raglin's constitutional rights.  <u>Francis v. Franklin</u>, 471

U.S. 307 (1985).  This improper definition of purpose created a conclusive

presumption of Mr. Raglin's purpose to kill from the mere purposeful participation

in any criminal act.  See <u>Francis</u>, 471 U.S. at 313, 317-18.

These errors were compounded by the trial court's failure to give a

mandatory instruction that any inference of Mr. Raglin's intent to kill from the use

of a weapon was nonconclusive.  *See* Oh. Rev. Code §2903.01(E) (formerly Oh.

Rev. Code §2903.01(D)).  This instruction was required under Oh. Rev. Code

§2903.01(E) because Mr. Raglin was charged with aggravated murder under Oh.

Rev. Code §2903.01(B).  These instructional errors shifted the burden of proof to

Mr. Raglin to show that he did not intend to kill Mr. Bany.  (Tr. 1460-1489).

The Ohio Supreme Court dealt with this issue by finding that:

The trial court's instruction to the jury viewed as a whole, made it
clear that a finding of purpose (and specific intent) to kill was
necessary in order to convict appellant on the charge of aggravated
murder.  The jury in this case returned its verdicts in accordance with
the overwhelming evidence on this issue.  Accordingly, we find no
reversible error here.

<u>State v. Raglin</u>, 83 Ohio St. 3d 253, 264 (1998).  The Ohio Supreme Court failed to

address however whether a reasonable juror could have viewed the instructions

given as mandatory.  The portion of the jury charge challenged in the case directs

the jury to presume that: "The defendant is responsible for the natural, most

obvious result" and that "[t]he defendant is responsible for the natural, logical and

foreseeable results that follow, in the ordinary course of events, from an unlawful

24

act." (Tr. 1412, 1476, 1487). These words carry precisely the message of the language condemned in Sandstrom: the jurors "were not told that they had a choice, or that they *might* infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory." Sandstrom, at 515. The portion of the jury charge challenged in this case directs the jury to presume that if the defendant commits "an unlawful act" he "is responsible for the natural, logical and foreseeable results that follow." In this way, the instructions direct the jury to presume that once Raglin committed an unlawful act he was responsible for all the natural, logical and foreseeable results that follow regardless of whether he had the specific intent for those results to occur. In this way, the instructions undermine the jurors' responsibility at trial, based on evidence produced, to find the ultimate facts beyond a reasonable doubt. Thus, the instructions given violated Raglin's due process rights in violation of clearly established Federal Law.

**G.    Objection to Report and Recommendations on the Seventeenth Ground for Relief: Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment Rights were violated when the judge instructed the jury at the end of the mitigation phase in such a manner that the jury could conclude that it had to consider and reject a recommendation as to the imposition of death before it could consider either life sentence option.**

In his Seventeenth Ground for Relief as amended, Raglin claims his constitutional rights were denied whn the trial court instructed the jury to consider

and reject the death sentence before considering either life option.  The Magistrate

incorrectly ruled that this claim was procedurally defaulted because when it was

presented to the Ohio Supreme Court it was phrased as a matter of state, not

federal, law.  As will be shown below, the Magistrate was simply wrong.

      The trial court instructed the jury as follows:

> As was the case last week, ladies and gentlemen, all
> twelve jurors must agree on a verdict.  If all twelve members of
> the jury find by proof beyond a reasonable doubt that
> aggravating circumstance in the count of Aggravated Murder
> which the defendant was found guilty of committing outweighs
> the mitigating factors, then you shall recommend to myself a
> sentence of death.
>       On the other hand, if after considering all of the relevant
> evidence admitted at the two trials and the arguments of
> counsel, you find the State of Ohio failed to prove beyond a
> reasonable doubt that the aggravating circumstance in the count
> of Aggravated Murder which the defendant was found guilty of
> committing outweighs the mitigating factors, ***then*** you will not
> recommend to the Court the sentence of death.  ***In that event***,
> you will determine which of two possible life imprisonment
> sentences to recommend to the Court as to the count of
> Aggravated Murder.

