# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

WALTER RAGLIN,

                                   :

            Petitioner,                        Case No. 1:00-cv-767

                                   :        District Judge Walter Herbert Rice

      -vs-                                  Chief Magistrate Judge Michael R. Merz

BETTY MITCHELL, Warden,

                                   :

           Respondent.

---

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

        This capital habeas corpus case is before the Court for decision on the merits. On February

2, 2006, the undersigned filed a Report and Recommendations recommending that the First

Amended Petition be dismissed on the merits (Doc. No. 89). Petitioner has now objected (Doc. No.

95) and Respondent has replied to those Objections (Doc. No. 98). The General Order of

Assignment and Reference for the Dayton location of court permits the magistrate judges to

reconsider decisions or reports and recommendations when objections are filed.

        As a general matter, the Objections were untimely filed. The Report and Recommendations

were filed February 2, 2006. The Court granted Petitioner's Motion for Extension of Time to April

10, 2006 (Doc. No. 90), his Second Motion for Extension of Time to April 24, 2006 (Doc. No. 91),

an oral motion to extend to May 8, 2006 (See notation order for April 24, 2006), and his Third

Motion for Extension of Time to May 24, 2006 (Doc. No. 94) after having first denied it for failure

to comply with S. D. Ohio Civ. R. 7.3. Although the Court ordered that no more extensions would

-1-

be granted, Petitioner did not file the Objections until May 30, 2006, nearly a week after the time

for objecting expired.  Petitioner also failed to attempt to show excusable neglect for filing late, as

is required by Fed. R. Civ. P. 6.  While the late filing would constitute grounds for striking the

Objections, because this is a capital case, the Objections are considered below on their merits.

**Ground One: Ineffective Assistance of Trial Counsel**

Many subportions of the first Ground for Relief were abandoned when the First

Amended Petition was filed.  As finally briefed:

> In his First Ground for Relief as amended, Petitioner asserts he was
> denied effective assistance of counsel in that counsel failed to
> adequately voir dire and remove Juror Tara Veesart (Claim B.4),
> conceded Petitioner's guilt and then made conflicting arguments to
> the jury (Claim C), failed to put on evidence which would have
> justified a jury instruction on manslaughter (Claim D.1), failed to
> procure the assistance of a firearms expert (Claim D.2.a), and failed
> to object to prosecutorial misconduct (Claim D.3).

(Report and Recommendations, Doc. No. 89, at 15.)

These claims were not raised in the state courts until Petitioner filed for post-conviction

relief, whereupon the state courts enforced the *res judicata* rule of *State v. Perry*, 10 Ohio St. 2d

175, 226 N.E. 2d 104 (1967), against Petitioner.  The undersigned concluded that was an adequate

and independent state ground and that Ground One was therefore procedurally defaulted. (Report

and Recommendations, Doc. No. 89, at 17.)

Petitioner asserts this analysis is wrong for three reasons.

First, he asserts, the Ohio courts misapplied the Ohio criminal *res judicata* doctrine in this case. He argues that Ohio courts allow ineffective assistance of trial counsel claims to be brought initially on petitions for post-conviction relief if those petitions are supported by substantial evidence *dehors* the record which was not available to support the claim on direct appeal and asserts he did precisely that (Objections, Doc. No. 95, at 3-5).

The First District Court of Appeals began its discussion of the ineffective assistance of counsel claims raised on post-conviction as follows:

> A postconviction petition may also be dismissed without a hearing where the claims raised are barred by res judicata. *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104. The doctrine of res judicata precludes a hearing where the claims raised in the petition were raised or could have been raised at trial or on direct appeal. *Id.* at paragraph nine of the syllabus. Res judicata bars a hearing on the petition even where a claim relies on evidence dehors the record, unless that evidence shows that the petitioner could not have appealed the constitutional claim based upon information in the original trial record. The evidence dehors the record must be more than that evidence which was in existence at the time of trial and which should and could have been submitted at trial if the defendant wished to make use of it. State v. Mills (Mar. 15, 1995), Hamilton App. No. C-930817, unreported; State v. Hill, supra.

