**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Walter Raglin,

       Petitioner,                         Case No.  1:00cv767

       v.                                Judge Michael R. Barrett

Betty Mitchell,

       Respondent.

**ORDER & OPINION**

This matter is before the Court upon a number of Report and Recommendations ("R&Rs") and a Decision of the Magistrate Judge.  These documents can be grouped in three categories.

The first category contains those documents related to the Magistrate Judge's R&R regarding Petitioner's First Amended Petition.  (Doc. 89).  Petitioner filed objections to that R&R (Doc. 95), and Respondent filed a Response to the Objections (Doc. 98).  The Magistrate Judge then entered an Amended Supplemental R&R.  (Doc. 100).  Petitioner filed objections to the Amended Supplemental R&R, and Respondent filed a Response to the Objections (Doc. 102).  Later, Petitioner was permitted to file Supplemental Objections (Doc. 142), to which Respondent filed a Response (Doc. 145).

The second category contains documents related to the Magistrate Judge's R&R regarding Petitioner's Certificate of Appealability.  (Doc. 169).  Petitioner filed Objections.  (Doc. 170).  The Magistrate Judge then filed a Supplemental R&R.  (Doc. 176).  Petitioner filed Objections to the Supplemental R&R (Doc. 182), to which the

Respondent filed a Response (Doc. 186).

The third category contains documents related to the Magistrate Judge's Decision and Order granting Petitioner's Motion for Leave to File a Second Amended Petition.  (Doc. 177).  This Order allows Petitioner to add new claims to his Petition in which Petitioner argues that his execution under Ohio's lethal injection protocol will violate the Eighth and Fourteenth Amendment.  Respondent filed Corrected Objections. (Doc. 180).  Petitioner filed a Response.  (Doc. 185).  The Warden then filed a Notice of Supplemental Authority.  (Doc. 195).  This Court recommitted the matter to the Magistrate Judge (Doc. 187), who then issued a Supplemental Opinion and Recommendations (Doc. 188).  The Warden filed Objections to the Supplemental Opinion and Recommendations (Doc. 191), to which Petitioner filed a Response (Doc. 192).

## I.    BACKGROUND

Petitioner Walter Raglin was convicted in Hamilton County, Ohio, and sentenced to death for the murder and robbery of Michael Bany.  A more detailed description of the factual background of this case has been covered elsewhere and for the sake of brevity will not be repeated here.

Following the conclusion of his direct appeals and exhaustion of his state avenues for post-conviction relief, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## II.    ANALYSIS

### A.    Standard of Review

If a party files timely objections to a magistrate judge's report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). With regard to orders on non-dispositive matters, Federal Rule of Civil Procedure 72(a) provides that a district judge shall consider a party's objections to a magistrate's order and "shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." The "clearly erroneous" standard applies to the magistrate judge's factual findings and the "contrary to law" standard applies to the legal conclusions. *Sheppard v. Warden, Chillicothe Corr., Inst.*, 1:12-CV-198, 2013 WL 146364, *5 (S.D. Ohio Jan. 14, 2013). Legal conclusions should be modified or set aside if they "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D. Ohio 1992).

The Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA") governs the standards or review for state court decisions. Petitioner filed his Petition for Habeas Corpus (Doc. 14) on September 13, 2000, and therefore it is subject to the Act's provisions. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon

an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d); *see also Miller v. Francis,* 269 F.3d 609, 614 (6th Cir. 2001).

## B. First Amended Petition

In his First Amended Petition, Petitioner raises thirty-eight grounds for relief. In his R&R (Doc. 89) and Amended Supplemental R&R (Doc. 100), the Magistrate Judge recommends dismissing all grounds for relief in Petitioner's First Amended Petition.[1]

Petitioner does not object to the Magistrate Judge's R&R as to Grounds Three, Five, Seven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Eighteen, Nineteen, Twenty, Twenty-One, Twenty-Two, Twenty-Five, Twenty-Seven, Twenty-Nine, and Thirty-Four. Therefore, the Court will not discuss those grounds in detail here. The Grounds which are at issue are as follows:

**First Ground for Relief:**

Walter Raglin was denied his right to the effective assistance of counsel at the pretrial and trial phases of his capital trial in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments.

. . .

B. Trial counsel was ineffective for failing to conduct voir dire in a manner sufficient to choose a fair and impartial jury

. . .

4. Failure to adequately voir dire and remove Juror Veesart

---

[1] The Magistrate Judge explained that in his First Amended Petition Petitioner abandoned Claims A.1, A.2, A.3, A.4, B.1, B.2, B.3, and D.2.b from the First Ground for Relief, Claims A, B, and C from the Second Ground for Relief and the Fifth, Seventh, Tenth, Eleventh, Twentieth, Twenty-Second, Twenty-Fourth, Twenty-Sixth, Twenty-Eighth, Thirty-First, Thirty-Third, and Thirty-Fifth Grounds for Relief in their entirety. (Doc. 89, at 12-13). The Magistrate Judge also explained that Petitioner added subpart D of the Second Ground for Relief and Grounds for Relief Thirty-Seven and Thirty-Eight, but those newly-added claims were dismissed as barred by the statute of limitations. (Id. at 13).

C. Trial counsel was ineffective for repeatedly conceding Mr. Raglin's guilt and then after such concession presenting conflicting arguments to the jury

    1. Trial counsel's concession of Mr. Raglin's guilt

    2. Conflicting arguments presented to the jury

D. Trial counsel was ineffective for failing to adequately present a defense, including failing to support counsel's request for a manslaughter instruction with evidence sufficient to warrant the instruction, failing to secure the assistance of experts, and failing to object to prosecutorial misconduct.

    1. Failure to put on evidence in support of manslaughter instruction

    2. Failure to secure the assistance of experts

        a. Firearms expert
        . . .

    3. Failure to object to prosecutorial misconduct

**Second Ground for Relief:**

Walter Raglin was denied his right to the effective assistance of counsel at the mitigation phase of his capital trial in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments.

. . .

D. Trial counsel failed to adequately investigate and present significant evidence of remorse.

**Third Ground for Relief:**

Walter Raglin was denied his right to the effective assistance of counsel under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

**Fourth Ground for Relief:**

Walter Raglin was denied his right to the effective assistance of counsel on his direct appeals in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

**Sixth Ground for Relief:**

Walter Raglin's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated when the trial court failed to suppress his statement made to members of the Cincinnati Police Department on January 3, 1996, because his statement was made during a custodial interrogation following an unfulfilled request for counsel. *Miranda v. Arizona*, 384 U.S. 436 (1966); *Edwards v. Arizona*, 451 U.S. 477 (1981); *Minnick v. Mississippi*, 489 U.S. 146 (1990).

**Eighth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment Rights were violated when the judge refused to instruct the jury at the end of the trial phase that it could find Mr. Raglin guilty of involuntary manslaughter, a lesser included offense of aggravated murder.

**Ninth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights were violated when the judge erroneously instructed the jury at the end of the trial phase on the issues of causation, forseeability [sic], intent, and purpose.

**Seventeenth Ground for Relief:**

Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase in such a manner that the jury could conclude that it had to consider and reject a recommendation as to the imposition of death before it could consider either life sentence option.

**Twenty-Third Ground for Relief:**

Walter Raglin was denied his constitutional rights to a fair and impartial trial under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments as a result of prosecutorial misconduct during both phases of his capital proceedings.

**Thirtieth Ground for Relief:**

Walter Raglin was denied his constitutional rights under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments during the mitigation phase because the trial court permitted the prosecutor to introduce

inadmissable rebuttal evidence that was unfairly prejudicial to Mr. Raglin's rights to a fair trial and impartial jury.

**Thirty-Second Ground for Relief:**

Walter Raglin's rights as guaranteed by the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments were violated when the trial court committed multiple errors during the pretrial, trial and mitigation phases of his capital case.

**Thirty-Sixth Ground for Relief:**

Walter Raglin's conviction and death sentence are invalid under the federal constitutional guarantees of due process, equal protection, the effective assistance of counsel, and a reliable sentence due to the cumulative errors in the admission of evidence and instructions, and gross misconduct of state officials in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

**Thirty-Seventh Ground for Relief:**

*Brady* Claim

**Thirty-Eighth Ground for Relief:**

*Giglio* Claim

For the reasons that follow, the Court finds that Petitioner's Objections to the Magistrate Judge's R&Rs regarding Petitioner's First Amended Petition are not well taken and are overruled.

### 1. <u>First Ground for Relief</u>

Petitioner argues that the Magistrate Judge erred in concluding that his claims of ineffective assistance of counsel were procedurally defaulted.

In the Sixth Circuit, a four-part analysis is used to determine whether a claim has been procedurally defaulted: (1) whether there is a state procedural rule that is applicable to the petitioner's claim; (2) whether the petitioner failed to comply with that rule; (3) whether the rule was actually enforced in the petitioner's case; and (4) whether

the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

In applying this analysis, the Magistrate Judge explained that Petitioner's claims of ineffective assistance of counsel were not raised in the state courts until Petitioner filed for post-conviction relief. The Magistrate Judge explained that the state courts applied Ohio's doctrine of *res judicata*, which barred consideration of the ineffective assistance of counsel claims by the state courts because the claims could have been raised on direct appeal. *See State v. Cole*, 443 N.E.2d 169 (1982) (syllabus) ("Where a defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief.").[2] The Magistrate Judge concluded that Ohio's doctrine of *res judicata* is an adequate and independent state ground, and therefore the ineffective assistance of counsel claims were procedurally defaulted.

In his Objections, Petitioner cites *Greer v. Mitchell*, 264 F.3d 663, 674-75 (6th Cir. 2001), *cert. denied*, 535 U.S. 940 (2002), which states that "when the record reveals that the state court's reliance on its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded." Petitioner argues that the Ohio courts misapplied the *res judicata* doctrine because when he presented his ineffective assistance of counsel

---

[2]Petitioner had new counsel appointed on appeal. (Doc. 15, Vol. VI, Tr. 768).

claims in the post-conviction proceedings, his claims were supported with evidence *dehors* the record which was not available to support the claims on direct appeal.

The Magistrate Judge addressed this same argument, and began by explaining that when the Ohio First District Court of Appeals addressed Petitioner's ineffective assistance of counsel claims during the post-conviction proceedings, the court explained in "meticulous detail" why the ineffective assistance of counsel claims could have been raised on direct appeal by Petitioner's new attorneys and why the additional evidence submitted with the post-conviction petition did not materially change the case which could have been presented on appeal. *See State v. Raglin*, 1999 WL 420063 at *3-6 (Ohio Ct. App. June 25, 1999). The Magistrate Judge then explained that Petitioner has not demonstrated that the court's reliance on *res judicata* was misplaced, and therefore distinguished this case from the situation described by the Sixth Circuit in *Greer*. The Court finds no error in this conclusion.

Under Ohio law, "[t]he presentation of competent, relevant, and material evidence *dehors* the record may defeat the application of *res judicata*." *State v. Lawson*, 659 N.E.2d 362, 367 (Ohio 1995). However, in this case, as the Magistrate Judge explained, the Ohio Court of Appeals found that the issue of trial counsel's incompetence could have been fairly determined without evidence *dehors* the record because the claimed errors were evident from the record, and therefore Petitioner's proffered evidence *dehors* the record was of no consequence. *See*, *e.g.*, *State v. Raglin*, 1999 WL 420063 at *5 ("Because this claim challenged conduct that was evident in the record, it should have been brought on direct appeal. Raglin's attempt to support the claim with evidence *dehors* the record, such as Porter's affidavit and

newspaper articles, did not change this fact.").  Accordingly, the Court finds the state court's reliance on Ohio's *res judicata* rule was not misplaced.

