# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

WALTER RAGLIN,

        Petitioner,

  -vs-

BETTY MITCHELL, Warden,

        Respondent.

:

:

:

:

Case No. 1:00-cv-767

District Judge Michael R. Barrett
Magistrate Judge Michael R. Merz

---

# DECISION AND ORDER

---

This capital habeas corpus case is before the Court on Petitioner's Renewed Motion for Leave to File an Amended and Supplemental Petition Raising Lethal Injection Grounds for Relief ("Renewed Motion," ECF No. 272).

**Procedural History**

On December 27, 1995, Petitioner Walter Raglin murdered Michael Bany in Cincinnati, Ohio. After conviction and imposition of a sentence of death, Raglin appealed to the Ohio Supreme Court which affirmed the conviction and sentence. *State v. Raglin*, 83 Ohio St. 3d 253 (1998), *cert. den.*, 525 U.S. 1180 (March 1, 1999). After denial of certiorari, Raglin filed his Petition in this Court September 13, 2000 (Doc. No. 14) and a First Amended Petition on March 8, 2005 (ECF No. 76). On August 5, 2005, District Judge Rice dismissed the Second, Thirty-

Seventh, and Thirty-Eighth Grounds for Relief (ECF No. 87). On February 2, 2006, the Magistrate Judge recommended dismissing the First Amended Petition with prejudice (ECF No. 89). Petitioner filed a Second Amended Petition on April 17, 2012 (ECF No. 178).

In overruling Respondent's Objections to the proposed second amended petition, Judge Barrett wrote:

> The Sixth Circuit has held that challenges to Ohio's legal injection procedures are cognizable in a habeas petition. *Adams v. Bradshaw*, 644 F.3d 481, 482-83 (6th Cir. 2011); see also *Shank v. Mitchell*, 2:00-CV-17, 2013 WL 3208554 (S.D. Ohio June 24, 2013) (concluding that petitioner's claims properly sound in habeas corpus); but see *Treesh v. Robinson*, 1:12cv2322, 2012 WL 5617072 (N.D. Ohio Nov. 15, 2012) (finding claims not cognizable in habeas). This Court has also recognized that "[t]he Sixth Circuit has taken the position that the statute of limitations governing method-of-execution challenges brought via § 1983 begins anew any time Ohio adopts a new written protocol." *Chinn v. Bradshaw*, 3:02-CV-512, 2012 WL 2674518 (S.D. Ohio 2012) (citing *Cooey v. Strickland*, 604 F.3d 939, 942 (6th Cir. 2010)). This Court has applied this reasoning to method-of-execution challenges brought in habeas. Id. Here, Petitioner claims that his claims could not have been raised previously because Ohio adopted its latest written execution policy on September 18, 2011. This Court concludes that because Petitioner's Motion to Amend was filed on March 8, 2012, Petitioner filed his claims within the one-year statute of limitations found at 28 U.S.C. § 2244(d)(1)(D).

(ECF No. 198, PageID 2365-66 (Sept. 13, 2013).) In the same Order, Judge Barrett dismissed all grounds for relief in the First Amended Petition, but allowed Raglin to file a second amended petition adding the following claims:

> **Thirty-Ninth Ground for Relief:** Raglin's execution will violate the Eighth Amendment because Ohio's lethal injection protocol will result in cruel and unusual punishment.

> **Fortieth Ground for Relief:** Raglin's execution will violate the Fourteenth Amendment because Ohio's lethal injection protocol will deprive him of equal protection of the law.

*Id.* at PageID 2367. Almost immediately, Raglin conceded these new grounds for relief were moot and they were dismissed on that basis without objection (ECF Nos. 204, 205). In the meantime, Raglin had sought and received a stay of consideration of his lethal injection claims (ECF Nos. 200, 203). After much back and forth on scheduling, the Magistrate Judge on April 28, 2016, denied Mr. Raglin's Renewed Motion for Leave to File a Third Amended Petition without prejudice to its renewal within thirty days of the mandate in the Adams habeas litigation. The instant Motion was filed consistent with that schedule.

**Raglin's Proposed Third Amended Petition**

Raglin's proposed Third Amended Petition contains forty-five grounds for relief as follows:

> **FIRST GROUND FOR RELIEF:** Walter Raglin was denied his right to the effective assistance of counsel at the pretrial and trial phases of his capital trial in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments.

> **SECOND GROUND FOR RELIEF:** Walter Raglin was denied his right to the effective assistance of counsel at the mitigation phase of his capital trial in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments.

> **THIRD GROUND FOR RELIEF:** Walter Raglin was denied his right to the effective assistance of counsel under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments when his attorneys failed to object and properly preserve numerous errors.

> **FOURTH GROUND FOR RELIEF:** Walter Raglin was denied his right to the effective assistance of counsel on his direct appeals in violation of the Sixth and Fourteenth Amendments to the United States

> **FIFTH GROUND FOR RELIEF:** Walter Raglin's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United

States Constitution were violated when the trial court admitted into evidence at the trial phase of the capital proceedings his inculpatory statement made to members of the Cincinnati Police Department on January 3, 1996, because his statement was the fruit of an illegal arrest.

**SIXTH GROUND FOR RELIEF:** Walter Raglin's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated when the trial court failed to suppress his statement made to members of the Cincinnati Police Department on January 3, 1996, because his statement was made during a custodial interrogation following an unfulfilled request for counsel. *Miranda v. Arizona*, 384 U.S. 436 (1966); *Edwards v. Arizona*, 451U.S. 477 (1981); *Minnick v. Mississippi*, 489 U.S. 146 (1990).

**SEVENTH GROUND FOR RELIEF:** Walter Raglin's rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated when the trial court failed to suppress his statement made to members of the Cincinnati Police Department on January 3, 1996, because his statement was involuntarily given.

**EIGHTH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment Rights were violated when the judge refused to instruct the jury at the end of the trial phase that it could find Mr. Raglin guilty of involuntary manslaughter, a lesser included offense of aggravated murder.

**NINTH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights were violated when the judge erroneously instructed the jury at the end of the trial phase on the issues of causation, foreseeability, intent, and purpose.

**TENTH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights were violated when the judge failed to properly instruct the jury at the end of the trial phase as to the definitions for reasonable doubt, beyond a reasonable doubt and circumstantial evidence.

**ELEVENTH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that its verdict of death merely constituted a

recommendation to the bench and that the judge would make the final decision with respect to the imposition of the death penalty.