(Tr. 1916-1917) (emphasis added).  While not stating expressly that the jury was

required to consider death before considering life, that is the clear meaning of the

instruction.

     In <u>Mills v. Maryland</u>¸ 486 U.S. 367 (1988), the United States Supreme Court

held that jury instructions that prevents one or more jurors from giving

consideration to "factors which may call for a less severe penalty" than death

violate the eighth Amendment prohibition against cruel and unusual punishment.
If even one juror could be confused by the jury instructions, then the reliability of
the verdict was undermined.  In a line of cases that began with <u>Mills</u> and extended
to <u>McKoy v. North Carolina</u>, 494 U.S. 433 (1990) the Supreme Court made it clear
that any requirement that mitigating factors must be found unanimously is
incoherent.  For that reason, the Sixth Circuit in <u>Davis v. Mitchell</u> held that an
Ohio jury instruction that excludes a <u>Springer/Brooks</u> type instruction is defective
if the omission of that instruction leaves the jury with the impression that it "must
first unanimously reject the death penalty before it can consider a life sentence."
<u>Davis v. Mitchell</u>, 318 F. 3d 682, 689 (6th Cir. 2003).  The Court held that the
Ohio jury instruction at issue (which is nearly identical to the instructions for
Raglin's case) that omitted the <u>Springer/Brooks</u> instruction ran afoul of <u>Mills</u>
because without such an instruction the "constitutionally required non-unanimous
mechanism that will prevent a recommendation of death is obscured to such an
extent that it cannot even be said to be implied by the instructions in this case."
<u>Davis</u>, at 689.

Rather than ruling on this claim on the merits, the Magistrate ruled that it
was procedurally defaulted because it was presented to the Ohio Supreme Court as
a state, as opposed to a federal, question and that the Ohio Supreme Court
therefore did not have the federal claim fairly presented to it.  However, a review

of the state court record demonstrates that this claim was presented to the Ohio

Supreme Court as a federal question.  Raglin presented this claim to the Ohio

Supreme Court on direct appeal in his Merit Brief as Proposition of Law No. 9,

stating:

> Where jury instructions at the penalty phase of capital proceedings
> misstate the law to the jury, fail to define mitigating factors, exclude
> relevant mitigation, and is otherwise erroneous and misleads the jury,
> the resulting death sentence violates the Eighth and Fourteenth
> Amendments, and Art. I, secs. 9 and 16 of the Ohio Constitution, and
> must be reversed.

JA Vol. VI, p. 862.  Immediately following the stated Proposition of Law, Raglin

stated in his Merit Brief that:

> the penalty phase instruction of the trial court in several other respects
> were erroneous, with the result that an improperly instructed jury
> returned a constitutionally unreliable sentencing verdict, violating
> Appellant's rights under the Eighth and Fourteenth Amendments to
> the United States Constitution, and Sections 9 and 16 of the Ohio
> Constitution.

JA Vol. VI, p. 863.  It should be clear from the language contained in Proposition

of Law No. 9 and the explanation set forth immediately thereafter that Raglin

intended each and every part of this Proposition of Law to be based on violations

of the United States and Ohio Constitutions.

In Part F of the Proposition of Law No. 9, the Merit Brief sets forth the

factual basis for this claim as follows:

> The trial court in effect instructed the jury that it had to
> consider, and reject, the death sentence before considering either life

28

option (R. 1917).  While not stating expressly that the jury was
required to consider death before considering life, that is the clear
import of the instruction.  This is error sufficient to warrant reversal of
the death sentence, State v. Brooks, (1996), 75 Ohio St. 3d 148, 159-
160, 661 N.E.2d 1030, 1042.  Furthermore, the trial court failed to
instruct that one juror could prevent the imposition of the death
penalty, as required by Brooks henceforth from that decision (which
preceded Appellant's trial by several months), although the trail court
did instruct the jury that any verdict it returned had to be unanimous,
and the jury verdict forms also reflected the requirement of unanimity.
(R. 1917-1919).