* * *

> Generally, the introduction of evidence dehors the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata. *State v. Cole* (1982), 2 Ohio St.3d 112, 443 N.E.2d 169. An ineffective-assistance-of-counsel claim, however, may be dismissed as res judicata where the petitioner was represented by new counsel on direct appeal, that counsel failed to raise the issue of trial counsel's incompetence, and the issue could fairly have been determined without evidence dehors the record. State v. Sowell (1991), 73 Ohio App.3d 672, 598 N.E.2d 136.

*State v. Raglin*, 1999 WL 420063 at *2-3 (Ohio App. 1 Dist. 1999).

It then proceeded to discuss in meticulous detail why each of these claims of ineffective assistance of trial counsel could have been raised on direct appeal by the new attorneys who represented Petitioner on direct appeal and why the additional evidence submitted with the post-conviction petition did not materially change the case which could have been presented on appeal. *Id*. at 3-6.

Petitioner asserts that this Court can review the correctness of the Ohio courts' application of Ohio *res judicata* doctrine, relying on *Greer v. Mitchell,* 264 F.3d 663, 675 (6th Cir. 2001). Judge Norris found the Ohio Court of Appeals *res judicata* analysis unpersuasive because "[t]he petition for post-conviction relief includes forty-six exhibits, the majority of which were affidavits from individuals who allegedly had information favorable to petitioner but who were not contacted by trial counsel." *Id*. at 675. He concluded "it seems that the Ohio Court of Appeals may have mistakenly relied upon procedural default in denying petitioner's ineffective assistance of trial counsel claim." *Id*. Nevertheless, the Sixth Circuit did not actually reverse on this basis. Judge Norris went on to write:

> Despite these reservations, the procedural default rule delineated by Perry and Cole is a matter of state law. Generally, a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision concerning matters of state law. Gall v. Parker, 231 F.3d 265, 303 (6th Cir. 2000) ("Principles of comity and finality equally command that a habeas court can not revisit a state court's interpretation of state law, and in particular, instruct that a habeas court accept the interpretation of state law by the highest state court on a petitioner's direct appeal."). Nevertheless, when the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded. As explained below, however, we need not decide the extent to which, if any, federal courts may reach the merits of constitutional claims that a state court improperly found to be procedurally defaulted because petitioner's ineffective assistance of

> appellate counsel claim necessarily forces us to review the
> performance of trial counsel.

*Id*. Thus, although it does so in dictum, *Greer* leaves open the possibility that a federal court could

find a state court's reliance on that State's procedural default is misplaced.

*Greer* is not finally helpful to Petitioner, however, because he has not demonstrated that the

Hamilton County Court of Appeals' reliance on *res judicata* was misplaced. Indeed, he does not

even make an attempt at such a demonstration. In contrast to *Greer*, where there were forty-six

exhibits to the post-conviction petition and the Court of Appeals' analysis was a one-paragraph

conclusion, here the Court of Appeals considered each ineffective assistance of counsel claim

against the evidence for it on direct appeal and the asserted additional evidence. This is a more

appropriate case for following *Gall v. Parker, supra,* and allowing the state court's application of

its own law to stand.

Petitioner's second argument against procedural default on the First Ground for Relief is that

he did in fact present those claims on direct appeal by including them in his application to re-open

the direct appeal (Objections, Doc. No. 95, at 4-5.) Petitioner makes no response to the analysis in

the Report and Recommendations that an application to reopen is not part of direct appeal. *See*

*Morgan v. Eads,* 104 Ohio St. 3d 142, 818 N.E. 2d 1157 (2004), and *Lopez v. Wilson*, 426 F.3d 339

(6th Cir. 2005)(*en banc*)(overruled *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000), cited in Report

(Doc. 89, at 16-17.)