Next, Petitioner asserts that Ohio's *res judicata* rule is not applicable because his ineffective assistance of counsel claims were raised on direct appeal by filing an application to re-open his direct appeal in the Ohio Supreme Court.  However, as the Magistrate Judge pointed out, under Ohio law an application to reopen is not part of a direct appeal.  *See Morgan v. Eads*, 818 N.E. 2d 1157, 1162 (2004) (holding that the parallel rule found in Ohio R. App. P. 26(B) "represents a collateral postconviction remedy and is not part of the original appeal."); *see also Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005) (application to reopen under Rule 26(B) is a collateral matter rather than part of direct review).  Because an application to reopen is a collateral matter rather than part of direct review, there is no federal constitutional right to assistance of counsel at that stage.  *Lopez*, 426 F.3d at 352.  Absent a constitutional right, dismissal of the federal habeas claim is proper.  *Id*. at 353.

Finally, Petitioner argues that even if he did violate a state procedural rule, there was cause and prejudice sufficient to excuse the alleged procedural defect.  However, as the Magistrate Judge pointed out in his Amended Supplemental R&R, Petitioner only raised this argument in his Objections to the initial R&R:

> Petitioner argues he can excuse his procedural default in presenting these claims on direct appeal by showing of cause and prejudice and that the ineffectiveness of his appellate counsel can constitute such cause (Objections, Doc. 95, at 6-7).  He fails to mention that he had asserted he would need an evidentiary hearing to show such cause and prejudice (Traverse, Doc. No. 16, at 51), but then never moved for a hearing.  It was for this reason that the Report treated the cause and prejudice claim as abandoned (Report, Doc. No. 89, at 17).

(Doc. 100, at 5). Petitioner did not address this point in his Objections to the Amended Supplemental R&R,[3] and the Court finds no error in the Magistrate Judge's recommended disposition.

However, even if the Court were to address Petitioner's argument, the Court would find that Petitioner has not established cause for the procedural default. The ineffective assistance of appellate counsel may constitute cause for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish ineffective assistance of counsel, the petitioner must show both that his counsel made errors that were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). However, as explained below under the Fourth Ground, Petitioner has failed to establish that he was denied the right to effective assistance of appellate counsel based on appellate counsel's failure to raise trial counsel's errors.

In a Supplemental R&R on Petitioner's Motion for Certificate of Appealability, the Magistrate Judge concluded that the Supreme Court's recent decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) did not permit Petitioner to rely on ineffective assistance of post-conviction counsel as cause for procedural default. (Doc. 176). The Magistrate Judge noted that the only claim of ineffective assistance of trial counsel which was not

---

[3]However, Petitioner does raise an objection on the issue of cause and prejudice under Ground Three, which the Court will discuss below.

raised in the post-conviction proceedings was the claim in Ground One, subpart D.3 (the failure to object to prosecutorial misconduct).[4]

In *Martinez*, the Supreme Court analyzed Arizona law, which expressly required a defendant to raise a claim of ineffective assistance of counsel in an initial collateral review proceeding. The Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S.Ct. at 1315. The Court explained that this holding is a "limited qualification" to its prior decision, *Coleman v. Thompson*, 501 U.S. 722 (1991), in which the Court held that an attorney's negligence in a post-conviction proceeding does not establish cause to excuse procedural default. The Court explained the exception to *Coleman* was narrow:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id.* at 1320 (citations omitted).

---

[4]There is no dispute that Petitioner's failure to present his ineffective assistance of counsel claim in Ground One, subpart D.3 to the Ohio courts in a timely fashion has resulted in a procedural default of this claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991). However, Petitioner's ineffective assistance of post-conviction counsel was never presented to the Ohio courts. As the Ninth Circuit has observed in applying *Martinez*, "the Supreme Court did not find the claim barred for not being presented to the state courts. Therefore, there seems to be no requirement that the claim of ineffective assistance of P[ost-]C[onviction]R[elief] counsel as cause for a ineffective-assistance-of-sentencing-counsel claim be presented to the state courts." *Dickens v. Ryan*, 688 F.3d 1054, 1072 (9th Cir. 2012); *but see Martinez v. Schriro*, CV 08-785-PHX-JAT, 2012 WL 5936566, *4, n.5 (D. Ariz. Nov. 27, 2012) (recognizing in dicta the argument that "*Dickens* is mistaken on the facts of *Martinez* because in *Martinez* Petitioner did present his ineffective-assistance-of-first-PCR-counsel claim to the state court arguing it was cause to overcome the untimeliness of his second PCR petition (which argued that trial counsel was ineffective).").

After the Magistrate Judge issued the Supplemental R&R, the Sixth Circuit addressed the applicability of *Martinez* to a federal habeas case arising out of Ohio. *Moore v. Mitchell*, 708 F.3d 760 (6th Cir. 2013).  The Sixth Circuit declined to expand *Martinez,* noting that the Supreme Court "repeatedly emphasized the 'limited nature' of its holding, which 'addresse[d] only the constitutional claims' present where the state has banned a defendant from raising his ineffective assistance of trial counsel claim on direct appeal."  *Id.* at 784-85 (quoting *Martinez*, 132 S.Ct. at 1320).  The Sixth Circuit found that *Martinez* did not apply under the circumstances of the case: "Not only does Ohio permit ineffective assistance of trial counsel claims to be made on direct appeal, [the petitioner] raised this claim on direct appeal and the Ohio Supreme Court rejected it on the merits."  *Id.*

However, the Supreme Court recently clarified that the exception to *Coleman* allows a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where:

> (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial counsel claim'; and (4) state law requires that an 'ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding.'

*Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S.Ct. at 1318).

In *Trevino*, the Court analyzed Texas law, which on its face appeared to permit—but not require—the defendant to raise a claim of ineffective assistance of trial counsel on direct appeal.  After analyzing the Texas procedural system, the Court concluded that Texas procedure does not offer most defendants a meaningful opportunity to

present an ineffective assistance of counsel claim on direct review. *Id*. at 1921. The Court held that in such an instance, *Martinez* applies and "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id*. (quoting *Martinez*, 132 S. Ct. at 1320).[5]

This Court has found that the *Martinez* exception applies to "a case where, because of the way Ohio post-conviction review law is structured, the ineffective assistance of trial counsel claim had to be brought in post-conviction." *Henness v. Bagley*, 2:01-CV-043, 2013 WL 4017643 * 3 (S.D. Ohio Aug. 6, 2013). This Court has explained that under Ohio law, there are two categories of ineffectiveness claims which must be raised in post-conviction proceedings: (1) ineffective assistance claims that rely on evidence outside the trial record or (2) ineffective assistance claims where trial counsel also served as appellate counsel, as counsel is not expected to assert his or her own ineffectiveness. *Sheppard v. Robinson*, 1:00-CV-493, 2013 WL 146342 *12 (S.D. Ohio Jan. 14, 2013). Here, Petitioner's trial counsel did not serve as appellate counsel.[6] Therefore, Petitioner can only make an ineffective assistance claim within the first category.[7]

---

[5]Petitioner was represented by counsel in his post-conviction proceedings. (Doc. 15, Vol. VII, Tr. 1080). Therefore, this is not a situation described in *Martinez* and *Trevino* where there was "no counsel."

[6]At trial, Petitioner was represented by attorneys John Keller and Robert Ranz. (See Doc. 15, Vol. I). On appeal, Petitioner was represented by attorney Fred Hoefle. (See Doc. 15, Vol.VI, at 774).

[7]As to the first category, Magistrate Judge Merz has explained:

Ohio requires—mandates—that ineffective assistance of trial counsel claims dependent on evidence *dehors* the appellate record be brought in post-

In this case, the only possible application of the *Martinez* exception would be to Petitioner's claim in Ground One, subpart D.3, which is based on trial counsel's failure to object during the prosecutor's closing argument in which the prosecutor re-enacted the shooting using the alleged murder weapon. All of Petitioner's other claims were presented in his initial collateral review proceedings. However, as this Court has explained elsewhere, under Ohio law Petitioner was barred from litigating his claim of ineffective assistance of trial counsel in post-conviction if he could have litigated it on direct appeal. *Sheppard v. Robinson*, 1:00-CV-493, 2012 WL 3583128, *6 (S.D. Ohio Aug. 20, 2012) report and recommendation adopted, 1:00-CV-493, 2013 WL 146342 (S.D. Ohio Jan. 14, 2013) (citing *State v. Perry*, 226 N.E.2d 104, 105 (Ohio 1967)). As the Magistrate Judge pointed out, Petitioner has not made any actual argument as to how this claim falls within the *Martinez* exception.[8] Without more, this Court must conclude that direct appeal counsel could have argued ineffective assistance of trial counsel based on the record. Therefore, Ohio's doctrine of *res judicata* would have barred Petitioner from raising it in his initial-review collateral proceeding. "Because it would have been barred from consideration, it cannot have been ineffective assistance

---

> conviction. For a petitioner who can only establish his ineffective assistance of trial counsel claims with evidence *dehors* the record, the constitutional guarantee of effective assistance of counsel on direct appeal is of no assistance. It was avowedly to close this gap between guaranteed effective assistance on direct appeal and possible complete default of a substantial ineffective assistance of trial counsel claim in post-conviction by incompetent counsel that the Court decided in *Martinez* to create the exception to *Coleman*.

*Turner v. Hudson*, 2:07-CV-595, 2013 WL 55660, *4 (S.D. Ohio Jan. 3, 2013).

[8]Instead, Petitioner argues that *Martinez* supports his argument that Ohio's *res judicata* rule is not an adequate and independent state ground as applied to claims of ineffective assistance of counsel. This argument is rejected, but will be addressed within the context of Petitioner's Certificate of Appealability.

in the *Martinez*-incorporating-*Strickland* sense for initial post-conviction counsel to have failed to raise it." *Sheppard*, 2012 WL 3583128, at *6.

Therefore, the Court concludes that Petitioner has procedurally defaulted these ineffective assistance of counsel claims and federal habeas review is precluded.

### 2. **Second Ground for Relief**

In the First Amended Petition, Petitioner added subpart D of the Second Ground for Relief. Petitioner argues that the Magistrate Judge erred in determining that this claim is barred by the statute of limitations. However, this Court has already adopted the Magistrate Judge's recommendation on this claim, without objection by Petitioner. (See Doc. 87). Nevertheless, because the Magistrate Judge has addressed Petitioner's argument that his claim is timely filed, the Court will also reconsider the issue.

In subpart D of the Second Ground for Relief, Petitioner claims ineffective assistance of counsel during the mitigation phase of his capital trial. Petitioner claims that trial counsel failed to adequate investigate and present significant evidence of his remorse in the hours immediately following the shooting. Petitioner argues that this claim relates back to the Third and Twenty-Third Grounds for Relief in his original Petition.

In *Mayle v. Felix*, the Supreme Court held that claims raised in an amendment to a habeas petition did not automatically relate back merely because they arose out of the same trial and conviction. 545 U.S. 644, 650 (2005). The Court explained that amendments do not relate back if they assert "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.*

16

In the original Petition, Petitioner set forth the following grounds for relief in the Third and Twenty-Third Grounds for Relief:

**Third Ground for Relief:**

Walter Raglin was denied his right to the effective assistance of counsel under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments when his attorneys failed to object and properly preserve numerous errors.

**Twenty-Third Ground for Relief:**

Walter Raglin was denied his constitutional rights to a fair and impartial trial under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments as a result of prosecutorial misconduct during both phases of his capital proceedings.