**TWELFTH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge failed to properly instruct the jury at the end of the mitigation phase as to the definition of reasonable doubt.

**THIRTEENTH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it should consider all the evidence admitted during the trial phase of the proceedings with respect to its deliberations following the mitigation phase of the trial.

**FOURTEENTH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge failed to properly instruct the jury at the end of the mitigation phase as to the definition of the mitigating circumstances that the jury should consider during its deliberations.

**FIFTEENTH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it could consider any other factors that are relevant to the issue of whether it should recommend that Walter Raglin be sentenced to death.

A. The trial court's mitigation phase instructions violated Raglin's rights by permitting the jury to consider any factor it desired in determining the appropriate penalty in his case.

B. The trial court's mitigation phase instructions violated

**SIXTEENTH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it could consider the killing itself as a factor relevant to the issue of whether it should recommend that Walter Raglin be sentenced to death and by instructing the jury that the killing itself was an aggravating circumstance.

**SEVENTEENTH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights

were violated when the judge instructed the jury at the end of the mitigation phase in such a manner that the jury could conclude that it had to consider and reject a recommendation as to the imposition of death before it could consider either life sentence option.

**EIGHTEENTH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge instructed the jury at the end of the mitigation phase that it could consider the nature and circumstances of the offense as a mitigating factor in its determination of whether it should recommend that Walter Raglin be sentenced to death.

**NINETEENTH GROUND FOR RELIEF:** Walter Raglin's Firth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge refused to instruct the jury at the end of the mitigation phase that it could consider Walter Raglin's remorse, residual doubt and cooperation with law enforcement as mitigating factors it could consider in its determination of whether it should recommend that Walter Raglin be sentenced to death.

**TWENTIETH GROUND FOR RELIEF:** Walter Raglin's Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights were violated when the judge refused to instruct the jury at the end of the mitigation phase that it could consider the sentencing alternative of life without parole.

**TWENTY-FIRST GROUND FOR RELIEF:** Walter Raglin was denied his rights to an impartial and disinterested jury due to the bias of Juror Tara Veesart in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**TWENTY-SECOND GROUND FOR RELIEF:** Walter Raglin was denied his Sixth Amendment rights because juror Tara Veesart was influenced by occurrences from outside of the courtroom, out of the presence of the jury and without the rights of confrontation, cross- examination, and of counsel. These occurrences were communicated to, and thereby prejudicially influenced, other members of Walter Raglin's jury in violation of his rights under the Sixth and Fourteenth Amendment to the United States Constitution.

**TWENTY-THIRD GROUND FOR RELIEF:** Walter Raglin was denied his constitutional rights to a fair and impartial trial under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth

Amendments as a result of prosecutorial misconduct during both phases of his capital proceedings.

**TWENTY-FOURTH GROUND FOR RELIEF:** Walter Raglin was denied his rights in violation of the Eighth Amendment, the due process and equal protection clauses of the Fifth and Fourteenth Amendments and the "Fair cross section" requirement for the Sixth Amendment to the United States Constitution because procedures used by the Hamilton County Court of Common Pleas and the Hamilton County Prosecutor's office to discriminate against African-Americans result in the imposition of the death sentence with much greater frequency upon those who kill white persons than those who kill African-Americans.

**TWENTY-FIFTH GROUND FOR RELIEF:** Walter Raglin was denied his rights under the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments and the "Fair Cross Section" requirement of the Sixth Amendment to the United States Constitution because the process of selecting grand jurors, grand jury forepersons, and petit jurors in Hamilton County was tainted in 1996 due to consideration of the factor of race in the drawing, selection and impanelment of grand jurors and petit jurors; and due to consideration of the factors of race and gender in the selection of grand jury forepersons.

**TWENTY-SIXTH GROUND FOR RELIEF:** Walter Raglin was denied his rights under the equal protection clause because the prosecutors used their peremptory challenges to exclude members from the jury based on their race.

**TWENTY-SEVENTH GROUND FOR RELIEF:** Walter Raglin's constitutional rights as guaranteed by the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments were violated when the trial court, in its decision to impose a sentence of death, improperly considered and weighed invalid or improper aggravating circumstances; failed to specify the reasons why aggravation outweighs mitigation beyond a reasonable doubt; and failed to consider and weigh valid mitigating factors presented by the defense; and when such error was not properly addressed on appeal.

    A. The trial court improperly considered an uncharged and unproven statutory aggravating factor in sentencing Mr. Raglin to death.

B. The trial court's failure to state reasons why aggravation outweighed mitigation.

C. The trial court failed to consider and weigh valid mitigating factors presented by the defense.

**TWENTY-EIGHTH GROUND FOR RELIEF:** The State failed to prove beyond a reasonable doubt the essential element of purpose to kill and Mr. Raglin's conviction is contrary to the manifest weight of the evidence. Therefore, Walter Raglin's death sentence must be vacated pursuant to the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

**TWENTY-NINTH GROUND FOR RELIEF:** Walter Raglin was denied his constitutional rights to a fair trial and impartial jury under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments during the mitigation phase because the trial court permitted the prosecutor to introduce irrelevant and highly prejudicial evidence from the trial phase of the capital proceedings.

**THIRTIETH GROUND FOR RELIEF:** Walter Raglin was denied his constitutional rights under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments during the mitigation phase because the trial court permitted the prosecutor to introduce inadmissible rebuttal evidence that was unfairly prejudicial to Mr. Raglin's rights to a fair trial and impartial jury.

**THIRTY-FIRST GROUND FOR RELIEF:** Walter Raglin was denied his constitutional rights to a fair trial and impartial jury under the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments when the trial court overruled trial counsel's challenge to the state's use of peremptory challenges under *Batson v. Kentucky*

**THIRTY-SECOND GROUND FOR RELIEF:**·Walter Raglin's rights as guaranteed by the Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments were violated when the trial court committed multiple errors during the pretrial, trial and mitigation phases of his capital case.

**THIRTY-THIRD GROUND FOR RELIEF:** The proportionality review that the appellate courts must conduct pursuant to Ohio Revised Code §2929.05 is fatally flawed. Therefore, Walter Raglin's death sentence must be vacated pursuant to the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

**THIRTY-FOURTH GROUND FOR RELIEF:** Walter Raglin's death sentence is constitutionally infirm because Ohio's capital punishment system operates in an arbitrary, capricious and discriminatory manner in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments. Additionally, Walter Raglin's death sentence is constitutionally infirm because within Hamilton County, Ohio, the death penalty is selectively imposed, rendering the penalty as applied in Hamilton County, arbitrary and capricious on the one hand and the product of racial discrimination on the other.