JA Vol. VI, p. 865-866.  Although the Merit Brief cites Brooks to support his

Federal Constitutional Claim, Brooks relies on Mills and Kubat v. Thieret, 867

F.2d 351 (7th Cir. 1989) for the proposition that if a state's death penalty statute

precludes imposition of the death penalty if one or more jurors believes there is

sufficient mitigation to preclude death, then the Eighth and Fourteenth

Amendments preclude the jurors from being instructed otherwise.  The fact that the

Merit Brief cites Brooks for the proposition that a solitary juror may prevent the

imposition of a sentence of death does not convert the Federal Constitutional

Claim to one of state law.

      **H.**     **Objection to Report and Recommendations on the Twenty-Third
Ground for Relief:  Walter Raglin was denied his constitutional
rights to a fair and impartial trail under the Fifth, Sixth, Seventh,
Eighth, Ninth, and Fourteenth Amendments as a result of
prosecutorial misconduct during both phases of his capital
proceedings.**

In his Twenty-Third Ground for Relief as amended, Raglin claims he was

denied his constitutional right to a fair trial due to pervasive prosecutorial

misconduct. The Magistrate erroneously ruled that following asserted instances of prosecutorial misconduct were not presented at all to the state courts and cannot be considered in this Federal Habeas Proceeding:

- "the prosecutors made expressions as to what the opinions of Mr. Raglin's counsel might be and denigrated the defense counsel with regard to their argument (Tr. 1447)."

- "The prosecutors frequently stated their opinion as to Mr. Raglin's state of mind during the shooting, without any evidentiary foundation. (Tr. 1450, 1457)."

- "The prosecutors also sarcastically mis-characterized[sic] Mr. Raglin's statement that the gun went off accidentally. (Tr. 1451)."

- Prosecutors also stated that trial counsel was asking them to not follow the law. (Tr. 1896)."

- "The prosecutors made impermissible statements of personal opinion to the jury. (Tr. 1900, 1901, 1904)."

- "The prosecutors consistently substituted emotion for reasoned advocacy in their closing arguments. (Tr. 1419-1420, 1427, 1428, 1457-1460)."

- "The prosecutors also repeatedly referred to Mr. Raglin's silence as well as to facts that were not in evidence. (Tr. 1420, 1450-1454, 1838, 1839, 1896, 1901)."

- "The prosecutors blamed the need for a trial on Mr. Raglin's unwillingness to plead guilty. (Tr. 1424, 1431)."

- "The prosecutors attempted to reduce the state's burden of proof by arguing the jurors should not 'make this case more difficult than it is.' (Tr. 1444)."

- "The prosecutors assured the jury that the case was that simple and that they could 'sit on a hundred more cases' and they would never find one as easy to decide as this one. (Tr. 1444-1445)."

- The prosecutors' handling of the murder weapon during the guilt phase of closing argument

- "the prosecutor invited the jury to look at Walter Raglin and, with respect to the hours following Mr. Bany's murder 'see him bragging and laughing and about it and bragging about it.' (Tr. 1900).

- "the prosecutor invited the jury to speculate on where Mr. Raglin would have gone or what he would have done if he had escaped form the Hamilton County Justice Center (Tr. 1904). The prosecutor compounded this misconduct by telling the jury that Walter Raglin would have committed more murders if his escape from the Hamilton County Justice Center had been successful . . ."

(Amended Return of Writ, Doc. No. 80 at 80-81).  In fact, the foregoing instances of prosecutorial misconduct were presented to the state courts for review.  First, several of the foregoing instances were presented to the Ohio Supreme Court on direct appeal in Proposition of Law No. 16 set forth in his Merit Brief.  (JA Vol. VI, p. 915).  The remaining instances were presented to the trial court in state post-conviction in Raglin's Eighteenth Ground for relief.  (JA Vol. VII, pp. 1216-1218).  Accordingly, the Magistrate erred in stating that these egregious instances of prosecutorial misconduct were never presented to the Ohio courts.