Lastly, Petitioner argues he can excuse his procedural default in presenting these claims on

direct appeal by showing of cause and prejudice and that the ineffectiveness of his appellate counsel

can constitute such cause (Objections, Doc. 95, at 6-7). He fails to mention that he had asserted he

would need an evidentiary hearing to show such cause and prejudice (Traverse, Doc. No. 16, at 51), but then never moved for a hearing.  It was for this reason that the Report treated the cause and prejudice claim as abandoned (Report, Doc. No. 89, at 17).

It is therefore again respectfully recommended that Petitioner's Ground One for Relief be dismissed with prejudice as procedurally defaulted.

**Ground Two: Ineffective Assistance of Counsel During Mitigation**

Petitioner pled three sub-claims under this Ground for Relief in the original Petition.  When he filed the First Amended Petition, he abandoned those three sub-claims and added a new sub-claim.  On July 12, 2005, the undersigned recommended that the new sub-claim be dismissed as barred by the statute of limitations as recently interpreted by the Supreme Court in *Mayle v. Felix*, ___ U.S. ___, 125 S. Ct. 2562; 162 L. Ed. 2d 582 (2005)(Report and Recommendations, Doc. No. 86).  Petitioner never objected to that Report and it was adopted by the Court on August 5, 2005 (Doc. No. 87).[1]  Petitioner now argues at some length (Objections, Doc. No. 95, at 7-11) that the claim should not be barred under *Mayle*.  However, he forfeited the right to raise that argument when he failed to object to the prior Report and Recommendations.  *United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Moreover, the argument that this newly-pled claim relates back under *Mayle* is not well taken on the merits.  As pled in the First Amended Petition, the second ground for relief reads:

---

[1] In fact, Petitioner never responded either to Respondent's Motion to Dismiss on statute of limitations grounds or to the Magistrate Judge's Order that he show cause why the Motion to Dismiss should not be granted.  (See Doc. No. 85).

> Ground Two: "Walter Raglin was denied his right to
> the effective assistance of counsel at the mitigation
> phase of his capital trial in violation of the Fifth,
> Sixth, Eighth, Ninth and Fourteenth Amendments [in
> that] Trial Counsel failed to adequately investigate
> and present significant evidence of remorse."

(Amended Petition, Doc. No. 76, at 30). Petitioner claims (for the first time in the Objections) that

this relates back to (1) his Third Ground for Relief which alleged ineffective assistance of counsel

in failing to object to alleged prosecutorial misconduct in closing argument when the prosecutor

referred to evidence that Petitioner was laughing and bragging about the shooting shortly afterward

and (2) his Twenty-Third Ground for Relief which alleged ineffective assistance of counsel in

failing to object to alleged prosecutorial misconduct in asking the jury in closing argument to

imagine that Petitioner was laughing and bragging about the shooting shortly afterward. (Objections,

Doc. No. 95, at 9.)

Prior to the Supreme Court's decision in *Mayle*, the undersigned believed the amendments

made by the First Amended Petition did relate back because they referred to the same trial and

conviction (See Report and Recommendations, Doc. No. 77, recommending denial of motion to

dismiss). In other words, the undersigned was reading Fed. R. Civ. P. 15(c)(2) broadly as it applied

to habeas cases. This was the same reading the Ninth Circuit had given to 15(c)(2) in *Mayle*, but

the Supreme Court reversed and required a narrow reading. The Court held that the relation back

doctrine will only apply to newly-added claims which share a "common core of operative facts"

with claims which have been timely made. It interpreted the "conduct, occurrence, or transaction"

language of Rule 15(c)(2) to refer to the facts giving rise to a particular habeas corpus claim, rather

than to the trial and eventual conviction which are being attacked in the habeas proceeding. It

expressly held that "[a]n amended habeas petition . . . does not relate back (and thereby escape

-7-

AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Here, the facts relied upon in the Third and Twenty-Third Grounds were trial counsel's failure to object at two points in the closing argument which argued lack of remorse. The new second ground alleges failure to investigate and present other evidence which would have shown remorse. While all three claims are ineffective assistance of trial counsel claims and relate to the issue of remorse or lack of it, they rely on different trial facts – what the trial attorneys did not do at different stages of the case – and different evidentiary facts – purported evidence from some witnesses of remorse versus purported evidence from other witnesses of lack of remorse.