(Doc. 14).  The Magistrate Judge found that the original Petition does not include any facts relative to lack of investigation about remorse, failure to disclose evidence, or a claim of false argument by the prosecutors—facts which are used to support the subpart D claim in the Amended Petition.  (Doc. 86. at 4).  This Court finds no error in this conclusion.

In the original Petition, under the Third Ground for Relief, Petitioner argued that counsel was ineffective because counsel failed to object at several critical stages.  (Doc. 14, at 54).  As one example, Petitioner explained that counsel failed to object during the prosecutor's closing argument during the mitigation phase when the prosecutor invited the jury to look at Petitioner and see him bragging and laughing about Bany's murder in the hours after it occurred.  As another example, the prosecutor invited the jury to speculate where Petitioner would have gone or what he would have done if he had

successfully escaped from the Hamilton County Justice Center.[9]   The prosecutor told the jury:

> [I]s he going to the Baneys [sic] to apologize?  Is that why he jumped out that window?  He's back on the streets.  Back to hustling again.  He's going to get some more and he's going to do what he has to do to take it.

(Id. at 55).

In the Twenty-Third Ground for Relief in the original Petition, Petitioner argues that the same facts demonstrate prosecutorial misconduct which resulted in a violation of his constitutional rights.

The Court finds that while these facts address the issue of remorse, these facts are not the same type of facts used to support Petitioner's claim in subpart D.  The facts in subpart D were based on newly discovered testimony of two witnesses who were with Petitioner immediately after the shooting.  These witnesses described Petitioner as crying, vomiting and asking for God's forgiveness.  Petitioner argued that counsel was ineffective for failing to investigate because counsel failed to talk to these witnesses, who were listed in the State's discovery.

A claim based on the failure to investigate and discover evidence of remorse is different from a claim based on counsel's failure to object to statements the prosecutor made about Petitioner's remorse, or prosecutorial misconduct based on those same statements.  Because the claims do not share a "common core of operative facts," the claim in subpart D does not relate back to the Third or Twenty-Third Grounds for Relief in the original Petition.  Accordingly, the Court finds that subpart D of the Second Ground for Relief is barred by the statute of limitations.

---

[9]While incarcerated Petitioner attempted to escape from the fifth floor of the Hamilton County Justice Center by jumping out of a window that had been temporarily removed by workers.  *State v. Raglin*, 699 N.E.2d 482, 489-90 (Ohio 1998).

3.  **Third Ground for Relief**

To repeat, in his Third Ground for Relief, Petitioner claims ineffective assistance of trial counsel based on the failure to object and properly preserve critical errors for appeal.  In his R&R, the Magistrate Judge concluded that this claim was procedurally defaulted on the same basis as the First Ground: it was not presented on direct appeal, but was only presented in the petition for post-conviction relief, where it was held barred by Ohio's criminal *res judicata* rule.  (Doc. 89, at 18).  However, in the briefing of Petitioner's Motion for Certificate of Appealability, Petitioner points out for the first time that this claim was first raised in his second petition for post-conviction relief.  (Doc. 165).  Petitioner explains that the trial and appeals court denied the claim because he failed to satisfy the requirements of Ohio Revised Code § 2953.23 for a successive post-conviction petition, and not based on *res judicata*.  The Magistrate Judge found that this argument was waived because Petitioner failed to previously object on this basis.  Petitioner objects to this conclusion.  (Doc. 170, at 11).

The Sixth Circuit has explained: "As long as a party was properly informed of the consequences of failing to object, the party waives subsequent review by the district court and appeal to this court if it fails to file an objection."  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981)).  There is no dispute that Petitioner was properly informed of the consequences of failing to object.  With regards to the Third Ground, the Magistrate Judge gave notice in both the R&R (Doc. 89, at 29) and the Amended Supplemental R&R (Doc. 100, at 21).  Petitioner filed objections to the R&R and the Amended Supplemental R&R, and

was later permitted to file Supplemental Objections.  At no time did Petitioner raise this factual error.

However, even if the Court were to consider Petitioner's objection, the Court would still reach the same conclusion after the correction of the factual error.

Under *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), Petitioner's Third Ground remains procedurally defaulted, albeit for a different reason.  Ohio Revised Code § 2953.23 bars successive petitions for post-conviction relief unless certain criteria have been met.  The Sixth Circuit has recognized that Ohio Revised Code § 2953.23 is an adequate and independent state procedural rule.  *Davie v. Mitchell*, 547 F.3d 297, 311 (6th Cir. 2008) (citing *Broom v. Mitchell*, 441 F.3d 392, 399-401 (6th Cir. 2006)).

However, Petitioner argues that Respondent failed to raise Ohio Revised Code § 2953.23 as a basis for finding procedural default and this Court should not raise it *sua sponte*.[10]

The Supreme Court has explained: "Our precedent establishes that a court may consider a statute of limitations or other threshold bar the State failed to raise in answering a habeas petition."  *Wood v. Milyard*, 132 S. Ct. 1826, 1835, (2012) (citing *Granberry v. Greer*, 481 U.S. 129, 134 (1987) (exhaustion defense); *Day v. McDonough*, 547 U.S. 198, 202 (2006) (statute of limitations defense)).  The Supreme Court has recognized that "the Courts of Appeals have unanimously held that, in appropriate circumstances, courts, on their own initiative, may raise a petitioner's

---

[10]Respondent did not raise any arguments with regard to the Third Ground in the Amended Return of Writ.

procedural default."[11] *Day v. McDonough*, 547 U.S. 198, 206 (2006); *see*, *e.g.*, *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004).

However, the Supreme Court has instructed that a federal habeas court "does not have *carte blanche* to depart from the principle of party presentation basic to our adversary system." *Wood*, 132 S.Ct. at 1834. Instead, a federal court may only consider a defense on its own initiative where the State has not strategically withheld the defense or chosen to relinquish it; and the petitioner is accorded a fair opportunity to present his position. *Wood*, 132 S.Ct. at 1834-35 (citing *Day*, 547 U.S. at 210–211). "Further, the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the [affirmative defense] issue, and 'determine whether the interests of justice would be better served" by addressing the merits or by dismissing the petition [ ].'" *Day*, 547 U.S. at 210 (quoting *Granberry*, 481 U.S. at 136).

Here, it does not appear from the record that Respondent strategically withheld the procedural bar defense or chose to relinquish it. Instead, the failure to raise the defense in the Amended Return of Writ stemmed from "inadvertent error." *See Day*, 547 U.S. at 211. Petitioner has not been prejudiced by the delayed focus on the procedural bar issue. The issue of the procedural bar to the claim raised in the Third Grounds has been repeatedly addressed by the Magistrate Judge and the parties. Petitioner himself has filed three rounds of objections on the issue. While this discussion was grounded on a procedural bar stemming from *res judicata*, Petitioner has not argued that his response would have been any different had there been a

---

[11]However, the Supreme Court has not decided the issue. 547 U.S. 206 (citing *Trest v. Cain*, 522 U.S. 87, 89, 90 (1997) (holding that Court of Appeals was not obliged to raise procedural default on its own initiative, but declined to decide whether courts have discretion to do so).

clarification that the procedural bar stemmed from a failure to satisfy the requirements of Ohio Revised Code § 2953.23.

The Court will address those arguments now.  Petitioner repeats the same arguments he made with respect to the First Ground for Relief: (1) Petitioner did present this claim on direct appeal by presenting the claim in his application to re-open his direct appeal in the Ohio Supreme Court; and (2) there was cause and prejudice to excuse the alleged procedural default.

As to the first argument, as stated above, under Ohio law an application to reopen is not part of a direct appeal.  *See Morgan v. Eads*, 818 N.E. 2d 1157, 1162 (2004); *Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005).  Therefore, Petitioner has not presented this claim on direct appeal.

As to the second argument, the Court once again notes that Petitioner claimed that he could demonstrate cause and prejudice to excuse this procedural default, but stated he would need an evidentiary hearing in which to do so.  However, no motion for evidentiary hearing was ever filed.  The Court finds that the Magistrate Judge correctly concluded that the cause and prejudice argument should be treated as abandoned.

However, in his Objections to the Amended Supplemental R&R, for the first time, Petitioner argues that a failure to request an evidentiary hearing on a claim cannot be deemed an abandonment of a claim.  Petitioner also argues that his claim of ineffective assistance of appellate counsel is supported by the affidavits of attorneys Laney Hawkins and Joseph E. Wilhelm.  (See Doc. 15, Vol. XI, at 2809 & 2884).

The ineffective assistance of appellate counsel may constitute cause for a procedural default.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  However, as

explained below, Petitioner has failed to establish that he was denied the right to effective assistance of appellate counsel.  Therefore, regardless of whether the procedural default was based on *res judicata* or failure to satisfy the requirements of Ohio Revised Code § 2953.23, the Court concludes that Petitioner's claim of ineffective assistance of trial counsel in the Third Ground was procedurally defaulted and Petitioner has not demonstrated cause and prejudice to excuse this procedural default.

### 4. <u>Fourth Ground for Relief</u>

Petitioner claims he was denied his right to the effective assistance of appellate counsel because counsel failed to raise the following issues in his direct appeal:

1. Trial counsel failed to challenge a prospective juror for cause or utilize a pre-emptory challenge to remove a juror who had personal knowledge of the crime alleged and personal relationships with those affected by the crime alleged.

2. Trial counsel repeatedly conceded the issue of guilt at the trial phase of his capital trial.

3. Trial counsel repeatedly conceded the issue of guilt during *voir dire* and opening statement, but then argued in closing that the State had failed to prove the element of purpose beyond a reasonable doubt.

4. Trial counsel failed to procure reasonable and necessary experts to present forensic evidence, including evidence as to the operability of the murder weapon.

5. Trial counsel failed to put on a defense case-in-chief targeting a lesser included offense.

6. Trial counsel failed to investigate and present substantial mitigating evidence of remorse during the sentencing phase hearing.

7. Trial counsel failed to raise as error trial instructions which undermined the State's burden of proof beyond a reasonable doubt and shifted the burden of proof to the defendant.

8. Trial counsel failed to object to the prosecutor's closing argument which was presented in a manner to inflame the jurors against the defendant.

Petitioner does not object to the Magistrate Judge's conclusion that the sixth assignment of error is barred by the statute of limitations. However, Petitioner does object to the Magistrate Judge's recommendation that the remaining seven assignments of error should be dismissed with prejudice.

As to these seven, the Magistrate Judge explained in the R&R:

Petitioner makes no argument as to why these omitted assignments of error are meritorious or how they are more meritorious than the assignments of error which actually were presented on direct appeal. In other words, Petitioner merely asserts these were meritorious without making any argument.

(Doc. 89, at 22). In his Objections, Petitioner argued that the affidavits of attorneys Laney Hawkins and Joseph E. Wilhelm supported his claims.[12]

In his Amended Supplemental R&R, the Magistrate Judge reviewed the affidavits of Hawkins and Wilhelm to determine whether the affidavits would support Petitioner's claim of ineffective assistance of appellate counsel.[13] (See Doc. 100, at 10-12). The Magistrate Judge noted that to the extent that Hawkins addressed the performance of appellate counsel, Hawkins' statements are set forth in a conclusory fashion. The Sixth Circuit has explained that conclusory assertions fall far short of showing actual prejudice. *Cross v. Stovall*, 238 Fed. App'x 32, 39-40 (6th Cir. 2007). In addressing Wilhelm's affidavit, the Magistrate Judge noted that Petitioner failed to argue why the

_____

[12]In his Amended Supplemental R&R, the Magistrate Judge notes that this is the first time that Petitioner has cited to these affidavits. (Doc. 100, at 10). These affidavits were part of Petitioner's application for reopening filed with the Ohio Supreme Court.