**THIRTY-FIFTH GROUND FOR RELIEF:** Walter Raglin's death sentence is constitutionally infirm because the amendments to the Ohio Revised Code enacted by the Ohio General Assembly to facilitate the changes in the Ohio Constitution governing capital cases, violates the rights of capital defendants in general and Raglin, in particular, under the Fifth, Sixth, Eighth and Fourteenth Amendments.

**THIRTY-SIXTH GROUND FOR RELIEF***:* Walter Raglin's conviction and death sentence are invalid under the federal constitutional guarantees of due process, equal protection, the effective assistance of counsel, and a reliable sentence due to the cumulative errors in the admission of evidence and instructions, and gross misconduct of state officials in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

**THIRTY-SEVENTH GROUND FOR RELIEF:** *Brady* claim

**THIRTY-EIGHTH GROUND FOR RELIEF:** *Giglio* claim.

**THIRTY NINTH GROUND FOR RELIEF:** Raglin's execution will violate the Eighth Amendment because Ohio's lethal injection protocol will result in cruel and unusual punishment.

**FORTIETH GROUND FOR RELIEF:** Raglin's execution will violate the Fourteenth Amendment because Ohio's lethal injection protocol will deprive him of equal protection of the law.

**FORTY-FIRST GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Raglin because the only manner available under the law to execute him violates his Eighth Amendment rights.

A. Any drug DRC can procure to use to execute Raglin via lethal injection has a substantial, objectively intolerable risk of causing unnecessary, severe pain, suffering, degradation, humiliation, and/or disgrace in violation of the Eighth Amendment, and Ohio has no other manner of execution available to execute Raglin that complies with the Constitution.

B. Any drug DRC can procure to use to execute Raglin via lethal injection poses an objectively intolerable risk of causing a lingering and/or undignified death in violation of the Eighth Amendment, and Ohio has no other manner of execution available to execute Raglin that complies with the Constitution.

C. The lack of legally obtainable, effective drugs to conduct Raglin's lethal-injection execution, and the reality that Ohio has no other manner of execution available to execute Raglin that complies with the Constitution, will cause Raglin psychological torture, pain and suffering in violation of the Eighth Amendment.

D. The unavoidable variations inherent in Ohio's lethal-injection system and DRC's continued and consistent inability to properly administer its execution protocols present a substantial, objectively intolerable risk of serious harm to Raglin in violation of the Eighth Amendment, and Ohio has no other manner of execution available to execute Raglin that complies with the Constitution.

E. Raglin's unique, individual physical and/or mental characteristics will cause any execution by lethal injection under Ohio law to violate the Eighth Amendment, and Ohio has no other manner of execution available to execute Raglin that complies with the Constitution.

**FORTY-SECOND GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Raglin because the only manner available for execution violates the Due Process Clause or the Privileges or Immunities Clause of the Fourteenth Amendment.

A. Execution by lethal injection under Ohio law will deny Raglin's interests in expecting and receiving a quick and painless death in violation of the Due Process Clause of the Fourteenth Amendment, and Ohio has no other

manner of execution available to execute Raglin that complies with the Constitution.

B. Execution by lethal injection under Ohio law will deny Raglin's interests in expecting and receiving a humane and dignified death in violation of the Due Process Clause of the Fourteenth Amendment, and Ohio has no other manner of execution available to execute Raglin that complies with the Constitution.

C. Raglin's execution by lethal-injection under Ohio law will be a human experiment on a non-consenting prisoner in violation of the Due Process or Privileges or Immunities Clauses of the Fourteenth Amendment, and Ohio has no other manner of execution available to execute Raglin that complies with the Constitution.

.

**FORTY-THIRD GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Raglin because the only manner of execution available for execution under Ohio law violates the Equal Protection Clause of the Fourteenth Amendment.

A. Equal Protection – Fundamental Rights

1.     Underlying constitutional violations in Ohio's lethal-injection system substantially burden Raglin's fundamental rights, and Ohio has no other manner of execution available to execute Raglin that complies with the Constitution.

2.     Consistent and/or unavoidable variation inherent in Ohio's lethal-injection system substantially burdens Raglin's fundamental rights, and Ohio has no other manner of execution available to execute Raglin that comply with the Constitution.

B. Equal     Protection     –     "Class-of-One"     Disparate Treatment.

**FORTY-FOURTH GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Raglin because Ohio's violations of federal law constitute a fundamental defect in the execution process, and the only manner of execution available for execution depends on state execution laws that are preempted by federal law.

A. DRC's actions in obtaining execution drugs, its import, purchase, possession, dispensing, distribution and/or administration (and any other terms of art under the CSA) of those drugs violate the CSA.

    1.      The Ohio lethal-injection statute and DRC's execution protocols, as written and as implemented, purport to permit DRC to obtain controlled substances used in executions without a valid prescription, in violation of the CSA and DEA regulations.

    2.      The Ohio lethal-injection statute and DRC's execution protocols, as written and as implemented, purport to authorize DRC, Central Pharmacy, and Southern Ohio Correctional Facility to provide controlled substances to Drug Administrators in contravention of the CSA and DEA regulations.

    3.      DRC's execution protocols and the Ohio execution statute are preempted by the federal CSA.

B. DRC's actions in obtaining execution drugs, its import, purchase, possession, dispensing, distribution and/or administration (and any other terms of art under the FDCA) of those drugs contravene the FDCA because those drugs used in an execution are unapproved drugs and/or misbranded drugs and/or constitute unapproved Investigational New Drugs.

    1.      Drugs that are considered Schedule I drugs can never be used as execution drugs in compliance with FDCA and/or the CSA.

    2.      Thiopental sodium can never be used as an execution drug in compliance with the FDCA.

    3.      No drug can ever be lawfully used to carry out a lethal-injection human execution because no drug has ever been approved by FDA for the specific purpose of causing death from lethal injection during a human execution or for the purpose of causing a quick and painless death in a human execution.

4. DRC's use of unapproved new drugs in a lethal- injection execution contravenes federal law because it is not subject to an Investigational New Drug Application.

5. DRC's execution protocols and the Ohio execution statute are preempted by the federal FDCA.

C. DRC's actions in obtaining compounded controlled substances for use as execution drugs, its import, purchase, possession, dispensing, distribution and/or administrations (and any other terms of art under the CSA or FDCA) of those drugs violate federal law.