With respect to the remaining instances of prosecutorial misconduct, both the Ohio Supreme Court and the Magistrate failed to make a finding that the misconduct actually occurred.  Without determining whether in fact the actions of the prosecutor constituted prosecutorial misconduct, there can be no finding regarding whether prejudice occurred.  The Magistrate should have made a determination about whether each alleged action of prosecutorial misconduct occurred.  He should then have looked at them in the context of each other, and

found that in combination with each other they supported the grant of a writ because they completed served to undermine Raglin's case in mitigation.  In short, the Magistrate could not make a determination about whether Raglin was prejudiced by the pervasive instances of prosecutorial misconduct alleged without first determining whether each of those prosecutorial actions did in fact constitute prosecutorial misconduct.

Further, because the Ohio Supreme Court failed to address the action of the prosecutor to determine whether they constitute prosecutorial misconduct as a matter of Federal Constitutional Law, they should be reviewed de novo in this Federal Habeas Proceeding, which the Magistrate failed to do.  In any event, under any standard of review, it was unreasonable to conclude that no prejudice existed

## I.      Objection to Report and Recommendations on the Thirty-Seventh Ground for Relief: Brady Claim

Raglin's Thirty-Seventh Ground for Relief is based on the prosecution's violation of their constitutional obligation to provide the defense with all exculpatory evidence relevant to either trial or sentence.  Specifically, the prosecution did not inform defense counsel that statements taken by investigating police clearly indicated that Raglin expressed remorse for his involvement in the shooting death of Michael Bany in violation of the rule of <u>Brady v. Maryland</u> and its progeny. The Magistrate incorrectly determined that this Thirty-Seventh Ground for Relief was barred by the statute of limitations.  The Magistrate was

32

wrong because this claim is supported by facts that are tied to a common core of operative facts, do not differ in both time and type, and are based on the same essential predicate as those the original petition set forth in the Third and Twenty-Third Grounds for Relief.

The determining issue as to whether this claim is barred by the statute of limitations is whether the original and amended petitions state claims that are tied to a common core of operative facts; claims are tied to a common core of operative facts if they are based on the same essential predicate and are supported by facts that do not differ in both time and type.

Amendment of a federal habeas petition is controlled by the Federal Rules of Civil Procedure. See 28 U.S.C. § 2242 ("Application for writ of habeas corpus . . . may be amended or supplemented as provided in the rules of procedure applicable to civil actions."). Rule 15 allows for amendments to relate back to the original date of the pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c).

The Supreme Court recently examined Rule 15(c) in <u>Mayle</u>, stating:  "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back with be in order" <u>Mayle v. Felix</u>, 125 S. Ct. 2562, 2574, 162 L. Ed. 2d 582 (2005).  The Court went on to say "an amended

habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 2566.  The Mayle decision also suggests that new claims must share an "essential predicate" with claims raised in the original petition.  Id. at 2573.

In Raglin's original Petition for Writ of Habeas Corpus, two Grounds for relief rely upon a common core of operative facts that form the essential predicate to a question of critical importance in Raglin's sentencing hearing—whether or not Raglin's behavior in the hours immediately following the homicide demonstrated remorse for his conduct.  In the Third Ground for Relief,  Raglin claimed he was denied the constitutional right to effective assistance of counsel when his attorneys failed to object to the misconduct of the prosecutor in asking juror's in closing argument to consider whether Raglin's was bragging and laughing about the homicide in the hours immediately thereafter.  (Doc 14 at 54–55).  Similarly, in the Twenty-Third Ground for Relief, Raglin alleged prosecutorial misconduct in the prosecutors asking the jury in closing arguments to imagine that Raglin was bragging and laughing about the homicide in the hours immediately following the homicide. (Id. at 95).  The underlying facts critical to both of these claims are set out as follows in the Statement of Facts in Raglin's original petition:

> Trial counsel also failed to obtain the statement of Andrea Buffington which the prosecutor used to impeach Dr. Burch's conclusion that

> Mr. Raglin was remorseful over the shooting and death of Mr. Bany.
> (Tr. 1714-1715).  The statement depicts Mr. Raglin as boastful and
> joking regarding the shooting of Mr. Bany.  (Tr. 1714-1715).