Petitioner's amended second Ground for Relief has already been dismissed. The Objections do not provide a sufficient basis to reconsider that decision.

### Ground Three: Ineffective Assistance of Trial Counsel for Failure to Object and Preserve Errors

In the Report and Recommendations, the undersigned recommended this Ground for Relief be dismissed with prejudice on the same basis as the First Ground for Relief, to wit, that the state court of appeals had concluded it was barred by *res judicata* because it was not raised on direct appeal (Report and Recommendations, Doc. No. 89, at 18).

Petitioner asserts this is error for two reasons.

First of all, he claims he did present these claims on direct appeal by presenting them in an application to reopen the direct appeal in the Ohio Supreme Court. This argument complete ignores the holdings in *Morgan v. Eads,* 104 Ohio St. 3d 142, 818 N.E. 2d 1157 (2004), and *Lopez v.*

-8-

*Wilson*, 426 F.3d 339 (6th Cir. 2005)(*en banc*)(overruled *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000), cited in Report (Doc. 89, at 16-17.)  Presentation of claims on a motion to reopen does not constitute raising them on direct appeal because the motions to reopen are collateral proceedings for the purpose of raising ineffective assistance of appellate counsel, not for presenting in the first instance claims omitted on direct appeal.  *Morgan, supra.*  As to Petitioner's assertion that this Ohio procedural sanction has not been applied to him, *see State v. Raglin*, 1999 WL 420063 at *2-3 (Ohio App. 1 Dist. 1999).

Secondly, Petitioner claims he can show excusing cause and prejudice to his procedural default, to wit, ineffective assistance of appellate counsel (Objections, Doc. No. 95, at 16-17.)  As with the First Ground for Relief, this cause and prejudice assertion was deemed abandoned because Petitioner had said he needed an evidentiary hearing to establish it, but he never sought an evidentiary hearing.

Petitioner's objections to the Report and Recommendations as to the Third Ground for Relief should be overruled.

## Ground Four: Ineffective Assistance of Appellate Counsel

In Ground Four of his First Amended Petition, Petitioner asserted he received ineffective assistance of appellate counsel when that counsel failed to raise eight particular assignments of error.  In the Report and Recommendations, the undersigned recommended the claim should be dismissed as to the sixth omitted assignment of error because it had been added by the First Amended Petition after the statute of limitations had expired and did not relate back under *Mayle*

*v. Felix, supra.* Petitioner concedes this ruling was corrected (Objections, Doc. No. 95, at 19.)

As to the remaining seven assignments of error, the undersigned recommended the Fourth Ground for Relief be dismissed with prejudice because

> Petitioner makes no argument as to why these omitted assignments of error are meritorious or how they are more meritorious than the assignments of error which actually were presented on direct appeal. In other words, Petitioner's Traverse merely asserts these were meritorious without making any argument (See Traverse, Doc. No. 16 at 106-109).

(Report and Recommendations, Doc. No. 89, at 22.)

In his Objections, Petitioner claims that these assignments of error are supported by affidavits of attorneys Laney Hawkins and Joseph E. Wilhelm[2] and asserts "[t]his evidence was never challenged by the Respondent either in state court or in this Federal Habeas Proceeding." (Objections, Doc. No. 95, at 20.) Even though the Ohio Supreme Court did not discuss the affidavits, it presumably found them unpersuasive since it denied reopening. *State v. Raglin*, 85 Ohio St. 3d 1407, 706 N.E. 2d 789 (1999).

Prior to these Objections, Petitioner never called this Court's attention to these affidavits. In particular, in the 317-page Traverse, the sole pertinent reference is as follows: "In his Application for Reopening and supporting Exhibits, Mr. Raglin painstakingly explains how appellate counsel was ineffective and how he was prejudiced by appellate counsels' ineffectiveness. Application for Reopening and Exhibits thereto. JA Vol. XI pp. 002799-003000." (Traverse, Doc. No. 16, at 108). Those page references encompass the entire Application for Reopening.