[13]The Court notes that the Magistrate Judge inadvertently referred to Hawkins as "Haney" in several places in the R&R.

issues identified by Wilhelm were stronger than the issues actually raised or why it would have likely changed the outcome.  *See McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004) (explaining that counsels' failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal); *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (a petitioner must show that appellate counsel ignored issues which are clearly stronger than those presented).

Moreover, as the Magistrate Judge explained, the Ohio Supreme Court rejected Petitioner's ineffective assistance of appellate counsel claim on the merits by refusing to reopen.  *See State v. Raglin*, 706 N.E.2d 789 (Ohio 1999) (table) (denying application for reopening under Ohio S. Ct. Prac. R. XI).  When a state court adjudicates on the merits a claim which is later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).  As the Supreme Court has explained, "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted).  However, this Court will "apply only modified deference because the Ohio Supreme Court's adjudication of the ineffective assistance claim provided 'little analysis on the substantive constitutional issue.'" *Moore v. Mitchell*, 708 F.3d 760, 792 (6th Cir. 2013) (quoting *Davie v. Mitchell*, 547 F.3d 297, 315 (6th Cir. 2008)).  Under this

modified approach, this Court must "conduct a careful and independent review of the record and applicable law, but cannot reverse unless the state court's decision is contrary to or an unreasonable application of federal law." *Id.*

The Magistrate Judge noted that Wilhelm's affidavit identifies three ways in which appellate counsel provided ineffective assistance: (1) failure to claim error in the trial court's definition of reasonable doubt; (2) failure to claim error in the trial court's instructing the jury that it had to decide Petitioner's guilt or innocence; and (3) failure to claim error in the trial court's instruction on "purpose."

To begin, the Court notes that even though Petitioner's claim of ineffective trial counsel has been procedurally defaulted, "an examination of trial counsel's performance [i]s required in order to determine whether appellate counsel had been constitutionally ineffective." *See Greer v. Mitchell*, 264 F.3d 663, 675-76 (6th Cir. 2001) (citing *Mapes v. Coyle*, 171 F.3d 408, 419 (6th Cir.), *cert. denied*, 528 U.S. 946 (1999)). The Sixth Circuit has compiled a non-exhaustive list of "considerations that ought to be taken into account in determining whether an attorney on direct appeal performed reasonably competently:"

A. Were the omitted issues "significant and obvious?"

B. Was there arguably contrary authority on the omitted issues?

C. Were the omitted issues clearly stronger than those presented?

D. Were the omitted issues objected to at trial?

E. Were the trial court's rulings subject to deference on appeal?

F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

G. What was appellate counsel's level of experience and expertise?

H. Did the petitioner and appellate counsel meet and go over possible issues?

I. Is there evidence that counsel reviewed all the facts?

J. Were the omitted issues dealt with in other assignments of error?

K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d at 427–28.

In light of these considerations, the Court finds that the claimed errors do not demonstrate that Petitioner suffered from ineffective assistance of appellate counsel. The Court notes that the Magistrate Judge addressed the merits of Petitioner's underlying claim regarding the instruction on purpose.  In his Ninth Ground for Relief, Petitioner claimed that the trial court gave an erroneous instruction on the issue of the issues of causation, foreseeability, intent and purpose.   The Magistrate Judge concluded that the claim has no merit, and as discussed below, the Court finds that this conclusion is not in error.   As to the claim that the trial court erred by instructing the jury that it had to decide Petitioner's guilt or innocence, the Supreme Court has rejected similar claims that such an instruction improperly shifts the burden of proof.  *State v. Diar*, 900 N.E.2d 565, 590 (Ohio 2008).  As to the claim that the instruction regarding reasonable doubt was unconstitutional, Petitioner raised that claim in his Tenth Ground for Relief, but later abandoned that claim.

The Sixth Circuit has instructed that "[i]f the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal."  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008). Therefore, the Court concludes that Petitioner has not met the burden of establishing

that the Ohio Supreme Court's decision is contrary to or an unreasonable application of federal law.  Ground Four is dismissed with prejudice.

### 5.  <u>Sixth Ground for Relief</u>

Petitioner claims that his Fifth, Sixth and Fourteenth Amendment Rights were violated when the trial court failed to suppress his statement made to members of the Cincinnati Police Department on January 3, 1996 because his statement was made during a custodial interrogation following an unfulfilled request for counsel.   The Magistrate Judge recommends dismissing this claim because Petitioner has not shown that the Ohio Supreme Court's decision to uphold the denial of the motion to suppress is an unreasonable application of *Edwards v. Arizona*, in which the Supreme Court held that an accused "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."   451 U.S. 477, 484-85 (1981).   The Magistrate Judge explained:

> Mr. Raglin, given his *Miranda* warnings, made a complete confession to the police before any audiotaping occurred.  Once the police evinced a desire to put the confession on tape, he hesitated about getting an attorney.  However, once the police brought him a telephone book to enable him to do that, he changed his mind and said he wanted to go ahead and put the confession on tape.[14]  The interchange between Mr. Raglin and the interrogating police officer which Petitioner's counsel characterize as "hounding" is just as reasonably read as conversation about what Mr. Raglin wanted to do.  There is no evidence of any effort by the police to talk Mr. Raglin out of calling an attorney nor evidence to

---

[14]Petitioner argues that there is evidence in the record that the officers never brought Petitioner a phone book.  (Doc. 142, at 9) (citing Doc. 15, Vol. I, at 66).  The Court finds that this error in the recitation of facts has no effect on the determination as to whether the Ohio Supreme Court's adjudication of Petitioner's claim was an unreasonable application of clearly established federal law.

contradict the state court findings that it was Mr. Raglin who re-initiated the audiotaping.

Moreover, no evidence has been offered which suggests that there are any material differences in the content of the taped and untaped confessions. While the audiotape would probably be more persuasive to a jury and would forestall attempts to repudiate the confession, which otherwise would only have come to the jury through an officer's testimony, that does not eliminate the fact that the police had a *Mirandized* confession before any talk of an attorney occurred. Thus a full confession would have been admissible entirely apart from the audiotape.

(Doc. 89, at 26).

In his Supplemental Objections (Doc. 142), Petitioner argues that the Magistrate Judge's conclusion is in error because evidence presented to the state court shows that the officers never ceased custodial interrogation after Petitioner requested counsel. In the alternative, Petitioner argues that even if interrogation ceased, Petitioner did not evince a willingness to discuss the investigation without influence by authorities. *See Davie v. Mitchell*, 547 F.3d 297, 305 (6th Cir. 2008) (explaining the general rule that "an *Edwards* initiation occurs when, without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case.") (quoting *United States v. Whaley*, 13 F.3d 963 (6th Cir. 1994)). Petitioner relies on the following testimony from one of the officers during the suppression hearing:

Q [Defense counsel Keller]: All right. And, in fact, he – you asked him on more than one occasion whether he wanted an attorney?

A [Officer Argo]: On tape is that?

Q: Yes, on tape?

A: Yes, clarifying the fact that he wanted an attorney.

Q: And at that point you turned the tape off?

A: That is correct.

29

Q: And that was at approximately 11:02 p.m. on January 3rd?

A: Yes, it was.

Q: But at that point you didn't stop talking with him, did you?

A: No, we did not.

(Doc. 15, App. Vol. I at 61-62).   However, the same officer also testified that after

Petitioner requested an attorney:

A: We advised Mr. Raglin that he would be able to call any attorney that he wished, that we would get the phone book for him and he could find one of his choosing.  He - - at that point he - - Mr. Raglin was very talkative that evening and he kept talking about not wanting to inconvenience us, put us to any trouble.  We assured him that it was no trouble as far as we were concerned.  At that point he said he changed his mind and stated he wanted to go ahead and put it on tape so that we would have his words.

. . .

Q. Did you ever ask him to change his mind or did he just say, I change my mind, I don't want an attorney?

A. He stated he wanted to change his mind and put it on tape.

Q. And how did you respond to that?

A. We advised him at that point that we would do it, but we would have to go through the rights again to make sure that he understood that he could have an attorney and he agreed to do that.

Q. And at that point is the tape turned back on?

A. Yes, it is …

(Id. at 48-49).   Therefore, while the officers continued to talk to Petitioner, the Ohio

Supreme Court made a reasonable determination that the record revealed that the

officers ceased questioning and that:

it was appellant himself who, after invoking the right to counsel, initiated further conversations or communications with police concerning his wish

30

to confess, and that appellant fully understood his right to counsel and voluntarily, knowingly, and intelligently abandoned that right before the custodial interrogation resumed.

*State v. Raglin*, 699 N.E.2d 482, 491 (Ohio 1998).  In support of this conclusion, the

Ohio Supreme Court noted that:

> When asked to repeat his statement on tape, appellant agreed and was once again advised of his *Miranda* rights.  However, at that point, appellant informed police that he wished to speak to an attorney before proceeding further.  Therefore, police ceased questioning appellant and turned the recorder off.  The record indicates that police offered to get appellant a telephone book and to assist him in obtaining counsel. Appellant told police that he did not want to "put [the police officers] to any trouble," but the officers assured him that his request for counsel was no trouble.  Appellant then told police that he had changed his mind concerning counsel and that he wanted to "put it [his confession] on tape," and "get it off his chest."  There is no evidence whatsoever that police said or did anything to change appellant's mind, and appellant changed his mind after only two or three minutes.  Police then turned the recorder on and proceeded to ask appellant a series of questions regarding his waiver of the right to counsel.  In response to these questions, appellant indicated that he fully understood his rights, that no threats or promises had been made to induce or coerce him into confessing, and that he wanted to put his confession on tape without talking to an attorney or having one present during questioning.

699 N.E.2d at 491.  Accordingly, the Court concludes that Petitioner has not met the

burden of establishing that the Ohio Supreme Court's decision is contrary to or an

unreasonable application of federal law.  Ground Six is dismissed with prejudice.

### 6.  Eighth Ground for Relief

Petitioner claims that his Fifth, Sixth, Seventh, Eighth, and Fourteenth

Amendment Rights were violated when the judge refused to instruct the jury at the end

of the trial phase that it could find Petitioner guilty of involuntary manslaughter, a lesser

included offense of aggravated murder.  Petitioner argues that there is evidence that he

did not intend to cause Bany's death, but that the killing resulted from the commission of

an aggravated robbery. Petitioner points to evidence that he had been drinking and smoking marijuana the day of the shooting. Petitioner also relies on the manner of death, arguing that the single gunshot wound to the neck shows that he did not intend to kill Bany.