1. DRC's actions in obtaining compounded execution drugs, its procurement, obtaining, importing, purchasing, dispensing, distributing, possessing and/or administration (and any other terms of art under the CSA or FDCA) of those drugs violates federal law because compounding drugs for use in an execution violates 21 U.S.C. § 353a and/or § 353b.

2. DRC's actions in obtaining compounded execution drugs, its procuring, obtaining, importing, purchasing, dispensing, distributing, possessing and/or administering (and any other terms of art under the CSA or FDCA) of compounded controlled substances violate various other provisions of the federal drug laws.

3. DRC's execution protocols and the Ohio execution statute are preempted by federal law.

D. The violations of federal statutory law committed by the State of Ohio will amount to a fundamental defect in the execution process warranting habeas corpus relief.

**FORTY-FIFTH GROUND FOR RELIEF:** Walter Raglin's Sixth Amendment Right To Trial By Jury Was Violated When The Trial Court, In Its Decision To Impose The Death Penalty, Improperly Considered And Weighed An Invalid Aggravating Circumstance And When The Appellate Court Reweighed The Aggravating Circumstances And Mitigating Factors And Imposed

> A Sentence Of Death After Its Own Factual Findings That Were
> Necessary To Make Raglin Eligible For The Death Penalty.

(ECF No. 272-1.)

In support of his Renewed Motion, Raglin purports to

> fully incorporate[s] his Renewed Motion For Leave To File His
> Third Amended and Supplemental Petition (ECF No. 247), his
> Supplemental Memorandum In Support of that motion (ECF No.
> 256), and the additional arguments he offered in Exhibit 1 to his
> motion for leave to file a reply regarding his supplemental
> memorandum (ECF No. 259-1, PageID 3580–84).

(ECF No. 272, PageID 3675.)  As this Court has recently written regarding a similar attempted

incorporation by reference, "[n]othing in the Local Rules of this Court or the Federal Rules of

Civil Procedure authorizes a party to compel this Court to review again hundreds of pages of

dense argument made earlier in the case in different litigation contexts and the Court refuses to

do so." *Smith v. Pineda*, 2017 U.S. Dist. LEXIS 50346, *1 (S.D. Ohio Apr. 3, 2017).  That same

refusal applies here.

Raglin's Renewed Motion focuses principally on the cognizability of his lethal injection

claims in habeas corpus in light of *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. 2016)(*Adams III*).

He asserts that it is not the same as an attack on the current lethal injection protocol such as

might be made in an action under 42 U.S.C. § 1983 because it "attacks the validity of Raglin's

death sentence judgment. . ."  (ECF No. 272, PageID 3676).  Nonetheless, it "will necessarily

encompass the facts relevant to what the State intends to do under the current execution protocol.

. ." *Id.*  Raglin notes that Ohio adopted a new protocol October 7, 2016, and asserts "[t]he current

protocol gives rise to new claims arising from differences between it and the superseded protocol

underlying Raglin's prior claims, as well as making Raglin's prior claims newly ripe in

accordance with the new protocol." *Id.* at PageID 3677.  Conversely, Raglin says, his claims are

not so broad as to be claims that lethal injection is per se unconstitutional. *Id.* at 3678. Finally, he notes that his claims will include his own health characteristics, showing why lethal injection is unconstitutional as applied to him. *Id.* at PageID 3679.

His habeas corpus lethal injection claims are different from possible § 1983 claims, Raglin asserts, because success in a civil rights case would only relate to a particular method of lethal injunction and would not declare his death sentence unconstitutional and therefore invalid, relief which can only be obtained in habeas corpus. *Id.* at PageID 3681.

Raglin concludes that "[i]t is by now well established that a change in Ohio's lethal injection protocol gives rise to new claims and thus warrants amendment of a habeas petition." (ECF No. 272, PageID 3684.)

The Warden opposes amendment on the grounds the amendment is untimely under the AEDPA statute of limitations and futility because the proposed grounds for relief are not cognizable in habeas corpus (Opposition, ECF No. 273, PageID 3924). Respondent notes how tightly tied Raglin's claims are to the current (October 7, 2016) protocol, how they plainly depend on facts not found in the state court record, and how Raglin did not explain what "clearly established federal law" they violate. *Id.* at PageID 3926. Respondent takes issue with the notion that a successful challenge to lethal injection could invalidate an Ohio death sentence because Ohio's capital sentencing scheme contemplates a legislative change if lethal injection is found unconstitutional. *Id.*, citing Ohio Revised Code § 2949.22(C). The Warden reminds the Court that general challenges to lethal injection have been found meritless by the Supreme Court. *Id.* at PageID 3927, citing *Baze v. Rees*, 553 U.S. 35, 47 (2008), and *Glossip v. Gross*, 135 S.Ct. 2726 (2015). Finally the Warden argues that the requirement to plead and prove an available alternative method of execution, which the Supreme Court endorsed in the § 1983 context in

*Baze* and *Glossip*, applies to habeas Eighth Amendment claims as well. *Id.* at PageID 3928.

Raglin's Reply argues at some length how his habeas lethal injection claims fit into the window recognized by *Adams III* -- not so broad as to be per se challenges, not so narrow as to challenge only a particular protocol (Reply, ECF No. 274, PageID 3932-45). He relies on *Adams III*, but also *In re: Lawrence Landrum*, Case No. 16-3151 (6th Cir. Feb. 13, 2017)(unreported Order; copy at ECF No. 274-1, PageID 3961, et seq.)

# Analysis

Walter Raglin is a plaintiff in *In re: Ohio Execution Protocol Litig.*, Case No. 2:11-cv-1016. That case seeks to permanently enjoin Ohio from executing Raglin and most other Ohio death row inmates under the current lethal injection protocol, which was adopted October 7, 2016. That protocol has already been the subject of extensive litigation, resulting in an order preliminarily enjoining its intended use in the executions of Ronald Phillips, Raymond Tibbetts, and Gary Otte. *In re: Ohio Execution Protocol Litig. (Phillips, Tibbetts, & Otte)*, 2017 U.S. Dist. LEXIS 11019 (S.D. Ohio Jan 26, 2017), aff'd., ___ F.3d ___, 2017 U.S. App. LEXIS 5946 (6th Cir. Apr. 6, 2017).