(Id. at 23).  Clearly, in both the Third and Twenty-Third Grounds for Relief, the

essential predicate is whether Raglin's behavior in those hours demonstrated

remorse.

The Thirty-Seventh Ground for Relief is based is on the prosecution's

violation of their constitutional obligation to provide the defense with all

exculpatory evidence relevant to either trial or sentence.  In January 1996,

investigating police officers took statements from two witnesses who described

Raglin's conduct in the hours immediately following the homicide.  These

witnesses stated Raglin was vomiting, crying, acting strangely, and asking if the

Lord would forgive him.  (Doc. 76 at 78).  These statements clearly demonstrate

remorse and were material to sentencing.

The statements relating Mr. Raglin's remorseful behavior would have been

critically important to refute the statements the prosecution introduced on the issue

of remorse.  As a result of the prosecution's failure to uphold their obligation to

provide the defense all Brady material, these statements describing Mr. Raglin's

remorseful behavior were not available to combat the evidence put forth by the

prosecution that Mr. Raglin did not demonstrate remorse in the hours immediately

following the homicide.  Here again, the essential predicate is whether Raglin's

behavior in the hours following the homicide demonstrated remorse.  The claims in both the amended and original petition are based on the same essential predicate: whether Raglin's behavior in the hours following the homicide demonstrated remorse.

Additionally, the Thirty-Seventh for Relief relies on evidence of the same time and type as the Grounds for Relief set for in the original habeas petition.  The time of the evidence at issue in original Grounds for Relief Three and Twenty-Three and in amended Ground for Relief Thirty-Seven is the period of time following the homicide.  The type of the evidence at issue in both the original and the amended Grounds is Raglin's behavior in the hours following the homicide. Hence, the original and amended Grounds are of the same time and type.

Because the Thirty-Seventh Ground for Relief is based on the same "essential predicate" and is supported by facts similar in both "time and type" to those set forth in the original pleading, the Thirty-Seventh Ground for Relief and the Third and Twenty-Third Grounds for Relief are "tied to a common core of operative facts."   Thus, the Thirty-Seventh Ground for Relief is not barred by the statute of limitations.

### J.    Objection to Report and Recommendations on the Thirty-Eighth Ground for Relief: Giglio

Raglin's Thirty-Eighth Ground for Relief is based on the prosecution's unconstitutionally allowing false testimony to go uncorrected to obtain a

conviction or death sentence in violation of the holding of <u>Giglio v. United States</u>.

Specifically, the prosecution allowed false testimony regarding Petitioner's

remorse, or lack thereof, to go uncorrected. The Magistrate incorrectly determined

that this Thirty-Eighth Ground for Relief was barred by the statute of limitations.

The Magistrate was wrong because this claim is supported by facts that are tied to

a common core of operative facts, do not differ in both time and type, and are

based on the same essential predicate as those the original petition set forth in the

Third and Twenty-Third Grounds for Relief.

The determining issue as to whether this claim is barred by the statute of

limitations is whether the original and amended petitions state claims that are tied

to a common core of operative facts; claims are tied to a common core of operative

facts if they are based on the same essential predicate and are supported by facts

that do not differ in both time and type.

Amendment of a federal habeas petition is controlled by the Federal Rules of

Civil Procedure. See 28 U.S.C. § 2242 ("Application for writ of habeas corpus . . .

may be amended or supplemented as provided in the rules of procedure applicable

to civil actions.").  Rule 15 allows for amendments to relate back to the original

date of the pleading when "the claim or defense asserted in the amended pleading

arose out of the conduct, transaction, or occurrence set forth or attempted to be set

forth in the original pleading." Fed. R. Civ. P. 15(c).

The Supreme Court recently examined Rule 15(c) in <u>Mayle</u>, stating: "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back with be in order" <u>Mayle v. Felix</u>, 125 S. Ct. 2562, 2574, 162 L. Ed. 2d 582 (2005). The Court went on to say "an amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." <u>Id</u>. at 2566. The <u>Mayle</u> decision also suggests that new claims must share an "essential predicate" with claims raised in the original petition. <u>Id</u>. at 2573.