Mr. Haney, an Assistant Ohio Public Defender, was one of Petitioner's post-conviction

---

[2] In the Objections, these Affidavits are cited as appearing in Volume **IX** of the Joint Appendix; they are in fact in Volume **XI.**

counsel (Haney Affidavit, JA Vol. XI at 2809. ¶1.)  In the Affidavit he recites in completely conclusory fashion that direct appeal counsel failed to meet the standards of *Strickland v. Washington*, 466 U.S. 668(1984), and then proceeds to analyze the deficiencies in performance of **trial** counsel.  See *Id*. at 2814, ¶ 13.  The Affidavit goes on at great length essentially reciting "boilerplate" from various Supreme Court opinions in capital cases.  *Id*. at ¶¶14-76.  Even in conclusion Mr. Haney makes no comment about the standards for ineffective assistance of appellate counsel.  He writes "[i]n sum, the errors and omissions set forth above and outlined in the Application for Reopening reveal that Walter Raglin received the ineffective assistance of counsel in all phases of his capital **trial**." *Id*. at ¶76, emphasis added.

Mr. Willhelm was also an Assistant Ohio Public Defender, supervisor of the appellate section of that office, and therefore presumably of Mr. Haney.  Mr. Willhelm opines that direct appeal counsel rendered ineffective assistance in the following ways:

1.     Failure to claim error in the trial court's definition of reasonable doubt.  (JA Vol. XI at 2886, ¶14A-F.)

2.     Failure to claim error in the trial court's instructing the jury that it had to decide Petitioner's guilt or innocence.  *Id*. at ¶ 14G-K.

3.     Failure to claim error in the trial court's instruction on "purpose."  *Id*. at 14L-R.

Mr. Willhelm concluded that these issues were meritorious and should have been raised on direct appeal.  *Id*. at 15.

Although Mr. Willhelm's Affidavit is at least directed to the performance of appellate counsel rather than trial counsel, it makes no argument as to why these issues were stronger than the issues actually raised or why it would likely have changed the outcome.  Counsels' failure to

-11-

raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins,* 356 F.3d 688 (6th Cir. 2004) *citing Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) *cert. denied,* 535 U.S. 940 (2002). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented. *Smith v. Robbins*, 528 U.S. 259, 288 (2000), quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

Because the Ohio Supreme Court rejected this claim on the merits by refusing reopening, the question before this Court is whether that Ohio Supreme Court ruling was contrary to or an unreasonable application of the holding of an United States Supreme Court precedent. *Brown v. Payton*, ___ U.S. ___, 125 S. Ct. 1432 (2005); *Bell v. Cone*, 535 U.S. 685 (2002), *citing Williams v. Taylor,* 529 U.S. 362, 403-404 (2000). Petitioner has not even made an argument that attempts to satisfy that standard.

It is therefore again respectfully recommended that the Fourth Ground for Relief be denied.

**Sixth Ground for Relief: Failure to Suppress Confession.**

Petitioner has made no objection to the recommendation on this Ground for Relief.

**Eighth Ground for Relief: Failure to Instruct on Involuntary Manslaughter.**

In his Eighth Ground for Relief, Petitioner asserts he was denied due process when the trial court refused to instruct on the lesser included offense of involuntary manslaughter. Petitioner relies

on *Beck v. Alabama*, 447 U.S.625 (1980). The undersigned concluded the Ohio Supreme Court's decision on this point was not an unreasonable application of *Beck*. (Report and Recommendations, Doc. No. 89, at 29-30.) The relevant question under *Beck* and under *Hopper v. Evans*, 456 U.S. 605 (1982)(cited in the Objections), is whether the evidence would have supported conviction on the lesser included offense. The Ohio Supreme Court's opinion on this point is quoted at length in the Report and Recommendations. The undersigned continues to find that analysis persuasive.