In finding that the trial court properly refused Petitioner's request for an instruction on involuntary manslaughter, the Ohio Supreme Court explained:

> The facts of this case are clear. Appellant and his accomplice, Darnell Lowery, wandered the streets of Cincinnati looking for a victim to rob. Appellant was carrying a loaded .380 caliber semiautomatic pistol. The men considered two potential classes of victims to rob, but decided to search for easier prey. While appellant and Lowery were searching for a defenseless person to rob, appellant's unfortunate victim, Michael Bany, arrived on the scene. Appellant approached Bany and demanded money. Bany complied with appellant's demands. The record clearly indicates that Bany presented no threat to appellant and that appellant and Bany never argued. Bany never spoke a single word to appellant. While appellant was asking questions concerning Bany's car, Bany bent down and picked up what appellant referred to as a "suitcase," *i.e.*, either the guitar case or the case containing Bany's music equipment. Bany turned to look at appellant, and appellant looked at Bany. Appellant then pointed the pistol at Bany and shot him in the neck in a manner that was certain to (and did) cause Bany's death.
>
> Appellant told police, "I, I fired the gun at [Bany]. I didn't know where I hit [him] at. I wasn'[t] tryin' to kill [him]." Appellant also claimed to have "panicked" at the time he shot and killed Bany. Appellant told police that he had been "scared" by Bany's movements because appellant "didn'[t] know what * * * was in the suitcase." However, appellant never claimed that the shot had been accidentally or unintentionally fired, and the evidence clearly establishes that the shooting was not accidental or unintentional. Appellant's claims of panic and fright are not reasonably supported by the evidence. Appellant had a loaded weapon, he was pointing that weapon at Bany, and he fired that weapon into the neck of his defenseless victim. Appellant told police that he had fired the weapon directly at Bany. He told police that Bany was not trying to "fiddle" with the suitcase or anything of that nature and that Bany had simply "picked it up." Appellant also admitted to police, "I didn'[t] have to shoot that man." The direct and circumstantial evidence in this case, and all reasonable inferences to be drawn therefrom, lead to one inescapable conclusion, to wit, appellant purposely killed Bany during the commission of an

aggravated robbery when he pointed the gun at Bany and pulled the trigger.

*State v. Raglin*, 699 N.E.2d at 488.  The Magistrate Judge found that the Ohio Supreme Court properly applied the Supreme Court's decision in *Beck v. Alabama*, 447 U.S. 625 (1980).  In *Beck*, the Court held that a defendant is entitled to "'an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.'"  *Id.* at 635 (quoting *Keeble v. United States*, 412 U.S. 205, 208 (1973)).  The Supreme Court later clarified *Beck* by explaining that that "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction."  *Hopper v. Evans*, 456 U.S. 605, 610 (1982) (emphasis in original).  Accordingly, no lesser included offense instruction is required where the evidence not only supported the claim that the defendant intended to kill the victim, "but affirmatively negated any claim that he did not intend to kill the victim."  *Id.* at 613.

In this case, based on the above recitation of the facts, the Ohio Supreme Court found "no evidence in this case to reasonably suggest that appellant lacked the purpose to kill his victim."  699 N.E.2d at 488.  This Court finds that this was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and therefore Ground Eight is dismissed with prejudice.

### 7.  Ninth Ground for Relief

Petitioner claims that his Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights were violated when the judge erroneously instructed the jury at the end of the trial phase on the issues of causation, forseeability, intent, and purpose.  Specifically, Petitioner objects to the following portions of the jury instructions:

. . .when the death is the natural and foreseeable result of the act. . . .

"Result" occurs when the death is naturally and foreseeably caused by the act. . . .

The causal responsibility of the defendant for an unlawful act is not limited to its most obvious result. The defendant is responsible for the natural, logical and foreseeable results that follow, in the ordinary course of events, from an unlawful act.

As part of Petitioner's direct appeal, the Ohio Supreme Court addressed these jury instructions, and explained:

Appellant contends that the trial court's instructions to the jury in the guilt phase that defined "causation" in terms of foreseeability permitted a conviction for aggravated murder without proof of purpose to kill. Appellant makes a similar argument with respect to the trial court's instruction to the jury that "[i]f a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be inferred from the use of the weapon." Appellant's arguments are not persuasive. The trial court's instructions to the jury, viewed as a whole, made it clear that a finding of purpose (and specific intent) to kill was necessary in order to convict appellant on the charge of aggravated murder. The jury in this case returned its verdicts in accordance with the overwhelming evidence on the issue. Accordingly, we find no reversible error here.

*State v. Raglin*, 699 N.E.2d at 492.

The Magistrate Judge concluded that this decision was not an unreasonable application of federal law under *Francis v. Franklin*, 471 U.S. 307 (1985), explaining:

the trial judge told the jury that purpose to cause death was an essential element and twice in the same paragraph told them that proof of purpose required proof of specific intent to cause death. Then he went on to define purpose in terms of intention. Because, as he told the jury, we never have direct proof of someone's purpose, purpose being an internal mental state, purpose must be determined from circumstantial evidence. The Court agrees with Petitioner that the language the trial judge used – "is determined" – told the jury that it must decide Petitioner's *mens rea* from circumstantial evidence. But that is accurate. In criminal cases as in life in general, we never have direct evidence of another's person's state of mind, even when that person declares openly what his or her state of mind is.

(Doc. 89, at 34-35).

The Sixth Circuit recently reviewed a habeas claim based upon a trial court's causation instruction in an Ohio aggravated murder trial which was similar to the one given in this case.  That instruction read as follows:

> The State charges that the act of the defendant caused the death of Peter Copas.  Cause is an act which in a natural and continuous sequence directly produces the death of Peter Copas and without which it would not have occurred.

> The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act.  The defendant is also responsible for the natural and foreseeable results that follow, in the ordinary course of events from the act.

*Hanna v. Ishee*, 694 F.3d 596, 621 (6th Cir. 2012).  The Sixth Circuit noted that "the causation instruction stands in isolation when compared to the multiple points where the trial court properly instructed the jury on specific intent."  *Id.*  The Sixth Circuit cited multiple examples where the trial court advised the jurors that they could not convict the petitioner of aggravated murder unless they found that the state met its burden to prove the petitioner's specific intent to kill beyond a reasonable doubt.  *Id.*  The court explained that the instructions, read in their totality, clearly place the burden of proof on the state.  *Id.*  The court distinguished the instructions from the intent instruction in *Francis*, which "specifically called upon the jury to presume that the defendant *intended* the natural and probable consequences of his acts."  *Id.* at 622 (citing 471 U.S. at 309) (emphasis in original).  The court also noted that in *Francis*, "the overall instructions did not cure this error because they charged the defendant with rebutting the inference that he intended the foreseeable consequences of his actions."  *Id.* (citing 471 U.S. at 315).  The court explained:

> If anything, *Francis* underscores our conclusion that the state courts properly analyzed Supreme Court precedent in this case.  The challenged instruction here is clearly distinguishable from the one in *Francis* because Petitioner's jury was only told that it could infer causation from the defendant's actions; the jury was not instructed to infer anything about Petitioner's intent from this conduct.  Moreover, the error in describing causation, to the extent there was any, was attenuated from the essential element in dispute at trial.  Finally, and in contrast to *Francis*, the overall instructions provided at Petitioner's trial were curative because they properly charged the jury as to specific intent, whereas the broader instructions in *Francis* only underscored the constitutional error.

*Id*.  Accordingly, the court held that state courts' rulings were not unreasonable applications of clearly established federal law, and habeas relief was not warranted.  *Id*.

In this case, as in *Hanna*, the jury was instructed: (1) that aggravated murder is "purposely causing the death of another;" (2) to find Petitioner guilty, the jury must find beyond a reasonable doubt that "the defendant purposely caused the death of Michael Baney [*sic*];" (3) that "[a] person acts purposely when it is his or her specific intention to cause a certain result;" (4) that "[i]t must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to cause the death of Michael Baney [*sic*];" (5) that "[p]urpose is a decision of the mind to do an act with a conscious objective of producing a specific result or engaging in specific conduct;" (6) that "[t]o do an act purposely is to do it intentionally and not accidentally;" and (7) that "no person may be convicted of Aggravated Murder unless he or she is specifically found to have intended to cause the death of another." (Doc. 15, Vol. III, at 1473, 1474, 1475).  As such, the Court finds little to distinguish this case from *Hanna*, and therefore concludes that the Ohio Supreme Court's ruling is not contrary to, or an unreasonable application of, clearly established federal law.  Ground Nine is dismissed with prejudice.

8.  **Seventeenth Ground for Relief**

Petitioner claims that his Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase in such a manner that the jury could conclude that it had to consider and reject a recommendation as to the imposition of death before it could consider either life sentence option.

The Magistrate Judge found that this claim was procedurally defaulted because when Petitioner was before the Ohio Supreme Court, the claim was phrased entirely as a matter of state law.

"As a necessary component of the exhaustion of state remedies doctrine, a petitioner's claim must be "fairly presented" to the state courts before seeking relief in the federal courts." *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (citing *Baldwin v. Reese*, 541 U.S. 27 (2004)).  The Sixth Circuit has identified four actions a petitioner can take which are significant to the determination of whether a petitioner has "fairly presented" a claim to the state courts:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).

Here, on appeal to the Ohio Supreme Court, Petitioner argued under Proposition of Law No. 9:

> Where jury instructions at the penalty phase of capital proceedings misstate the law to the jury, fail to define mitigation factors, exclude

relevant mitigation, and is otherwise erroneous and misleads the jury, the resulting death sentence violates the Eighth and Fourteenth Amendments, and Art. I, secs. 9 and 16 of the Ohio Constitution, and must be reversed.

(Doc. 15, Vol. VI at 863).  Then Petitioner specifically argued:

> F. The trial court in effect instructed the jury that it had to consider, and reject, the death sentence before considering either life option (R.1917). While not stating expressly that the jury was required to consider death before considering life, that is the clear import of the instruction.  This is error sufficient to warrant reversal of the death sentence, *State v. Brooks* (1996), 75 Ohio St.3d 148, 159-160, 661 N.E.2d 1030, 1042. Furthermore, the trial court failed to instruct that one juror could prevent the imposition of the death penalty, as required by *Brooks* henceforth from that decision (which preceded Appellant's trial by several months), although the trial court did instruct the jury that any verdict it returned had to be unanimous, and the jury verdict forms also reflected the requirement of unanimity (R.1917-1919).

(Doc. 15, Vol. VI, at 865-66).

As the Magistrate Judge noted, Petitioner's argument before the Ohio Supreme Court included a reference to the United State Constitution, but did not phrase any arguments in terms of federal constitutional law or cite any federal cases.  The Magistrate Judge also reviewed, in great detail, the Ohio Supreme Court case cited by Petitioner in his argument, *State v. Brooks*, and determined that while the court cited to *Mills v. Maryland*, 486 U.S. 367 (1988) and *Kubat v. Thieret*, 867 F. 2d 351 (7th Cir. 1989), the court did not reverse the defendant's death sentence because it found that such a result was compelled by federal constitutional law.  Accordingly, the Court concludes that Petitioner did not fairly present these grounds to the state courts, and therefore the claim is procedurally defaulted.

In the alternative, Petitioner argues that *Davis v. Mitchell*, 318 F.3d 682 (6th Cir. 2003), which was decided five years after the Ohio Supreme Court decided his direct appeal, should be applied to the merits of his claim.  However, even if *Davis* is

applicable, that decision is not "clearly established Federal law." As the Sixth Circuit has explained:

> In *Mills v. Maryland*, 486 U.S. 367, 380–81, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the Supreme Court held a jury instruction unconstitutional that told the jury that it could not consider a particular mitigating circumstance unless all 12 jurors agreed that the circumstance had been proved to exist. Under *Mills*, then, courts have recognized that " 'each juror [must] be permitted to consider and give effect to all mitigating evidence in deciding whether aggravating circumstances outweigh mitigating circumstances.'" *Smith v. Spisak*, 558 U.S. 139, 130 S.Ct. 676, 682, 175 L.Ed.2d 595 (2010) (edits omitted) (quoting *McKoy v. North Carolina*, 494 U.S. 433, 442–43, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990)). The Supreme Court has never extended that rule to jury instructions that suggest a jury must first unanimously reject the death penalty before considering a life sentence. Notably, though, this circuit has done so, thereby adopting the "acquittal-first" doctrine for habeas cases. *See Davis v. Mitchell*, 318 F.3d 682, 689 (6th Cir. 2003).
>
> But the Supreme Court has rejected this circuit's approach. In the recent *Spisak* case, which arose from this circuit, the Supreme Court reviewed acquittal-first jury instructions that are very similar to the ones [the defendant] raises in this case. The Supreme Court explained that it had never held such jury instructions unconstitutional and that "[w]hatever the legal merits of the [acquittal first] rule ... [such] jury instructions [a]re not contrary to clearly established Federal law." 130 S.Ct. at 684. Thus, even in 2010—when *Spisak* was decided—the acquittal-first rule was not "clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). And the Supreme Court still has not adopted that rule. *See, e.g., Bobby v. Mitts*, ––– U.S. ––––, 131 S.Ct. 1762, 1765, 179 L.Ed.2d 819 (2011) (affirming *Spisak*-like Ohio jury instructions as "not contrary to clearly established Federal law" (internal quotation marks omitted)).