A civil rights action under 28 U.S.C. § 1983 offers the capital litigant many advantages over a habeas corpus action. Among other things, it is not subject to the second-or-successive limitation or the limits on discovery in habeas corpus. Because it is forward looking instead of focused on what happened in the state courts, it is not limited in the introduction of evidence imposed in habeas by § 2254(d) as interpreted in *Cullen v. Pinholster*, 563 U.S. 170 (2011). On the other hand, introduction of evidence discovered in a § 1983 lethal injection case appears to

be admissible in a habeas corpus lethal injection case, per *Adams III*, where that conclusion is assumed without any discussion of *Pinholster*.

Even before the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") vastly increased the procedural restrictions on habeas corpus, the Supreme Court held a district court could not grant release from confinement in a § 1983 action; to do so would frustrate the habeas exhaustion requirements. *Preiser v. Rodriguez*, 411 U.S. 475 (1973) (Notably, Justice Brennan, the major architect of expansion of habeas in the 1960's, dissented.) It was in *Nelson v. Campbell*, 541 U.S. 637 (2004), that the Supreme Court first held that a means or method of execution claim could be brought in a § 1983 case, over the objection of state officials who insisted that such a claim had to be brought in habeas corpus and would, in Nelson's case, have been subject to the second-or-successive requirement imposed by the AEDPA. The Court unanimously concluded that, because Nelson's challenge to the method of execution (a vein cut-down procedure) did not challenge his actual death sentence, it could be brought in a § 1983 action.

*Cooey v. Taft*, Case No. 2:04-cv-1156, a § 1983 action which is the direct predecessor of Case No. 2:11-cv-1016, was filed December 8, 2004, and references an earlier filing in Case No. 2:04-cv-532 on June 10, 2004, less than a month after *Nelson* was decided. As consolidated in 2:11-cv-1016, *Cooey* remains pending. The same organizations of attorneys who provide representation to plaintiffs in 2:11-cv-1016 – the Capital Habeas Units of the Offices of the Federal Public Defender for the Southern and Northern Districts of Ohio and the Ohio Public Defender's Office – also represent most of the capital habeas corpus petitioners in this Court. Thus the litigation context provides maximal opportunities for coordination of strategy. To this Court's eye, those opportunities are never missed; if there are internal disagreements among the

capital petitioners' bar, they are not apparent to this Court.

Petitioners' bar has had an apparent strategy for some years to have parallel habeas and § 1983 actions pending simultaneously on behalf of the same inmate and raising substantively parallel claims. Implementation of this strategy has been supported by the series of decisions of the Sixth Circuit in Stanley Adams' habeas corpus case from the Northern District of Ohio, *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011); *Adams v. Bradshaw*, 817 F.3d 284 (6th Cir. March 15, 2016); and *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. June 13, 2016), referred to herein as *Adams I*, *Adams II*, and *Adams III* respectively.

In *Adams I* the circuit court held, over Ohio's objection, that a challenge to the method of lethal injection could be brought in habeas corpus as well as in a § 1983 action. That is to say, availability of the § 1983 cause of action did not logically imply the absence of a § 2254 cause of action. Attempting to obey *Adams I*, this Court permitted amendments of habeas petitions to add lethal injection claims and indeed treated those claims as newly arising whenever Ohio's lethal injection protocol was amended. This reading informed the Magistrate Judge's allowance of the Second Amended Petition as upheld by Judge Barrett, *supra,* at pages 2-3.

Then the Supreme Court appeared to call this Court's practice into question with its decision in *Glossip v. Gross*, 135 S.Ct. 2726 (2015):

> Petitioners contend that the requirement to identify an alternative method of execution contravenes our pre-*Baze* [*v. Rees*, 533 U.S. 35 (2008)] decision in *Hill v. McDonough*, 547 U. S. 573, 126 S. Ct. 2096, 165 L. Ed. 2d 44 (2006), but they misread that decision. The portion of the opinion in *Hill* on which they rely concerned a question of civil procedure, not a substantive Eighth Amendment question. In *Hill*, the issue was whether a challenge to a method of execution must be brought by means of an application for a writ of habeas corpus or a civil action under §1983. *Id.,* at 576, 126 S. Ct. 2096, 165 L. Ed. 2d 44. We held that **a method-of-execution claim must be brought under §1983** because such a claim does

not attack the validity of the prisoner's conviction or death sentence. *Id.*, at 579-580, 126 S. Ct. 2096, 165 L. Ed. 2d 44.

135 S.Ct. at 2738(emphasis added). Changing course, this Court concluded the "must be brought" language precluded what it had been doing under *Adams I.* Then, in *Adams II* as clarified by *Adams III*, the Sixth Circuit decided *Glossip* did not implicitly overrule *Adams I:*

> Adams challenged the constitutionality of lethal injection on direct appeal, asserting that "[d]eath by lethal injection constitutes cruel and unusual punishment and denies due process under the state and federal constitutions." The Ohio Supreme Court rejected this claim, explaining it had "previously rejected similar arguments." *Adams*, 817 N.E.2d at 56 (citing *State v. Carter*, 89 Ohio St. 3d 593, 2000 Ohio 172, 734 N.E.2d 345, 358 (Ohio 2000)). Adams again challenged the constitutionality of execution by lethal injection in his federal habeas corpus petition. The district court denied this claim, noting that "lethal injection is the law of the republic. No federal court has found the lethal injection protocol to be unconstitutional." *Adams*, 484 F. Supp. 2d at 796 (citation omitted).

> As an initial matter, we note our recent holding that lethal injection does not violate the Constitution. See *Scott v. Houk*, 760 F.3d 497, 512 (6th Cir. 2014) ("Simply put, lethal injection does not violate the Constitution per se . . . ."). In *Scott*, a similar challenge to the implementation of lethal injection was raised, as a panel of this court observed that "Scott's petition alleges that lethal injection 'inflicts torturous, gratuitous and inhumane pain, suffering and anguish upon the person executed.'" *Id.* at 511. Accordingly, the Ohio Supreme Court's denial of Adams's challenge to the constitutionality of lethal injection as a means of execution did not constitute an unreasonable application of Supreme Court precedent.

> The Supreme Court's decision in *Glossip* does not alter our precedent. *Glossip* concerned a 42 U.S.C. § 1983 action challenging Oklahoma's execution protocol. . . .