In Raglin's original Petition for Writ of Habeas Corpus, two Grounds for relief rely upon a common core of operative facts that form the essential predicate to a question of critical importance in Raglin's sentencing hearing—whether or not Raglin's behavior in the hours immediately following the homicide demonstrated remorse for his conduct. In the Third Ground for Relief, Raglin claimed he was denied the constitutional right to effective assistance of counsel when his attorneys failed to object to the misconduct of the prosecutor in asking juror's in closing argument to consider whether Raglin's was bragging and laughing about the homicide in the hours immediately thereafter. (Doc 14 at 54–55). Similarly, in the Twenty-Third Ground for Relief, Raglin alleged prosecutorial misconduct in the prosecutors asking the jury in closing arguments to imagine that Raglin was

bragging and laughing about the homicide in the hours immediately following the homicide. (*Id.* at 95). The underlying facts critical to both of these claims are set out as follows in the Statement of Facts in Raglin's original petition:

> Trial counsel also failed to obtain the statement of Andrea Buffington which the prosecutor used to impeach Dr. Burch's conclusion that Mr. Raglin was remorseful over the shooting and death of Mr. Bany. (Tr. 1714-1715). The statement depicts Mr. Raglin as boastful and joking regarding the shooting of Mr. Bany. (Tr. 1714-1715).

(*Id.* at 23). Clearly, in both the Third and Twenty-Third Grounds for Relief, the essential predicate is whether Raglin's behavior in those hours demonstrated remorse.

The Thirty-Eighth Ground for Relief is based is on the prosecution's unconstitutionally allowing false testimony to go uncorrected to obtain a conviction or death sentence in violation of the holding of <u>Giglio v. United States</u>. The prosecution allowed false testimony regarding Petitioner's remorse, or lack thereof, to go uncorrected. In closing at the penalty phase, the prosecutors argued that Raglin had no remorse for his crimes. (Tr. 1904-1905). The prosecutors knew that their arguments were false; the prosecutors had the statements of Natasha Lowery and Ronnell Mumphrey in their trial file which demonstrated the Raglin was remorseful. Here again, the essential predicate is whether Raglin's behavior in the hours following the homicide demonstrated remorse. The claims in both the

amended and original petition are based on the same essential predicate: whether Raglin's behavior in the hours following the homicide demonstrated remorse.

Additionally, the Thirty-Eighth for Relief relies on evidence of the same time and type as the Grounds for Relief set for in the original habeas petition. The time of the evidence at issue in original Grounds for Relief Three and Twenty-Three and in amended Ground for Relief Thirty-Eight is the period of time following the homicide. The type of the evidence at issue in both the original and the amended Grounds is Raglin's behavior in the hours following the homicide. Hence, the original and amended Grounds are of the same time and type.

Because the Thirty-Eighth Ground for Relief is based on the same "essential predicate" and is supported by facts similar in both "time and type" to those set forth in the original pleading, the Thirty-Eighth Ground for Relief and the Third and Twenty-Third Grounds for Relief are "tied to a common core of operative facts." Thus, the Thirty-Eighth Ground for Relief is not barred by the statute of limitations.

## IV.  CONCLUSION

In light of the arguments presented above, Petitioner respectfully requests that the Court not adopt the Magistrate Judge's Report and Recommendation. Instead, the Court should grant the writ.

Respectfully submitted,

s/James D. Owen

_____

James D. Owen (0003525)
5354 North High Street
Columbus, Ohio 43214
(614) 436-3245

OwenJDO@AOL.com
Trial Attorney for Petitioner

## CERTIFICATE OF SERVICE

I hearby certify that I have, this 26th day of May, 2006, served electronically

through the Court's ECF System a copy of the foregoing pleading to the following

attorneys of record:

Carol Ann Ellenson
Charles L. Wille
ASSISTANT ATTORNEY GENERAL
Capital Crimes Section- 23rd Floor
30 East Broad Street
Columbus, Ohio 43215

s/James D. Owen

_____

James D. Owen (0003525)

41