**Ninth Ground for Relief: Erroneous Jury Instructions on Causation, Forseeability, Intent, and Purpose.**

The undersigned has no additional analysis to offer on this Ground for Relief beyond that in the original Report and Recommendations which concluded it was without merit.

**Twelfth, Thirteenth, Fourteenth, Fifteenth, and Sixteenth, Grounds for Relief: Mitigation Phase Jury Instructions.**

Petitioner makes no objection to the recommended disposition of these Grounds for Relief.

**Seventeenth Ground for Relief: Error in Instructing the Jury to Consider the Death Sentence First.**

In the Report and Recommendations, the undersigned concluded this claim should be dismissed with prejudice because it had not been fairly presented to the Ohio Supreme Court as a federal constitutional claim, but only as an Ohio state law claim (Report and Recommendations, Doc. No. 89, at 44.) Petitioner asserts that this conclusion is "simply wrong."

The entire argument on this claim, as quoted in the Report and Recommendations, is as

follows:

> The trial court in effect instructed the jury that it had to consider, and
> reject, the death sentence before considering either life option
> (R.1917). While not stating expressly that the jury was required to
> consider death before considering life, that is the clear import of the
> instruction. This is error sufficient to warrant reversal of the death
> sentence, *State v. Brooks* (1996), 75 Ohio St.3d 148, 159-160,
> 661N.E.2d 1030, 1042. Furthermore, the trial court failed to instruct
> that one juror could prevent the imposition of the death penalty, as
> required by *Brooks* henceforth from that decision (which preceded
> Appellant's trial by several months), although the trial court did
> instruct the jury that any verdict it returned had to be unanimous, and
> the jury verdict forms also reflected the requirement of unanimity
> (R.1917-1919).   (Appellant's Brief, Joint Appendix, Vol. VI at
> 865-66.)

(Quoted in Report and Recommendations, Doc. No. 89, at 44.)

The Report noted that this claim was argued purely in terms of the Ohio Supreme Court's

decision in *Brooks* and that no federal law was cited.  Petitioner objects that *Brooks* relied on *Mills*

*v. Maryland*, 486 U.S. 367 (1988) and *Kubat v. Thieret*, 867 F. 2d 351 (7th Cir. 1989).  He also notes

that he adverted to the Eighth and Fourteenth Amendments to the United States Constitution, as well

as to Article I, §§ 9 and 16 of the Ohio Constitution (Objections, Doc. No. 95, at 28-29).

The Supreme Court has held that a state prisoner ordinarily does not 'fairly present' a federal

claim to a state court if that court must read beyond a petition, a brief, or similar papers to find

material that will alert it to the presence of such a claim.  *Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct.

1347, 158 L. Ed. 2d 64 (2004).  Here, to have understood Petitioner's argument as going beyond

*Brooks*, the Ohio Supreme Court would have had to examine its prior decision in *Brooks* to find the

case law Petitioner now says it relied on in that earlier case. Thus the federal claim was not fairly

presented within the meaning of *Baldwin, supra*.

Furthermore, the Ohio Supreme Court's decision in Brooks, while it cites Mills and Kubat,

-14-

does not stand as a direct application of those cases. In other words, it does not reverse Brooks

death sentence because it finds such a result compelled by federal constitutional law. Instead, the

*Brooks* court held

> In regard to the present case, R.C. 2929.03(D)(2) facially seems to require the jury to recommend a life sentence even if only one juror finds the death penalty inappropriate. There is some dispute in the case law, however, as to how much power a solitary juror has to nullify a death sentence. In State v. Jenkins (1984), 15 Ohio St. 3d 164, 15 Ohio B. Rep. 311, 473 N.E.2d 264, paragraph ten of the syllabus, this court held that in returning a sentence of life imprisonment under R.C. 2929.03(D), the jury's verdict  must be unanimous. In State v. Springer (1992), 63 Ohio St. 3d 167, 586 N.E.2d 96, syllabus, this court held that HN17"when a jury becomes irreconcilably deadlocked during its sentencing deliberations in the penalty phase of a capital murder trial and is unable to reach a unanimous verdict to recommend any sentence authorized by R.C. 2929.03(C)(2), the trial court is required to sentence the offender to life imprisonment * * * ." Thus, practically speaking, a lone juror could prevent the imposition of the death penalty.