*Moore v. Mitchell*, 708 F.3d 760, 792-93 (6th Cir. 2013). Accordingly, the Court finds that this alternative argument does not entitled Petitioner to habeas relief, and the Seventeenth Ground for relief is dismissed with prejudice.

### 9. **Twenty-Third Ground for Relief**

Petitioner argues that he was denied his constitutional rights to a fair and impartial trial under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments as a result of prosecutorial misconduct during both phases of his capital proceedings.

The Magistrate Judge found that only the claims of prosecutorial misconduct occurring during the penalty phase of the trial were presented on direct appeal to the Ohio Supreme Court. Petitioner initially argued that he preserved some of the remaining claims by raising them in his post-conviction proceedings, but later conceded in his Supplemental Objections that these claims were procedurally defaulted. (Doc. 142, at 20). However, Petitioner still maintains that certain instances of prosecutorial misconduct were raised in his direct appeal, and were therefore preserved for review. Petitioner relies on following instances, which were raised in Proposition of Law Nos. 5 and 16:

(1) "The prosecutors frequently stated their opinion as to Mr. Raglin's state of mind during the shooting, without any evidentiary foundation. (Tr. 1450, 1457);"

(2) "The prosecutors also sarcastically mis-characterized [sic] Mr. Raglin's statement that the gun went off accidentally. (Tr. 1451.);"

(3) "[t]he prosecutors made impermissible statements of personal opinion to the jury (Tr. 1900, 1901, 1904)"

As the Magistrate Judge noted, in the Ohio Supreme Court, Petitioner's claim in Proposition of Law No. 5 was limited to alleged misconduct in the penalty phase of the trial. Respondent points out that the first two instances listed above occurred during the guilty phase of the trial, and therefore could not be used to support Petitioner's claim. However, Petitioner instead relied on these two instances in Proposition of Law No. 16, which read as follows:

> A prosecutor's argument which goes beyond the facts in evidence is improper and, even where defense objections are sustained, violates the right of the accused to due process under the U.S. and Ohio Constitutions.

(Doc. 15, Vol. VI, at 915). Under Proposition of Law No. 16, Petitioner argued:

> Here, during the guilt phase argument, the prosecutor frequently stated his opinion as to the Appellant's state of mind during the shooting, without any evidentiary foundation, and defense objections were sustained (R. 1450, 1457), and also sarcastically mischaracterized Appellant's statement as stating the gun went off accidentally, to which argument the defense objection was also sustained (R. 1451).
>
>  . . .
>
> It has been recognized that, some arguments are so prejudicial that event the sustaining of defense objections cannot "unring the bell," and do not attenuate the prejudicial error, *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620. Appellant's right to a fair trial under the Fourteenth Amendment to the U.S. Constitution and the Ohio Constitution was violated by the prosecutor's argument.

(Id. at 915-16). Therefore, Petitioner did in fact preserve his claims as to the first two instances. However, as to the third instance, the statements referenced were made during the mitigation phase of the trial (See Doc. 15, Vol. IV, at 1900, 1901, 1904) and not raised as part of his claim under Proposition of Law No. 16 in the Ohio Supreme Court.

Petitioner argues that because the Ohio Supreme Court failed to address the actions of the prosecutor to determine whether they constituted prosecutorial misconduct as a matter of federal constitutional law, Petitioner's claim should be reviewed *de novo*.

The Ohio Supreme Court's ruling on Petitioner's Proposition of Law No. 16, in its entirety, was as follows:

> Appellant argues in Proposition of Law No. 16 that the prosecutor improperly referred to facts not in evidence during closing argument in the

> guilt phase. However, as appellant acknowledges, defense objections to
> these alleged incidents of prosecutorial misconduct were sustained. The
> prosecution was admonished by the court, and the jury was instructed to
> disregard the prosecutor's remarks. The jury is presumed to have followed
> the court's instructions. *State v. Goff* (1998), 82 Ohio St.3d 123, 135, 694
> N.E.2d 916, 926. Appellant's argument is rejected.

*State v. Raglin*, 699 N.E.2d at 492. Therefore, while Petitioner raised a federal due

process claim, the Ohio Supreme Court did not specifically address the constitutional

issue. Where the "state court adjudicated the claim but with little analysis on the

substantive constitutional issue," the Sixth Circuit applies a "modified AEDPA

deference" standard of review. *Vasquez v. Jones*, 496 F.3d 564, 569 (6th Cir. 2007).

Under this standard, "a 'careful' and 'independent' review of the record and applicable

law," is required, but reversal is not warranted unless "'the state court's decision is

contrary to or an unreasonable application of federal law.'" *Id.* at 570 (quoting

*Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005)).

To prove a claim of prosecutorial misconduct, a habeas petitioner must

demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to

make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416

U.S. 637, 643 (1974). The prosecutor's remarks must be considered within the context

of the entire trial to determine whether any improper remarks resulted in prejudicial

error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). The petitioner must

demonstrate that the prosecution's conduct was "both improper and so flagrant as to

warrant reversal." *Bates v. Bell*, 402 F.3d 635 (6th Cir. 2005) (citing *Mason v. Mitchell*,

320 F.3d 604, 635 (6th Cir. 2003)). Once a court finds that a statement is improper,

four factors are considered in determining whether the challenged conduct is flagrant:

(1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2)

whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003) (citing *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000)).

During closing arguments, the prosecutor made the following comments:

. . . Let me ask you this: I want you to think about this somewhat. What is not said is just as significant as what is said. If this gun that's in evidence, and that you'll see it, it's somehow accidentally or inadvertently fired, wouldn't he have said that to those police officers? In fact isn't that the first thing he would have said when he turned on that tape and when he [*sic*] started to interview him. Wouldn't he have said something like I did the robbery, but I didn't mean to fire the gun? Or it accidentally went off or wouldn't he have said I don't know why I fired?

Mr. Ranz: Objection, Your Honor.

The Court: Objection sustained. Let's confine ourselves to what's in evidence, sir.

Mr. Gibson: Listen to the tape. He gave the police a taped statement. . . . You'll have it in evidence. . . . Not once did he ever say in that statement that he didn't mean to shoot that gun. Wouldn't he have – wouldn't he have said that if it somehow inadvertently fired or that gun accidentally went off –

Mr. Ranz: Object, Your Honor.

The Court: Let's confine to what's in evidence.

Mr. Gibson: Well, Judge, this is in evidence. This tape is what I'm commenting on.

The Court: Go ahead, sir.

(Doc. 15, Vol. III, Tr. 1449-451). The prosecutor also stated in closing arguments:

. . . Ask yourself this: What does a person say when he points a loaded gun? There are spoken words in the commission of a robbery. The very word he uttered when he approached Michael Baney and give me your

money.  [*sic*]  But that's only half because there are unspoken words. There are actions as well.  What's a person say when he says give me all your money and then points a gun?  The pointing of the gun and pointing it at you and what does that say?  The natural and reasonable inference from that is give me all your money or I'll kill you.

Mr. Ranz: Objection, Your Honor.

The Court: Ladies and gentleman of the jury, please disregard the last conclusion.

Mr. Gibson: I think that's a reasonable conclusion for these jurors to draw. The pointing of the gun says something.  What does the person say when he points a gun during an armed robbery?  Isn't that the reasonable inference to be drawn from a person's act in pointing a loaded gun when he's taking someone's property?

Mr. Ranz: Object, Your Honor.

The Court: Overruled.

(Id., Tr. 1456-457).

As a general rule, the prosecutor has "wide latitude" during closing arguments to respond to the defendant's strategies, evidence and arguments.  *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009).  However, it is well-established law that "a prosecutor cannot express his personal opinions before the jury."  *Bates*, 402 F.3d at 644 (quoting *United States v. Galloway*, 316 F.3d 624, 632-33 (6th Cir. 2003)).  Therefore, in this case, because the prosecutor expressed his personal opinions in his closing argument, those remarks were improper.  However, "'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'"  *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (quoting *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

In ruling on Petitioner's direct appeal, the Ohio Supreme Court acknowledged that the prosecutor improperly referred to facts not in evidence during closing argument,

but noted that defense objections to these remarks were sustained. *State v. Raglin*, 699 N.E.2d at 492. The court also noted that the prosecutor was admonished by the court, and the jury was instructed to disregard the prosecutor's remarks. *Id.* The court explained that jury is presumed to have followed the court's instruction. *Id.*

This Court concludes that this decision is not contrary to or an unreasonable application of federal law. The Supreme Court has held: "We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions . . ." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (internal quotation marks and citation omitted) (finding habeas relief not warranted where the prosecutor asked a single question, there was an immediate objection, and the court gave two curative instructions). There is no evidence that the jury was unable to follow the court's instructions and therefore, the likelihood that the remarks would mislead the jury or prejudice the accused is low.

In addition, the remarks were not extensive. The prosecutor's remark about Petitioner's failure to make a statement about the gun accidentally firing was only made once. After the court sustained the defense objection, the prosecutor did review the transcript of the taped confession in detail to illustrate this omission. Regarding the prosecutor's statement about the inference to be drawn from the pointing of a loaded gun, the initial defense objection was sustained, but after the prosecutor explained the basis for his statement, the court overruled the second defense objection. Based on the context in which these statements were made—closing argument—it does not appear that the improper statements were made intentionally. Finally, other evidence against

Petitioner was substantial. Petitioner did not dispute that he approached Bany, robbed him at gun point, and then shot and killed him. Therefore, the Court concludes that the remarks did not rise to a level which rendered Petitioner's trial fundamentally unfair. Accordingly, the Ohio Supreme Court's ruling is not contrary to, or an unreasonable application of, clearly established federal law. Ground Twenty-three is dismissed with prejudice.

10. **Thirtieth Ground for Relief**

Petitioner argues that he was denied his constitutional rights under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments during the mitigation phase because the trial court permitted the prosecutor to introduce inadmissable rebuttal evidence that was unfairly prejudicial to Petitioner's rights to a fair trial and impartial jury. The evidence was a death threat Petitioner made to a corrections officer after being asked to move to another area and Petitioner's attempt to escape out a window of the Hamilton County Justice Center while awaiting trial. The evidence was introduced to rebut Petitioner's unsworn statement expressing remorse for killing Bany.

On this issue, the Ohio Supreme Court ruled as follows:

Appellant contends that he was unfairly prejudiced by the state's presentation of the rebuttal witnesses and that testimony of the corrections officers "injected evidence of a nonstatutory aggravating circumstance, future dangerousness," into the penalty phase. We disagree. The prosecution was entitled to introduce relevant evidence rebutting the existence of any statutorily defined or other mitigating factor first asserted by the defense. *Gumm*, 73 Ohio St. 3d 413, 653 N.E.2d 253, syllabus. Here, that is precisely what occurred. The testimony of the state's rebuttal witnesses was indeed relevant to rebut mitigating evidence that had been offered by the defense that appellant was remorseful for the killing, that he would help or benefit others while serving a term of life imprisonment, and that his life should therefore be spared. The testimony of the state's rebuttal witnesses was not unfairly prejudicial to appellant, was not offered

for an improper purpose, and did not inject a "nonstatutory aggravating factor" into the mix.