> Lastly, notwithstanding the warden's observation that a method-of-execution challenge can only be brought in a § 1983 action under *Hill v. McDonough*, 547 U.S. 573 (2006), Adams can bring this claim in a § 2254 proceeding. As the warden submits, *Glossip* stated that *Hill* "held that a method-of-execution claim must be

> brought under § 1983 because such a claim does not attack the
> validity of the prisoner's conviction or death sentence." *Glossip*,
> 135 S. Ct. at 2738. As we observed in *Adams*, 644 F.3d at 483,
> however, Adams's case is distinguishable from *Hill* because
> Adams argues that lethal injection cannot be administered in a
> constitutional manner, and his claim "could render his death
> sentence effectively invalid." *Cf. Hill*, 547 U.S. at 580. Our
> decision in *Adams* is consistent with the Supreme Court's
> reasoning in *Nelson*, which suggested that, under a statutory
> regime similar to Ohio's, "a constitutional challenge seeking to
> permanently enjoin the use of lethal injection may amount to a
> challenge to the fact of the sentence itself." 541 U.S. at 644. Thus,
> to the extent that Adams challenges the constitutionality of lethal
> injection in general and not a particular lethal-injection protocol,
> his claim is cognizable in habeas. *Adams*, 644 F.3d at 483.
> However, as the Supreme Court observed in *Glossip*, a challenge
> to a particular procedure that concedes the possibility of an
> acceptable alternative procedure is properly brought in a § 1983
> action. *Glossip*, 135 S. Ct. at 2738.

*Adams v. Bradshaw*, 826 F.3d 306, 318-21 (6th Cir. 2016), *cert den. sub nom. Adams v. Jenkins*, 137 S. Ct. 814, 196 L. Ed. 2d 602 (2017). By denying certiorari, the Supreme Court passed up a chance to clarify the meaning of *Glossip*. Denial of certiorari triggered issuance of the mandate which then set the deadline for the instant Renewed Motion.

As this Magistrate Judge understands it, the current state of the law in the Sixth Circuit after *Adams III* is that habeas corpus will lie to challenge "the constitutionality of lethal injection in general" to wit, that "lethal injection cannot be administered in a constitutional manner, and [that] claim 'could render his death sentence effectively invalid.'" *Adams III*, *quoting Hill v. McDonough*, 547 U.S. at 580. Although the *Adams* court did not say so explicitly, it is obvious the same claim can also be made in a § 1983 action seeking permanent injunctive relief. Indeed Stanley Adams has done so and is a plaintiff in *In re: Ohio Execution Protocol Litig.*, Case No. 2:11-cv-1016. Of course as a § 1983 plaintiff, a death row inmate must plead a constitutional alternative method of execution. *Glossip*, *supra*.

The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. *See also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997)(citing *Foman* standard).

In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980); *United States ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013)(Rose, J.); *William F. Shea, LLC v. Bonutti Reseach Inc.*, 2011 U.S. Dist. LEXIS 39794, *28 (S.D. Ohio March 31, 2011) (Frost, J.).

Likewise, a motion to amend may be denied if it is brought after undue delay or with dilatory motive. *Foman v. Davis*, 371 U.S. 178 (1962); *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990); *Bach v. Drerup*, 2012 U.S. Dist. LEXIS 35574, *1 (Ovington, M.J.); *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert denied*, 517 U.S. 112

(1996)(amendment should be denied if it "is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."). In *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994), the court repeated and explicated the *Foman* factors, noting that "[d]elay by itself is not a sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted. *Id.* at 130, *quoting Head v. Jellico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir. 1989). These considerations apply as well in capital habeas corpus cases. *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998), *quoting Brooks*.

A motion to amend under Fed. R. Civ. P. 15 is non-dispositive and thus within a Magistrate Judge's decisional authority. *Monroe v. Houk*, No. 2:07-cv-258, 2016 U.S. Dist. LEXIS 38999 (S.D. Ohio, Mar. 23, 2016)(Sargus, C.J.).

To apply this standard to the pending Motion requires distinguishing among the forty-five proposed claims.

**Grounds One to Thirty-Eight**

Grounds for Relief One through Thirty-Eight appear to parallel the grounds for relief pled in the First Amended Petition. All of those Grounds for Relief have already been adjudicated by this Court or abandoned by the Petitioner. The Court assumes that those Grounds for Relief are proposed to be repeated in the Third Amended Petition so as to preserve the unabandoned claims for appeal. The Court GRANTS the Renewed Motion to the extent of allowing Grounds for Relief One through Thirty-Eight to be restated in a Third Amended Petition to preserve their current status in the case. None of those Grounds for Relief is opened for relitigation.

**Grounds Thirty-Nine and Forty**

Proposed Ground Thirty-Nine repeats verbatim the Ninth Ground for Relief in the Second Amended Petition (ECF No. 178, PageID 1310). Ground Forty repeats verbatim the next Ground for Relief in the Second Amended Petition after Ground Nine, which the Court assumes would have been numbered Tenth but for a typographical mistake. The Second Amended Petition was filed five years ago on April 17, 2012, and asserted cognizability on the basis of *Adams I. Id.* at PageID 1314. These two Grounds are recognizable "general" but not per se attacks on lethal injection.

Petitioner makes no reference to these Grounds for Relief in his Motion except to characterize them as "raising lethal-injection invalidity claims." (Renewed Motion, ECF No. 272, PageID 3673.)

Raglin is GRANTED leave to include these two Grounds for Relief in his Third Amended Petition with a notation that they have been previously withdrawn as moot.

**Grounds Forty-One through Forty-Four**

Proposed Grounds Forty-One through Forty-Four are also lethal injection claims. Ground Forty-One is an Eighth Amendment claim that appears to elaborate on Ground Thirty-Nine. Ground Forty-Two is a Due Process and Privileges or Immunities claim which does not have a parallel in the Second Amended Petition. Ground Forty-Three is an Equal Protection claim which appears to be an elaboration of the unnumbered second ground for relief in the Second Amended Petition. Ground Forty-Four is a Supremacy Clause or pre-emption claim.

As proposed to be pled, these Grounds for Relief fit within the cognizability-in-habeas window recognized in *Adams III*. That is to say, they are not claims that lethal injection executions are per se unconstitutional; such a claim would be precluded by precedent. As this Court understands the Sixth Circuit's classification in *Adams I, II, and III*, a per se claim would read something like "It is unconstitutional for any American State to execute anyone by lethal injection." Instead, these claims are general in the sense that they assert "It is and will always be unconstitutional for the State of Ohio to execute Mr. Raglin by any lethal injection procedure and because Ohio authorizes executions only by lethal injection, his death sentence is invalid."