> Jenkins defines what the jury's job is -- to render a unanimous verdict. Springer simply explains what a trial court must do if a jury is deadlocked, that is, when the jury does not properly do its job. We believe that Jenkins and Stringer may be harmonized, and made consistent with the policy behind R.C. 2929.03(D), through a jury instruction which requires HN18the jury, when it cannot unanimously agree on a death sentence, to move on in their deliberations to a consideration of which life sentence is appropriate, with that determination to be unanimous. That instruction would reflect the policy behind the statute noted by this court in Springer:
>> "We believe that the requirement of Ohio's death penalty statute that a life sentence be recommended and imposed under circumstances where the death penalty cannot be recommended or imposed represents a clear statement of policy that an offender be sentenced to a term of life imprisonment where the trial jury is unable to unanimously agree that the penalty of death is appropriate."
> Springer, 63 Ohio St. 3d at 172, 586 N.E.2d at 100.

> In Ohio, a solitary juror may prevent a death penalty recommendation by finding that the aggravating circumstances in the case do not outweigh the mitigating factors. Jurors from this point forward should be so instructed.

75 Ohio St. 3d at 161-162. The analysis here does not employ the federal constitutional analysis relied upon by Petitioner; instead, it analyzes the proper interpretation of the Ohio death penalty statute. Thus when Petitioner cited Brooks in his own appeal, he did not fairly present his federal claim to the Ohio Supreme Court.

Petitioner notes that the Sixth Circuit has now held that an Ohio death penalty instruction must include the language from *Springer* and *Brooks*. *Davis v. Mitchell*, 318 F.3d 682, 689 (6th Cir. 2003)(Objections, Doc. No. 95, at 29). *Davis* was, however, decided five years after the Ohio Supreme Court decided this case.

**Eighteenth Ground for Relief: Error in the Penalty Phase Jury Instructions**

Petitioner makes no objection to the recommended disposition of this Ground for Relief.

**Nineteenth Ground for Relief: Failure to Instruct on Remorse, Residual Doubt, and Cooperation with Law Enforcement.**

Petitioner makes no objection to the recommended disposition of this Ground for Relief.

**Twenty-First Ground for Relief: Service of Juror Tara Veesart Deprive Petitioner of a Fair Trial.**

Petitioner makes no objection to the recommended disposition of this Ground for Relief.

**Twenty-Third Ground for Relief: Prosecutorial Misconduct.**

With respect to this claim for relief, the undersigned concluded that only claims of prosecutorial misconduct occurring in the penalty phase of the trial had been presented on direct appeal to the Ohio Supreme Court (Report and Recommendations, Doc. No. 89, at 48-49.)  In his Objections, Petitioner essentially admits that is correct, but says he preserved these claims by raising them in his Eighteenth Claim for Relief in post-conviction.  However, because the claims of prosecutorial misconduct all appear of record, they could have been raised on direct appeal and were dismissed for that reason, to wit, *res judicata*, in the post-conviction proceeding.  Based on the analysis set forth above as to the First Ground for Relief, that is an adequate and independent state ground for decision.

With respect to those claims preserved for review, the undersigned concluded the Ohio Supreme Court had applied the correct federal constitutional standard as announced in *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), and that its application was not unreasonable (Report and Recommendations, Doc. No. 89, at 51).  Petitioner faults both this Court and the Ohio Supreme Court for "fail[ing] to make a finding that misconduct actually occurred."  (Objections, Doc. No. 95, at 31).  Apparently Petitioner believes that he is entitled to have both the Ohio Supreme Court and this Court examine each alleged instance of prosecutorial misconduct individually, decide

-17-

whether it is misconduct, then consider them together. Petitioner cites no authority for this proposition. If the complained-of conduct must meet all the elements of the *DeChristoforo* test to warrant relief and a court – this Court or the Ohio Supreme Court – determines that even if each alleged act of misconduct happened and each constituted misconduct, taken together they did not make the trial unfair, it has performed the analysis required by *DeChristoforo*.