*State v. Raglin*, 83 Ohio St.3d at 261.

The Magistrate Judge found there was no constitutional error in this ruling, explaining:

> In essence, the Ohio Supreme Court decided that this evidence was relevant to rebut Mr. Raglin's unsworn statement that he was remorseful or that he would help or benefit others while in prison. The death threat to a corrections officer who had asked him to move to another area was indeed relevant to rebut a claim of remorse. The escape attempt was relevant to his claim he would help or benefit others while imprisoned. Petitioner attempted to characterize these as the introduction of an invalid aggravating circumstance – future dangerousness. If that were a an [*sic*] aggravating circumstance under Ohio law, which it is not, this evidence might have been relevant to prove it. But the fact that evidence might be relevant to prove one proposition does not make it irrelevant to prove another. One might expect that a person who was sincerely remorseful for killing another human being would be slow to threaten death to others; the fact that Petitioner readily threatened death to a corrections officer for what was at most a minor inconvenience casts doubt on the sincerity of his claim of remorse and thus was properly admitted as rebuttal to that claim.

(Doc. 89, at 55).

The Sixth Circuit has explained that no constitutional claim is stated where a state's highest court concludes that no extra-statutory factors were considered at the trial level or independently reweighs the aggravating and mitigating circumstances without reference to the extra-statutory factor improperly relied upon by the lower state courts. *Fox v. Coyle*, 271 F.3d 658, 667 (6th Cir. 2001) (citing *Barclay v. Florida*, 463 U.S. 939 (1983) and *Wainwright v. Goode*, 464 U.S. 78 (1983) (per curiam)); *see also Slagle v. Bagley*, 457 F.3d 501, 521 (6th Cir. 2006) ("consideration of a non-statutory aggravating circumstance, even if contrary to state law, does not violate the [Federal] Constitution."). Accordingly, the Ohio Supreme Court's ruling is not contrary to, or an

unreasonable application of, clearly established federal law.  Ground Thirty is dismissed with prejudice.

### 11. Thirty-Second and Thirty-Six Ground for Relief

Petitioner argues that his rights as guaranteed by the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments were violated when the trial court committed multiple errors during the pretrial, trial and mitigation phases of his capital case. Similarly, Petitioner also argues that his conviction and death sentence are invalid under the federal constitutional guarantees of due process, equal protection, the effective assistance of counsel, and a reliable sentence due to the cumulative errors in the admission of evidence and instructions, and gross misconduct of state officials in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

When presented with the argument regarding the cumulative effect of errors at the trial court level, the Ohio Supreme Court ruled that Petitioner received a fair trial and a fair and reliable sentencing determination.  *State v. Raglin*, 83 Ohio St.3d at 266.

In ruling on these claims, the Magistrate Judge explained that post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief.  In his Supplemental Objections, Petitioner has cited examples of instances where the Supreme Court has considered certain errors in the context of the entire proceedings.  There are certainly some instances where the Supreme Court has instructed courts to view errors during the course of trial to make a determination regarding fundamental fairness.  *See*, *e.g.*, *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (explaining that the relevant question is whether the

48

prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."). However, as the Sixth Circuit has explained, "the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

Accordingly, the Ohio Supreme Court's ruling is not contrary to, or an unreasonable application of, clearly established federal law. Ground Thirty-Two and Thirty-Six are dismissed with prejudice.

### 12. <u>Thirty-Seventh Ground for Relief</u>

Petitioner argues that the trial prosecutors violated *Brady v. Maryland*, 373 U.S. 83 (1963) in failing to inform defense counsel that statements taken by investigating police indicated that Petitioner expressed remorse for his involvement in the shooting death of Michael Bany.

This claim was added by Petitioner in the First Amended Petition. Petitioner argues that the Magistrate Judge erred in determining that this claim is barred by the statute of limitations. However, this Court has already adopted the Magistrate Judge's recommendation on this claim, without objection by Petitioner. (See Doc. 87). Nevertheless, because the Magistrate Judge has addressed Petitioner's argument that his claim is timely filed, the Court will also reconsider the issue.

As was the case with the Second Ground, the Court must apply the Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644, 650 (2005), which held that amendments do not relate back if they assert "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." As part of

this analysis, the Magistrate Judge explained that Petitioner's *Brady* claim did not relate back to Petitioner's Third claim (ineffective assistance for failure to object to closing arguments about lack of remorse) and Twenty-Third claim (prosecutorial misconduct for asking the jury to imagine Petitioner laughing and bragging about the killing):

> The facts on which Petitioner relies for his Brady claim must be about when the evidence he claims was withheld was known the prosecution, whether in fact it was turned over, whether Petitioner knew the relevant facts without disclosure, whether there is a reasonable probability the evidence would have affect the outcome, etc. Those are different litigative facts from the facts necessary to support the ineffective assistance and prosecutorial misconduct claims.

(Doc. 100, at 20). The Court finds no error in the Magistrate Judge's conclusion. Accordingly, the Court finds that the Thirty-Seventh Ground for Relief is barred by the statute of limitations.

### 13. Thirty-Eighth Ground for Relief

Petitioner argues that the trial prosecutors violated *Giglio v. United States*, 405 U.S. 150 (1972) by allowing false testimony that Petitioner had no remorse for his crimes. Petitioner argues that the prosecutors knew the testimony was false because they had the statements of two witnesses who were with Petitioner immediately after the shooting which demonstrated that Petitioner was remorseful.

Like the Thirty-Seventh Ground, this claim was added by Petitioner in the First Amended Petition. Petitioner again argues that the Magistrate Judge erred in determining that this claim is barred by the statute of limitations. While this Court has already adopted the Magistrate Judge's recommendation on this claim (See Doc. 87), the Court will reconsider the issue.

The Magistrate Judge concluded that under *Mayle v. Felix*, 545 U.S. 644 (2005), this claim did not relate back to the original Petition for the same reasons set forth under the Thirty-Seventh Ground. The Court finds no error in the Magistrate Judge's conclusion. Accordingly, the Court finds that the Thirty-Eighth Ground for Relief is barred by the statute of limitations.

## C. Certificate of Appealability

Petitioner seeks a certificate of appealability on his First, Second, Third, Fourth, Sixth, Eighth, Ninth, Twenty-Third, Thirtieth, Thirty-Second, Thirty-Sixth and Thirty-Eighth Grounds for Relief and on his claim that he should have been allowed to reopen discovery on firearms issues. The Magistrate Judge recommends issuing a certificate of appealability on the Fourth, Sixth, Eighth,[15] Ninth, Twenty-Third, Thirtieth, Thirty-Second, and Thirty-Six Grounds for Relief. (Docs. 169, 176). The Magistrate Judge also recommends issuing a certificate of appealability on the question of reopening discovery. The Magistrate Judge recommends denying a certificate of appealability on all remaining grounds.

Petitioner objects to the denial of a certificate of appealability on the First, Second (subpart D), Third, Thirty-Second, Thirty-Sixth, and Thirty-Eighth Grounds for Relief.

The Magistrate Judge fully set forth the standards applicable to the granting of a certificate of appealability, and the same will not be repeated here.

---

[15]In the R&R, the Magistrate Judge inadvertently labeled this Ground for Relief as the "Seventh" Ground for Relief. (Doc. 169, at 25).

1.  **First Ground for Relief**

To summarize the Magistrate Judge's conclusions as to the First Ground: (1) after considering the impact of *Massaro v. United States*, 538 U.S. 500 (2003), jurists of reason would not find it debatable as to whether the Ohio criminal *res judicata* rule is an adequate and independent state ground; (2) certificates of appealability should not issue on the questions of whether the First District Court of Appeals misapplied Ohio's *res judicata* doctrine to the sub-claims of ineffective assistance of trial counsel; (3) reasonable jurists would not find it debatable as to whether Petitioner has shown ineffective assistance of appellate counsel as cause and prejudice to cure the procedural default of his ineffective assistance of counsel claims; and (4) Petitioner cannot rely on ineffective assistance of post-conviction counsel to excuse cause for procedural default.

To begin, the Court concludes that jurists of reason would not find it debatable as to whether the Ohio criminal *res judicata* rule as an adequate and independent state ground.  Petitioner relies on *Massaro v. United States*, 538 U.S. 500 (2003), which held that a federal defendant could raise an ineffective-assistance-of-counsel claim in a collateral proceeding under 28 U.S.C. § 2255, even though the petitioner could have raised the claim on direct appeal.  As the Magistrate Judge explained, *Massaro* addressed the post-conviction process for federal defendants.  The Supreme Court distinguished its holding from that which would be followed by states, by acknowledging that a "growing majority of state courts now follow the rule we adopt today."  *Massaro*, 538 U.S. at 508.

While the Sixth Circuit has not specifically addressed whether *Massaro* sets forth a constitutional rule applicable to the States, other federal circuit courts have concluded that *Massaro* only applies to federal convictions.  *See Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005) (explaining that *Massaro* "is a rule of practice for federal judges in federal criminal cases . . . "); *Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003) (stating that "*Massaro* is not a constitutional decision, and by its own language it did not extend its rule beyond § 2255").  Moreover, after *Massaro*, the Sixth Circuit has repeatedly held that Ohio's doctrine of *res judicata* in criminal cases is an adequate and independent state ground.  *See*, *e.g*, *Hanna v. Ishee*, 694 F.3d 596, 614 (6th Cir. 2012).  Therefore, the Court concludes that it is not debatable as to whether *Massaro* is applicable in the § 2254 context.

In addition, the Court rejects Petitioner's argument that the Supreme Court's decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) casts doubt on whether Ohio's *res judicata* rule is not an adequate and independent state ground.  As the Magistrate Judge explained in the Supplemental R&R on Petitioner's Motion for Certificate of Appealability, *Martinez* actually lends support for Ohio's procedural framework, which allows evidence *dehors* the record to be supplied on ineffective assistance of counsel claims in the trial court.  (See Doc. 176, at 4).

Next, Petitioner argues that the Magistrate Judge did not address his argument that Ohio's *res judicata* rule violates *Strickland v. Washington*, 466 U.S. 668 (1984) because it deprives post-conviction petitioners of the opportunity to demonstrate that the cumulative prejudice resulting from all of counsel's errors warrants relief.  This Court has previously rejected a similar argument:

Bays next claims "[t]here is no indication that the Ohio Court of Appeals ever considered *Strickland's* prejudice requirement in cumulative terms." (COA Objections, Doc. No. 139, PageID 2299.) As proof of this proposition, Bays criticizes the appellate court for splitting its consideration of Bays' ineffective assistance of trial counsel claims into those based on the trial court record and those dependent on evidence *dehors* the record when it decided his direct appeal and his first post-conviction appeal on the same day. *Id.* at PageID 2300. That is, of course, precisely what Ohio law requires: claims which can be decided based on the direct appeal record must be raised on direct appeal or they are forfeited under Ohio's criminal *res judicata* doctrine. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). That doctrine has been repeatedly held to be an adequate and independent state basis of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160–61 (6th Cir. 1994) (citation omitted); *Van Hook v. Anderson*, 127 F.Supp.2d 899, 913 (S.D. Ohio 2001).