The Warden's objection that these claims are not cognizable in habeas corpus is not well taken. The Warden's statute of limitations objection is dealt with below.

**Ground Forty-Five**

Ground Forty-Five is a new claim which, without saying so, appears to be based on *Hurst v. Florida*, 577 U.S. ___, 136 S. Ct. 616 (2016).

As this Court has held repeatedly in other cases, claims under *Hurst* are not cognizable because the Ohio capital sentencing system is materially different from the Florida system held unconstitutional in *Hurst*. Moreover, even if *Hurst* were applicable to Ohio capital cases, it does not apply retroactively to cases on collateral review. *Campbell v. Jenkins*, 2017 U.S. Dist. LEXIS 49085 (S.D. Ohio Mar. 31, 2017); *Fears v, Jenkins,* 2017 U.S. Dist. LEXIS 47901 (S.D. Ohio Mar. 29, 2017); *McKnight v. Bobby*, 2017 U.S. Dist. LEXIS 21946 (S.D. Ohio Feb. 15, 2017) and 2017 U.S. Dist. LEXIS 45633 (S.D. Ohio Mar. 27, 2017).

Raglin is DENIED leave to include Ground Forty-Five in his Third Amended Petition.

**The Statute of Limitations**

AEDPA imposed a one-year statute of limitations on habeas corpus claims. 28 U.S.C. § 2244(d). The Warden raises a statute of limitations defense in very brief fashion:

> Second, to the extent the proposed amended claims are construed as a properly pled general challenge to lethal injection, the one year statute of limitations under 28 U.S.C. § 2244(d) has long ago expired, where the state court judgment Raglin attacks has been final for more than a decade. *Turner v. Warden*, Case No. 2:07-cv-595, USDCSDO, Doc. 258, Decision and Order, Page ID 11013-11015 (Merz, Magistrate Judge); *In re: Lawrence Landrum*, Case No. 16-3151, Sixth Circuit, Doc. 10-1 Order, filed February 13, 2017.

(Opposition, ECF No. 273, PageID 3925.) This one-paragraph defense has elicited a twelve page reply (Reply, ECF No. 274, PageID 3947-58), the parts of which are considered separately.

**The Limitations Defense has not been Forfeited**

Raglin begins by asserting that the limitations defense, being non-jurisdictional, is subject to forfeiture and claims the Warden has not sufficiently asserted such a defense, thereby forfeiting it. *Id.* at PageID 3947. While the limitations defense in habeas can be forfeited, no case authority supports the proposition that failure to raise a limitations defense in objection to a motion to amend constitutes such a forfeiture. To put it another way, just because a defendant can raise any available Fed. R. Civ. P. 12(b) defense in opposing a motion to amend does not logically imply that the defendant has forfeited the defense by failing to raise it at that stage.

The statute of limitations is an affirmative defense which is forfeited if not pleaded as

required by Fed. R. Civ. P. 8(c). A district court may dismiss a habeas petition *sua sponte* on limitations grounds when conducting an initial review under Rule 4 of the Rules Governing § 2254 Cases. *Day v. McDonough*, 547 U.S. 198 (2006)(upholding *sua sponte* raising of defense even after an answer which did not raise it); *Scott v. Collins*, 286 F.3d 923 (6th Cir. 2002). In *Wood v. Milyard*, 566 U.S. 463 (2012), the Supreme Court held that courts of appeals have authority to consider a forfeited timeliness defense *sua sponte.*

Petitioner's objection that Respondent has forfeited a limitations defense is OVERRULED.


**Newly Discovered Evidence vs. Newly Arising Claims**


Next Raglin asserts the authority cited by Respondent is inapposite (Reply, ECF No. 274, PageID 3947-48).

In *In re: Lawrence Landrum*, Case No. 16-3151 (6th Cir. Feb. 13, 2017)(unreported Order; copy at ECF No. 274-1, PageID 3961), the Sixth Circuit held that Landrum's proposed lethal injection habeas claim required permission to proceed under 28 U.S.C. § 2244(b) which the circuit court refused to give. Landrum had argued "that he could not have raised his lethal-injection challenge until after the state adopted a revised protocol on September 18, 2011." *Id.* at page 3. The circuit court rejected that argument, holding "Landrum has not identified practices or procedures from the September 2011 protocol that amount to a factual predicate that could not have been discovered previously. See 28 U.S.C. § 2244(b)(2)(B)."

Raglin asserts this statement implies that if a capital habeas petitioner does show

> practices or procedures from the relevant amended protocol – here
> the October 7, 2016 execution protocol – that could not have been

> discovered previously, then he should not be prevented from
> amending his claims, nor are his claims time-barred. And that is
> precisely what he has done in his Motion and proposed Amended
> and Supplemental Petition. (*See, e.g.,* ECF No. 272-1, PageID
> 3739-40, 3742-49.)

(Reply, ECF No. 274, PageID 3948.) At ¶¶ 142-46 (PageID 3739-40) of his proposed third amended petition, Raglin recites facts related to the October 7, 2016, protocol. At ¶¶ 157-79 (PageID 3742-49) Raglin makes allegations about the use of the drug midazolam as the first drug in the alternative in the current protocol which Ohio intended to use to execute Ronald Phillips, Raymond Tibbetts, and Gary Otte. Among those allegations are asserted problems with the use of midazolam to execute Dennis McGuire. (*Id.* at ¶ 165-66), Clayton Lockett (¶¶ 167-68), and Joseph Wood (¶¶ 169-70). Dennis McGuire was executed January 16, 2014; Clayton Lockett was executed April 29, 2014; and Joseph Wood was executed July 23, 2014. None of these dates are mentioned in either the Renewed Motion or the proposed third amended petition. The relevant facts about use of midazolam in these executions were not newly discovered within one year before March 8, 2017. They have been thoroughly vetted in the § 1983 Protocol Litigation case.[1] But that is not enough for Petitioner's counsel who want these facts to count as newly discovered factual predicates for his habeas lethal injection claims, thus extending the start date for the statute of limitations under 28 U.S.C. § 2244(d)(1)(D). But wait. All of these facts had been discovered not later than July 23, 2014.[2] How can they be newly arising factual predicates for habeas lethal injection claims made in March 2017?