The Magistrate Judge again recommends that the Twenty-Third Ground for Relief be dismissed with prejudice, partially on procedural default grounds and partially on the merits.

**Twenty-Fifth Ground for Relief: Racial and Gender Bias in Selection of Jury Persons.**

Petitioner makes no objection to the recommended disposition of this Ground for Relief.

**Twenty-Seventh Ground for Relief: Improper Sentencing Opinion by the Trial Judge.**

Petitioner makes no objection to the recommended disposition of this Ground for Relief.

**Twenty-Ninth Ground for Relief: Consideration of Guilt Phase Evidence at the Penalty Phase.**

Petitioner makes no objection to the recommended disposition of this Ground for Relief.

**Thirtieth Ground for Relief: Improper Rebuttal Evidence.**

Petitioner makes no objection to the recommended disposition of this Ground for Relief.

**Thirty-Second Ground for Relief: Cumulative Trial Error.**

Petitioner makes no objection to the recommended disposition of this Ground for Relief.

**Thirty-Fourth Ground for Relief: General Objections to the Death Penalty in Ohio and as Administered in Hamilton County.**

Petitioner makes no objection to the recommended disposition of this Ground for Relief.

**Thirty-Sixth Ground for Relief: Cumulative Error.**

Petitioner makes no objection to the recommended disposition of this Ground for Relief.

**Thirty-Seventh Ground for Relief: *Brady* Claim.**

In his Thirty-Seventh Ground for Relief, Petitioner claims he is entitled to the writ because the prosecution withheld evidence that he clearly expressed remorse to the investigating officers.

As with the portion of Ground Two analyzed above, this claim was added to the case by the First Amended Petition. On Respondent's Motion, the undersigned recommended that the claim be dismissed as barred by the statute of limitations, relying on the analysis under *Mayle v. Felix, supra*, which is set out above (Report and Recommendations, Doc. No. 86). Petitioner made no objection

-19-

and the Court adopted that Report (Doc. No. 87).  By not timely objecting, Petitioner has waived

his right to object.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474

U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

Moreover, reconsidered on the merits, Petitioner's relation back argument is without merit.

He states his Thirty-Seventh Ground for Relief is related to the same core of operative facts relating

to evidence of remorse as his Third claim (ineffective assistance for failure to object to closing

arguments about lack of remorse) and Twenty-Third claim (prosecutorial misconduct for asking the

jury to imagine Petitioner laughing and bragging about the killing).  As noted above, the

undersigned was inclined to allow the amendment until *Mayle* was decided, but the Supreme Court

analyzes relation back in that case very narrowly.  The facts on which Petitioner relies for his Brady

claim must be about when the evidence he claims was withheld was known the prosecution, whether

in fact it was turned over, whether Petitioner knew the relevant facts without disclosure, whether

there is a reasonable probability the evidence would have affect the outcome, etc.  Those are

different litigative facts from the facts necessary to support the ineffective assistance and

prosecutorial misconduct claims.

**Thirty-Eighth Ground for Relief: *Giglio* Claim.**

The Thirty-Eighth Ground for Relief was also added to the case by the First Amended

Petition and has also previously been dismissed as barred by the statute of limitations on

Respondent's Motion.  (Report and Recommendations, Doc. No. 86; Order, Doc. No. 87.) Because

he did not timely object, Petitioner has waived his objections to this claim as well.  Petitioner's

relation back argument, made for the first time in his instant Objections, is no more persuasive here than on the Thirty-Seventh Ground.

### Conclusion

Having reconsidered the case in light of Petitioner's Objections, it is again respectfully recommended that the First Amended Petition be dismissed with prejudice.

June 13, 2006.

s/ Michael R. Merz
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).