*Bays v. Warden, Ohio State Penitentiary*, 3:08-CV-076, 2012 WL 6728346, *6 (S.D. Ohio Dec. 28, 2012) report and recommendation adopted, C-3:08-CV-076, 2013 WL 361062 (S.D. Ohio Jan. 29, 2013).

Moreover, Petitioner's case is distinguishable from the Tenth Circuit case upon which he relies: *Cargle v. Mullin*, 317 F.3d 1196 (10th Cir. 2003). In *Cargle*, the state court rejected one of the petitioner's ineffective assistance of counsel claims on the merits. *Id.* at 1212. While the state court found that counsel's performance fell below acceptable levels of professionalism, the court denied relief because the petitioner could not show that this error would likely have had an effect on the outcome of the proceeding. *Id.* Upon habeas review, the Tenth Circuit found that this prejudice determination was neither contrary to nor an unreasonable application of *Strickland*, but that "[g]iven the [state appeal court's] procedural rejection of nearly all of petitioner's allegations of ineffectiveness, an adequate assessment of prejudice arising from the

54

ineffectiveness of petitioner's counsel has never been made in the state courts, so we have no state decision to defer to under § 2254(d) on this issue." *Id.*

Here, in contrast, there was no finding of deficient performance.  On collateral review the Ohio Court of Appeals held that all of Petitioner's ineffective assistance of counsel claims were barred by *res judicata* and did not reach the merits of any claim. *State v. Raglin*, 1999 WL 420063, at *3-6.  Petitioner argued to the court that "the cumulative effect of his counsel's ineffective representation rendered his trial unconstitutional."  *Id.* at *6.  However, the Ohio Court of Appeals held: "Insofar as we have rejected each of Raglin's claims of ineffective assistance of counsel, we also reject this claim." *Id.*

The Court concludes that jurists of reason would not find it debatable as to whether this is an unreasonable application of *Strickland*.  As the Sixth Circuit has explained, the two-part test for evaluating ineffective assistance of counsel under *Strickland*, is not a set of "mechanical rules, [but] rather principles to guide the process of deciding whether the challenged proceeding was fundamentally fair."  *Smith v. Mitchell*, 348 F.3d 177, 199 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 696).  "Thus, the court deciding an ineffective assistance claim need not approach the inquiry in the same order or even address both prongs if the defendant fails to establish one."  *Id.* at 199-200.  Therefore, it was not unreasonable for the Ohio Court of Appeals reject the claim that cumulative prejudice resulted from the claimed errors.

Next, Petitioner argues that the Ohio Court of Appeals misapplied the *res judicata* doctrine, because Petitioner supported his claims with evidence outside the record and thus could not have raised the claims in his direct appeal.  However, the

Magistrate Judge addressed this argument for each of the subclaims and concluded that no certificate should be issued because Petitioner has not shown that the Ohio Court of Appeals misapplied Ohio's doctrine of *res judicata*.

Turning to Petitioner's arguments regarding ineffective assistance of appellate counsel as cause and prejudice to cure the procedural default of his ineffective assistance of trial counsel claims, the Magistrate Judge noted that Petitioner effectively abandoned this claim by failing to move for an evidentiary hearing. Petitioner points out that the Magistrate Judge has recommended granting a certificate of appealability on his freestanding claim of ineffective assistance of appellate counsel. The Court recognizes that this argument has some merit. *See Martin v. Mitchell*, 280 F.3d 594, 606 (6th Cir. 2002) ("Inasmuch as the merits of the ineffective assistance of appellate counsel arguments are hopelessly intertwined with the procedural default arguments regarding the merit claims upon which we granted review, our grant of review on procedural default encompasses these claims."). The Court finds that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, the Court grants a certificate of appealability on the decision finding the First Ground, subparts B.4, C.1, C.2, D.1, and D.2.a are procedurally defaulted.

As to the claim of ineffective assistance of trial counsel in subpart D.3 (the failure to object to prosecutorial misconduct), which was not raised in any state court proceeding, the Court concludes that it is not debatable as to whether *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) permits Petitioner to rely on ineffective assistance of post-

56

conviction counsel as cause for procedural default of his claim of ineffective assistance of trial counsel.

Therefore, the Court grants a certificate of appealability on the decision finding the First Ground, subparts B.4, C.1, C.2, D.1, and D.2.a as procedurally defaulted, but does not grant a certificate of appealability on the decision finding the First Ground, subpart D.3 is procedurally defaulted.

**2.  Second Ground for Relief, subpart D**

The Magistrate Judge recommended dismissing this claim as being barred by the statute of limitations under *Mayle v. Felix*, 545 U.S. 644 (2005).  Without objection from Petitioner, the Court adopted that recommendation.  However, in the alternative, the Court found that this claim does not relate back to the Third and Twenty-Third Grounds. Petitioner argues that both the conclusion that he waived review and whether the claim relates back to the original Petition are debatable among reasonable jurists.[16]

In support of his argument that a certificate of appealability should issue on the issue of whether his waiver should be excused, Petitioner points to the strained relationship between himself and his former counsel.  Petitioner also explains that while he initially failed to object, on subsequent occasions, he has filed objections and the issue has been fully briefed.

The Court adopts the Magistrate Judge's conclusion that it is not debatable among reasonable jurists that Petitioner waived his objections; but also adopts the Magistrate Judge's conclusion that a certificate of appealability should issue on the question of whether the claim in Second Ground, subpart D shares a "common core of

---

[16]Petitioner also argues that the merits of subpart D are debatable among reasonable jurists, but there has not been a ruling on the merits of the claim.

operative facts" with the claims in the Third or Twenty-Third Grounds.  The Court finds that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### 3.  Third Ground for Relief

The Magistrate Judge recommended dismissing this claim as being procedurally defaulted.  While Petitioner objects to the Court raising the defense of procedural default *sua sponte*, the Court finds that jurists would not find it debatable as to whether the Court properly considered Petitioner's procedural default.

However, as with the First Ground, the Court recognizes that the procedural default argument is intertwined with the merits of Petitioner's ineffective assistance of counsel claim in the Fourth Ground.  Because the Court has granted a certificate of appealability in the Fourth Ground, the Court also grants a certificate of appealability as to whether Petitioner has established cause and prejudice to excuse the procedural default.  The Court finds that "jurists of reason would find it debatable as to whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether this Court was correct in its procedural ruling." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### 4.  Thirty-Eighth Ground for Relief

Along with the Second Ground, subpart D, the Magistrate Judge recommended dismissing this claim as being barred by the statute of limitations under *Mayle v. Felix*, 545 U.S. 644 (2005).  Like the Second Ground, subpart D, the Court adopts the

Magistrate Judge's conclusion that reasonable jurists would find it debatable as to whether the Thirty-Eighth Ground shares a "common core of operative facts" with the claims in the Third or Twenty-Third Grounds.

### D. Second Amended Petition

In his Motion to Amend, Petitioner seeks to add the following Grounds to the First Amended Petition:

> **Thirty-Ninth Ground for Relief:** Raglin's execution will violate the Eighth Amendment because Ohio's lethal injection protocol will result in cruel and unusual punishment.

> **Fortieth Ground for Relief:** Raglin's execution will violate the Fourteenth Amendment because Ohio's lethal injection protocol will deprive him of equal protection of the law.

(Doc. 172).  The Magistrate Judge granted Petitioner's Motion.  (Doc. 177). Respondent objects to that ruling, arguing that Petitioner's claims are not cognizable in habeas and any claims are barred by the statute of limitations.

The Court finds that the Magistrate Judge's decision is not contrary to law.  The Sixth Circuit has held that challenges to Ohio's legal injection procedures are cognizable in a habeas petition.  *Adams v. Bradshaw*, 644 F.3d 481, 482-83 (6th Cir. 2011); *see also Shank v. Mitchell*, 2:00-CV-17, 2013 WL 3208554 (S.D. Ohio June 24, 2013) (concluding that petitioner's claims properly sound in habeas corpus); *but see Treesh v. Robinson*, 1:12cv2322, 2012 WL 5617072 (N.D. Ohio Nov. 15, 2012) (finding claims not cognizable in habeas).  This Court has also recognized that "[t]he Sixth Circuit has taken the position that the statute of limitations governing method-of-execution challenges brought via § 1983 begins anew any time Ohio adopts a new written protocol." *Chinn v. Bradshaw*, 3:02-CV-512, 2012 WL 2674518 (S.D. Ohio July 5,

2012) (citing *Cooey v. Strickland*, 604 F.3d 939, 942 (6th Cir. 2010)).  This Court has applied this reasoning to method-of-execution challenges brought in habeas.  *Id.*  Here, Petitioner claims that his claims could not have been raised previously because Ohio adopted its latest written execution policy on September 18, 2011.  This Court concludes that because Petitioner's Motion to Amend was filed on March 8, 2012, Petitioner filed his claims within the one-year statute of limitations found at 28 U.S.C. § 2244(d)(1)(D).  Accordingly, Respondent's Objections to the Magistrate Judge's Decision and Order (Doc. 177) and Supplemental Opinion and Recommendations (Doc. 188) granting Petitioner's Motion for Leave to File a Second Amended Petition are OVERRULED.

### E. Conclusion

Pursuant to 28 U.S.C. 636(b) and Fed. R. Civ. P. 72(b) the Court has conducted a review of the record in this case and finds that Petitioner's and Respondent's Objections are not well taken.  Accordingly, it is hereby **ORDERED** that:

1. The Magistrate Judge's R&R (Doc. 89) and Amended Supplemental R&R (Doc. 100) regarding Petitioner's First Amended Petition are **ADOPTED**;

2. The Magistrate Judge's R&R (Doc. 169) and Supplemental R&R (Doc. 176) regarding Petitioner's Certificate of Appealability is **ADOPTED in PART**.  Upon Petitioner's objections, a Certificate of Appealability shall issue as follows:

   a. a certificate of appealability shall issue on the decision finding the First Ground, subparts B.4, C.1, C.2, D.1, and D.2.a is procedurally defaulted;

   b. a certificate of appealability shall not issue on the decision finding the First Ground, subpart D.3 is procedurally defaulted;

   c. a certificate of appealability shall issue on the decision finding  that the claim in the Second Ground, subpart D does not share a "common core of operative facts" with the claims in the Third or

Twenty-Third Grounds;

    d.  a certificate of appealability shall issue on the decision finding the Third Ground as procedurally defaulted;

    e.  a certificate of appealability shall issue on the Fourth, Sixth, Eighth, Ninth, Twenty-Third, Thirtieth, Thirty-Second and Thirty-Six Grounds

    f.  a certificate of appealability shall issue on the decision finding that the claim in the Thirty-Eighth Ground does not share a "common core of operative facts" with the claims in the Third or Twenty-Third Grounds;

    g.  a certificate of appealability shall issue on the question of reopening discovery;

3. Respondent's Objections to the Magistrate Judge's Decision and Order (Doc. 177) and Supplemental Opinion and Recommendations (Doc. 188) granting Petitioner's Motion for Leave to File a Second Amended Petition are **OVERRULED**; and

4. Petitioner shall file his Second Amended Petition within **fourteen (14) days** of entry of this Order.  The Second Amended Petition shall only include those claims previously identified as:

**Thirty-Ninth Ground for Relief:** Raglin's execution will violate the Eighth Amendment because Ohio's lethal injection protocol will result in cruel and unusual punishment.

**Fortieth Ground for Relief:** Raglin's execution will violate the Fourteenth Amendment because Ohio's lethal injection protocol will deprive him of equal protection of the law.

5. All other grounds for relief are **DISMISSED**.

**IT IS SO ORDERED.**

                        *s/Michael R. Barrett*
                     JUDGE MICHAEL R. BARRETT