Part of the difficulty with Raglin's position is that it seems to stem from the drive of his counsel to completely conflate habeas corpus and § 1983 procedure. But *Adams* and *Landrum* do not do that. While those cases do support counsels' strategy to have substantively parallel

---

[1] Or at least thoroughly enough for a preliminary injunction hearing.
[2] All three of these executions were widely covered in the press and thus would have come to counsels' attention quickly. McGuire was represented by Raglin's counsel.

habeas and § 1983 claims pending at the same time and to use evidence obtained in the § 1983 case in support of the habeas claims,[3] the Sixth Circuit has not elided the procedural differences between these two types of cases.

If Raglin's cognizable-in-habeas general lethal injection claims did not arise when his attorneys discovered the facts about midazolam sometime between January 2014 and March 8, 2017, when did they arise?  Raglin filed his original Petition in this case in 2000 after lethal injection had become an approved method of execution in Ohio.  In 2001 it became the exclusive method.  It was still the exclusive method in 2004 when the Supreme Court decided in *Nelson v. Campbell* that method of execution claims could be brought in a § 1983 case.  Although Raglin never became a plaintiff in *Cooey v. Taft*, 2:04-cv-1156, counsel who represent him here were counsel to other death row inmates in that case.  He is a plaintiff in *In re: Ohio Execution Protocol Litig.*, and has been since November 14, 2011.  The original Complaint in that case included claims of Eighth and Fourteenth Amendment violations (First Claim), due process violations (Second Claim), and equal protection violations (Fourth Claim).  If those constitutional violations had arisen for § 1983 purposes by the time that Complaint was filed, why hadn't they also arisen for habeas corpus purposes?

Of course, the Complaint in 2:11-cv-1016 has been amended many times since 2011.  It is perfectly appropriate for forward-looking civil rights litigation to be amended as the conduct sought to be enjoined changes.

In light of *Adams III*, it would apparently be appropriate for Raglin to rely on new evidence gathered in the § 1983 litigation to prove his habeas corpus claim that Ohio can never constitutionally execute him by lethal injection.  But gathering new evidence in support of a habeas claim is different from concluding that a new habeas claim "arises" for limitations

---

[3] *Adams III*  expressly says this may be done without discussing any possible impact of *Pinholstrer*.

purposes every time new evidence is discovered, even assuming due diligence in finding the new evidence.

Raglin asserts repeatedly that Ohio's adoption of a new lethal injection protocol starts the statute of limitations running anew (Reply, ECF No. 274, e.g. at PageID 3950). He asserts he "could not have raised these specific lethal-injection invalidity claims" until the new protocol was adopted on October 7, 2016. *Id.* Yet he never explains how this focus on a newly arising claim related to a specific protocol is somehow consistent with his claims' being general Ohio-can-never-constitutionally-execute-me-by-lethal-injection claims. The Court has readily accepted the proposition that a new protocol can generate a new § 1983 claim, but such claims are specific to the particular protocol. No matter how many times Raglin's counsel repeat the mantra, new facts are not the same as new habeas claims.


**Equitable Tolling**


Raglin claims the benefit of the equitable tolling doctrine, "assuming the limitations period was not retriggered . . . by newly arising factual predicates." (Reply, ECF No. 274, PageID 3952.) The equitable tolling doctrine certainly applies to habeas corpus cases. *Holland v. Florida*, 560 U.S. 631 (2010).[4]

A petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 193 L. Ed. 2d 652(2016); *Ata v. Scutt*, 662 F.3d 736 (6th Cir. 2011), *quoting Holland*, 130 S. Ct.

---

[4] Counsel cite to the Supreme Court Reporter citation for *Holland*. S. D. Ohio Civ. R. 7.2(b)(3) states the Court's preference for use of the official citation. As institutional litigators in this Court, Petitioner's counsel should honor this preference.

at 2562, *quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Raglin relies on a number of factors favoring equitable tolling cited in *Sherwood v. Prelesnik*, 579 F.3d 581 (6th Cir, 2009). The circuit court has made it clear, however, that in the wake of *Holland*, *supra*, the multi-factor test previously applied is no longer applicable. *Ata*, 662 F.3d 736  n3 (6th Cir. 2011); *See also Hall v. Warden*, 662 F.3d 745 (6th Cir. 2011).

Whether it fits comfortably within the equitable tolling doctrine or not, Raglin makes a strong case that the Court should give some equitable consideration to the confused state of the law during the time he has had cases pending in federal court. Until *Adams I* it was reasonable for counsel to understand that method of execution claims had to be brought in § 1983 proceedings. Following *Adams I*, this Court accepted the extension of the logic of that case and of *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007), that not only did new § 1983 claims arise whenever the protocol was amended, but so did habeas claims on the same substantive basis. On that basis, counsel could reasonably have concluded they had a year from adoption of a new protocol to amend a client's habeas petition to add claims "newly arising" under that new protocol. Although this Court has now concluded on the basis of *Adams III* and *Landrum* that the cognizability, second-or-successive, and limitations questions must be kept separate, capital habeas petitioners should not be penalized for following the Court's lead during that period between *Adams I* and *Adams III*. And the Court must take full responsibility for the delay between the *Adams III* decision and issuance of the mandate in that case, although it was urged to that position by Petitioner's counsel. The State of Ohio has not claimed any prejudice would result from this approach since it will have to litigate the lethal injection invalidity question in the § 1983 case in any event.

**Claims Still Not Ripe**

The Court rejects Raglin's alternative argument (ECF No. 274, PageID 3956-58) that his lethal injection invalidity claims remain unripe because his health conditions or the protocol could change and his execution is not imminent. That logic would allow the statute of limitations defense to be swallowed entirely by a "things may change" condition. *Adams III* appears to allow a court to consider new evidence in support of a general claim that Ohio can never constitutionally execute a particular inmate by lethal injection. It does not support the proposition that such a claim is newly arising when relevant facts change.

**Conclusion**

To the extent and for the reasons set forth above, Raglin's Renewed Motion is GRANTED. Petitioner may, not later than April 24, 2017, file a Third Amended Petition which shall include all of the following:

1. As to Grounds One through Thirty-Eight, a notation of the place in the record where the claim has been either adjudicated or abandoned;

2. As to Grounds for Relief Thirty-Nine and Forty, a notation as to whether Raglin considers them superseded by any later Ground for Relief;

3. As to Ground Forty-Five, a notation that it has been disallowed by the Court but that it is being pleaded to preserve the *Hurst* issue for later consideration if the law changes.

In the alternative and perhaps avoiding some confusion, Raglin may file a Supplemental Petition including only Grounds Forty-One through Forty-Five with the same notation indicated

above as to Ground Forty-Five.


April 10, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge
